IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARGUERITE A. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. |
| v. ) | |
| ) | Trial By Jury Demanded |
| ORLANDO J. GEORGE, JR., ) | |
| in both his official and personal ) | |
| capacities, and DELAWARE ) | |
| TECHNICAL AND COMMUNITY ) | |
| COLLEGE, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

## THE PARTIES

1. The plaintiff, Marguerite Johnson is a resident of the State of Delaware, residing in Kent County.

2. Orlando J. George, Jr., is a resident of the State of Delaware, residing in New Castle County.

3. Delaware Technical and Community College is an institution of higher learning organized and existing under the laws of the State of Delaware, 14 Del.C. §9101 et.seq.

## JURISDICTION

4. This Court has jurisdiction over this matter in that it is brought pursuant to the provisions of 28 U.S.C. §§1331, 1332 and 1343(a)(3)(4), 28 U.S.C. §§2201 and 2202, as well as the Fourteenth Amendment of the United States Constitution.

5. Venue in this Court is predicated by the provisions of 28 U.S.C. §1391(b)(c).

## **FACTUAL BACKGROUND**

6. The plaintiff, Marguerite A. Johnson (hereinafter referred to as "Johnson") holds a Doctorate in Education Degree from Temple University, and at all times relevant herein, was employed as the Campus Director for the Terry Campus of the defendant Delaware Technical and Community College, in Kent County, Delaware.

7. Dr. Johnson was originally hired by Delaware Technical and Community College in 1970 as a GED Instructor at the Northern Branch, and was promoted in 1973 as Acting Assistant Director of Continuing Education.

8. By 1979 Johnson became the Acting Director of Continuing Education at the Stanton Campus of Delaware Technical and Community College.

9. By October 1979 Dr. Johnson was promoted to the position of Director of Continuing Education at the Stanton/Wilmington Campus of Delaware Technical and Community College, a position she continued to hold until December 1992.

10. In January 1993, Johnson was promoted and made Executive Dean of Instruction of Student Services for the Terry Campus, Office of the President Kent County, of Delaware Technical and Community College.

11. In 1994, the Board of Directors of Delaware Technical and Community College, pursuant to the provisions of 14 Del.C. §9105 approved Johnson's appointment as Vice-President and Campus Director of the Terry Campus, Kent County, Delaware Technical and Community College.

12. In September 1996, as a part of the evaluation process of the plaintiff's performance in her position as vice-president and campus director for the Terry Campus, her contributions were described as "invaluable", while she was commended

for placing the Terry Campus in a sound financial condition and thanked for the support that she had offered to the president of that institution.

13. In September 1997, in reviewing the plaintiff's performance during the preceding school year, she was commended for promoting the image of the Delaware Technical and Community Campus, located in Kent County, and for helping make that campus a "major force for positive change for Kent Countians". Further, her leadership was described as very effective, and she was commended for her inclusive planning processes.

14. In 1998 the plaintiff 's job performance was characterized as outstanding, which permitted the Terry campus to reach new heights of effectiveness.

15. For the years 1999, 2000 and 2001, the plaintiff's performance as Vice-President and Campus Director for the Terry Campus was credited as permitting the "...Terry Campus to reach new heights of effectiveness..." which "...has positioned the Terry Campus as a positive can do force for quality education and training in Kent County".

16. In September 2002 Johnson's efforts resulted in "special commendation for your leadership and providing additional programs for the community, increasing legislative support of the campus, your involvement in the Kent County community and your tireless support of the President.".

17. In September 2003 the plaintiff's efforts were recognized with a "special commendation for (her) leadership of the Middle State's effort leading to full accreditation ...increased record enrollment growth (and) involvement in the Kent County community."; as well as her tireless support of the President.

18. Most recently, in September 2004 Johnson's efforts on behalf of Delaware Technical and Community College were given "special commendation for (her) leadership in significantly enhancing the programs available to the Kent County community and (her) successful leadership in tying together the involvement of the campus community, students, faculty & staff with the community at large..." as well as her support and leadership between various divisions of the college.

19. For each year since her appointment as Vice-President and Director of the Terry Campus, of Delaware Technical and Community College, the plaintiff has received merit increases in salary.

20. Delaware Technical and Community College, in order to acquaint full time employees with its policies and regulations has promulgated an "Administrator's Personnel Handbook." The provisions of the "Administrator's Personnel Handbook" have been by custom and practice given the employees of Delaware Technical and Community College a reasonable expectancy in certain policies and procedures.

21. The Administrator's Personnel Handbook, provides that the employment of the position of Vice-President, Campus Director requires the approval of the Board of Trustees.

22. Section XI, of the Administrator's Personnel Handbook provides that members of the faculty of Delaware Technical and Community College should be free from college censorship or discipline.

23. The provisions of the Administrator's Personnel Handbook provide for a means of discipline, Section XII, and grievances, Section XIII, to be utilized in the event that an employee is suspended or otherwise disciplined.

24. During the course of the plaintiff's employment by the defendant, Delaware Technical and Community College, the defendant, George has on repeated occasions demonstrated a history of giving credence to and using anonymous comments made concerning Johnson as a means of managing and disciplining the plaintiff.

25. On November 19, 2004, a meeting was held at the Terry Campus of Delaware Technical and Community College for Departmental Chairs and administrators to discuss reorganization of the college's technical network.

26. During the course of the meeting of November 19, 2004 at the Terry Campus of Delaware Technical and Community College as described in ¶25, the plaintiff, in an effort to assist the day-to-day management of the Terry Campus, for which she had responsibility as Vice-President and Campus Director, made inquiries as to how the reorganization system would operate and asked for various explanations. Such comments were made in a non-disruptive manner and were matters of public concern to the public at large and specifically to the Terry Campus community.

27. Nineteen (19) days after the meeting of November 19, referenced in ¶26, on December 8, 2004 the defendant George forwarded correspondence to Johnson accusing Johnson of improper public comments, which were "antagonistic" and "inconsistent of what can be expected of a Vice-President and Campus Director" describing her comments as "creating a negative attitude". Dr. Johnson's comments were further described as being subversive and undermining moral as well as constituting insubordination.

28. The letter of December 8, 2004 from the defendant George to the plaintiff, directed Johnson to report to the defendant George's office the following day to discuss her alleged inappropriate behavior.

29. On December 9, 2004, the plaintiff requested to meet with the defendant George, during which time the defendant George told Johnson that she had one of two choices, to either voluntarily retire, or that she would be placed on administrative leave while her colleagues and staff were interrogated.

30. Shortly following the meeting of December 9, 2004, on December 13, 2004, the plaintiff was hospitalized with chest pains and shortness of breath.

31. Thereafter, Johnson responded to the meeting with the defendant, George of December 10, 2004 by a letter dated January 3, 2005 in which it was confirmed that the matters that she brought up during the meeting of November 19, 2004 were matters of public concern surrounding the nature and extent of the reorganization of the Terry Campus, for which she had administrative responsibilities as Vice-President and Director of the Terry Campus. Johnson reiterated the statements that were made in an non-disruptive manner.

32. In Johnson's letter of January 3, 2005 to George in response to the December 10, 2004 meeting she requested the opportunity, that if she was going to be disciplined. to proceed with the grievance procedures as outlined in Section 12.01 of the "Delaware Technical and Community College Administrator's Personnel Handbook".

33. Immediately following receipt of the letter by George of Johnson's January 3, 2005 letter, and the meeting with her that same day, defendant George in retaliation for the public comments made during the November 19, 2004 meeting, issued a memo

to Johnson, which placed Johnson on administrative leave "...until further notice". Johnson was verbally informed to remove all of her personal belongings from her office.

34. At the same time as Johnson was placed on administrative leave, she was admonished not to visit any college facility, nor to participate in any college function, either on or off campus.

35. When Johnson was placed on administrative leave, she was directed that she was not to discuss any investigation that the college was going to conduct of her, not only with present employees, but not to discuss it with even former employees of Delaware Technical and Community College.

36. On January 4, 2005 a public announcement was made to the community at large that Johnson had been placed on administrative leave and that a replacement had been appointed to Acting Assistant Campus Director of the Terry Campus, and that replacement was to have "...full administrative responsibility for the Terry Campus". The authority previously possessed by Johnson.

37. Shortly after the issuance of the public announcement of January 4, 2005, that Johnson was being placed on administrative leave, some furniture from her office was removed in order that her replacement could occupy her office.

38. As a result of the actions of the defendants, in removing the plaintiff from her position as Vice-President and Campus Director of the Terry Campus, members of the public have expressed to her concern, evidencing a belief that she is guilty of wrongful or improper conduct or other unprofessional or inappropriate conduct, incompatible with her position as Vice-President and Direct of Terry Campus.

39. The plaintiff has been denied any right to contest, appeal or grieve her suspension.

40. That as a direct and proximate result of the actions of the defendant, the plaintiff has undergone great suffering pain and mental anguish.

41. That as further direct and proximate result of the wrongful conduct of the defendant, the plaintiff has been forced to expend, and may in the future be forced to expend great sums of money for medical treatment.

42. As a further direct proximate result of the actions of the defendant, the plaintiff has suffered injury to her professional reputation and future earning capacity.

## COUNT I

### Free Speech Clause

43. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 though 42.

44. The individual defendant took action adverse to the plaintiff, as a direct and proximate result of retaliation for plaintiff's First Amendment protected speech on matters of public concern. There is a demonstrated and admitted causal relationship between plaintiff's aforementioned protected speech and the adverse employment action consisting of suspension from her job duties, and the subsequent denial of a grievance procedure. Thus the First Amendment protected activity was a substantial or motivating factor in the adverse employment action.

45. The individual defendant cannot prove by a preponderance of the evidence that absent a Constitutional violation they would have grounds to discipline the plaintiff while at the same time denying the plaintiff a grievance procedure.

46. Plaintiff's Constitutional right of free speech has been denied under the First Amendment of the United States Constitution and 42 U.S.C. §1983.

## COUNT II

### Procedural Due Process

47. The plaintiff incorporates herein and makes a part hereof the allegations contained paragraphs 1 through 46.

48. The plaintiff, by rule, regulation, by policy custom and practice, had a reasonable expectancy for a protected property interest a disciplinary process, which included but was not limited to a written notice of discipline and a right to proceed with a grievance procedure after the application of any discipline.

49. The plaintiff was deprived of her protected property interest in the disciplinary process and was placed on administrative leave with out recourse, without a hearing, and without the right to a grievance procedure.

50. The actions of placing the plaintiff on administrative leave, which constituted disciplinary action, without providing appropriate notice and/or grievance procedure, denied the plaintiff a property interest so as to violate her constitutional right to due process of law under the due process clause under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. §1983.

## COUNT III

### Procedural Due Process- Liberty Interest

51. The plaintiff incorporates herein and makes a part hereof the allegations contained paragraphs 1 through 50.

52. Plaintiff was a full time employee of Delaware Technical and Community College, who could not, by policy, regulation, custom, and practice be disciplined without due process and a grievance procedure.

53. As set out more fully in Count I, the defendants violated the plaintiff's rights and denied her the due process rights to which she was entitled.

54. In denying the plaintiff her due process rights, the defendants have distinguished the rights and status guaranteed to the plaintiff by State and/or Federal Law.

55. The actions of the defendants were committed under the color of law.

56. The actions of the defendants have damaged the plaintiff in both her professional and personal reputation therefore denying her a property interest in her employment and damaging her protected liberty interest.

57. The actions of the defendants have created such a stigma, which will deprive the plaintiff of her present employment, and will limit the possibility of future employment by other employers in her field as an educational administrator.

58. The actions of the defendant George, may seriously damage her reputation and associations in the community by creating an implied impression that she was guilty of either dishonesty, immoral or other wrongful conduct.

**WHEREFORE**, the plaintiff requests this Court to:

    a. Enter a judgment against the defendants.

    b. Enter a declaratory judgment declaring that the acts of the individual defendant was a violation of the plaintiff's Constitutional rights.

    c.    Enter a judgment against the individual defendant for nominal or presumed damages.

    d.    Enter a judgment against the individual defendant for compensatory damages, including any lost wages, or future or front pay, pain, suffering, humiliation, embarrassment, injury to reputation, and other personal injuries.

    e.    Enter a judgment against the individual defendant for punitive damages.

    f.    Award the plaintiff costs, interest and attorney fees for this lawsuit.

    g.    Issue a mandatory injunction directing that the individual defendant restore the plaintiff to her position.

    h.    Issue a permanent injunction directing the individual defendant to

        1.    Notify each and every person who learned of the defendants treatment of the plaintiff, that the individual defendant's conduct was illegal and wrongful, and;

        2.    Expunge plaintiff's personnel file of any derogatory information relating to the allegations contained in this complaint.

        3.    Enjoin the individual defendant and his successors from retaliating against the plaintiff now or in the future.

    i.    Require such other and further relief as this Court deems just and proper under the circumstances.

                    ABER, GOLDLUST, BAKER & OVER

                    _____

                    GARY W. ABER (DSB #754)  
                    702 King Street, Suite 600  
                    P.O. Box 1675  
                    Wilmington, DE  19899  
                    302-472-4900  
                    Attorney for Plaintiff

DATED:  March 15, 2005