

**STATE OF DELAWARE**
OFFICE OF AUDITOR OF ACCOUNTS

R. THOMAS WAGNER, JR., CGFM, CFE
AUDITOR OF ACCOUNTS

PHONE: (302) 739-4241
FAX: (302) 739-2723

October 20, 2005

Mr. Gerard M. McNesby
Vice President For Finance
Delaware Technical and Community College
P. O. Box 897
Dover, DE 19903

Dear Mr. McNesby:

The Office of Auditor of Accounts has completed its review of the allegations received from Delaware Technical and Community College (DTCC), and the following paragraphs contain the results of our review.

## ALLEGATIONS

1. Inappropriate reimbursements to the Vice President/Campus Director, Terry Campus.
2. Inappropriate use of Delaware Technical & Community College employees by the Vice President/Campus Director, Terry Campus.

## BACKGROUND

An entrance conference was held on April 18, 2005, with Mr. Gerard M. McNesby, Vice President for Finance, Delaware Technical and Community College and Mr. Brian D. Shirey, Esq., Chief Legal Counsel, Delaware Technical and Community College. Mr. R. Ronald Draper, Chief Administrative Auditor and Mr. Edward L. Watson, Administrative Auditor represented the Office of Auditor of Accounts. Mr. McNesby reported that the College had engaged the CPA Group, SantoraBaffone, to conduct an agreed-upon procedures engagement to determine the adherence to established policies for certain transactions and events entered into or performed by the Vice President/Campus Director of the Terry Campus. Based on the agreed-upon procedures engagement, dated April 12, 2005, Mr. McNesby advised areas of concern had been discovered regarding the possibility of improper reimbursements for travel and SuperCard purchases by Dr. Marguerite A. Johnson, the Vice President/Campus Director. Mr. McNesby also advised that the Vice President/Campus Director might have improperly used college employees for non-college duties.

Mr. Gerard M. McNesby
Page 2 of 6
October 20, 2005

A meeting to discuss the scope of our review was held on April 25, 2005, with the following personnel from the Delaware Technical and Community College: Mr. Gerard M. McNesby, Vice President for Finance; Mr. Brian D. Shirey, Esq., Chief Legal Counsel; Mr. Daniel L. Simpson, Acting Assistant Campus Director, Terry Campus; and Mr. Robert W. Hearn, Jr., Business Manager, Terry Campus. Mr. George C. Eilers, Auditor III; Mr. Jean Rothenburger, Investigative Administrator; and Ms. Joyce E. Pickett, Auditor II, represented the Office of Auditor of Accounts.

## SCOPE AND METHODOLGY

We reviewed financial and other documentation relative to travel reimbursements, SuperCard purchases and use of employee's for non-college duties for the period July 1, 1998, through December 31, 2004. We interviewed appropriate College personnel.

## REVIEW RESULTS

### TRAVEL REIMBURSEMENTS

DTCC Terry Campus Travel Policy states, that travel requests must be completed by the employee and approved by the employee's supervisor, Dean/Director, and the Vice President/Campus Director prior to the trip. According to the Terry Campus Business Manager it was normal procedure for the Campus Director not to obtain travel request approval from the College President.

Our review of travel reimbursements for the period July 1, 1999, through December 31, 2004, identified that the Terry Campus Vice President/Campus Director, frequently traveled as a representative of the college. We found that only three travel requests, of the 48 requests reviewed, were submitted for approval by the Campus Director's supervisor. Two requests were approved and one was disapproved. We also reviewed travel requests for the Campus Directors at the Stanton Campus and the Owens Campus. We found that their supervisor approved travel requests for these directors.

The CPA Group identified a business trip by the Campus Director to Wake Technical Community College (WTCC), Raleigh, North Carolina from October 23 through October 26, 2002. During their review, the CPA Group examined travel documents and contacted individuals at WTCC. The results of their review raised questions regarding the appropriateness of the travel. We concur with the CPA Group's findings and have referred this issue to the Office of the Attorney General for their review and resolution.

Our review of the Campus Director's travel expenses for meals revealed that in two instances the daily allowance specified in the DTCC Travel Policy and State Travel Policy was exceeded. We found that the expenses were paid from the college's Educational Foundation. The Vice President for Finance stated that he reviewed the expenses and subsequently approved payment from the Educational Foundation.

Mr. Gerard M. McNesby
Page 3 of 6
October 20, 2005

We found that internal control procedures, policy manuals and directives were in place. However, the Campus Director did not comply with existing policy.

### SUPERCARD PURCHASES

DTCC fiscal policy pertaining to the use of the PNC Bank SuperCard states the individual cardholder agrees to use the card for approved purchases and agrees not to charge personal purchases. Each cardholder is responsible for maintaining an activity log of all card purchases with supporting documentation. All SuperCard transactions are subject to prior written approval. Additionally, the "Agreement and Authorization From Individual Requesting a PNC VISA Card" states, "By signing this application, the undersigned parties hereby certify that the designated Cardholder is an employee of the above referenced organization within the State of Delaware and request that PNC Bank establishes a Visa Card account in the name of the above referenced employee." The agreement also states "The employee agrees to use this card for State of Delaware approved purchases and travel ONLY and agrees NOT TO CHARGE PERSONAL PURCHASES." The Campus Director signed the agreement on November 17, 1999.

The Campus Director also signed the "Delaware Technical and Community College Supercard Employee Disclosure Statement and Guidelines", dated March 8, 2000. Paragraph II.B) Purchasing Card Approval, states, "All purchases are subject to State of Delaware purchasing, bid, and travel laws and guidelines. All SUPERCARD purchases are subject to **prior written** approval by the cardholder's supervisor and/or dean, director, or business manager. Once the cardholder has received the prior written approval, then calling, faxing, or mailing the order can be done. If the cardholder incurs expenses that are subsequently disallowed, then the cardholder must submit a personal check to the business office within 24 hours." Paragraph II.C), Purchasing Card Reporting, states "Each cardholder is responsible and personally liable for all charges made to their card and for maintaining an activity log of all card purchases with supporting documentation."

We reviewed the Campus Director's SuperCard purchases for the period June 1, 2001, through December 31, 2004. We found that the Vice President/Campus Director, Terry Campus, did not obtain prior written approval from the supervisor, the College President, for purchases made with the SuperCard during the period of review. The purchases made by the Campus Director included purchases for personal use not authorized under State purchasing regulations. The Campus Director reimbursed the College for some, but not all, of these purchases.

In addition, we found purchases were made for items not authorized under State purchasing regulations, such as meals in state for State employees. In these instances, the expenses were reviewed and approved for payment by the Vice President for Finance utilizing Educational Foundation funds. According to the Terry Campus Business

Manager it was normal procedure for the Campus Director not to obtain prior written approval from the supervisor, the College President.

The CPA Group identified the purchase of three children's storybooks from an antique store in West Virginia totaling $371. Although an extensive search, which included an inventory of Campus libraries, was conducted, the storybooks could not be located. During our review, we received information on the location of the storybooks. We found the storybooks were located in the "Learning Research Center" in the Educational Technology Building. It is our understanding from Campus officials that the Learning Research Center is not a Campus library and as such was not included in their search for the storybooks. The storybooks are now in the possession of the current Campus Director.

We found that internal control procedures, policy manuals and directives, were in place. However, the Campus Director did not comply with existing policy.

### **INAPPROPRIATE USE OF DTCC EMPLOYEES**

DTCC Personnel Policy Manual, Section 6.01, states "the Vice President and Campus Director in charge of the campus is authorized to establish working periods and to designate work assignments in the best interests of DTCC." In addition, Section 11.11 of the Policy Manual states, "the first duty and responsibility of the full-time employee is to render to DTCC the most effective service possible. No outside service or enterprise, professional or other, should be undertaken that might interfere with this discharge of this primary responsibility."

The CPA Group, in their agreed-upon procedures engagement, reported that:

1. The Campus Director's Secretary was required to perform non-DTCC activities during normal DTCC business hours at the direction of the Campus Director from July 1, 1999 to December 31, 2004.

2. Seven other DTCC current employees were involved, in some degree, with the Campus Director's 1999 family reunion.

3. Two current employees were involved in the Campus Director's 2001 family reunion.

4. The Campus Director used DTCC personnel for downloading of pictures from the Internet and printing color copies of the photographs.

5. The Campus Director used DTCC personnel of the marketing department to make congratulation banners for her daughter's graduation in 1998; and the making of graduation invitations for a son.

Mr. Gerard M. McNesby
Page 5 of 6
October 20, 2005

During our review, we found that the Campus Director reimbursed DTCC for the following services and products for a personal family reunion in 1999:

- Color copies, black and white copies, plastic bindings and paper in the amount of $365.40, on invoice number 080299, dated Aug 2, 1999; personal check number 598 on July 28, 1999;

- Graphic & Interior Design Student Guild (GRID) for services in the amount of $245.00, personal check number 578, and invoice dated June 29, 1999.

The findings of the CPA Group and those of the Office of Auditor of Accounts indicate the Campus Director assigned duties to DTCC employees that were not related to DTCC business. We concur with the CPA Group's summary of diverted personnel costs and material costs incurred by DTCC. Based on the CPA Groups analysis we have not done additional work in this area.

**This case has been referred to the Delaware Office of Attorney General for their review and resolution.**

**RECOMMENDATIONS**

**WE RECOMMEND THAT** the Delaware Technical and Community College:

1. Ensure that DTCC employees are complying with established policies and procedures for travel and use of the PNC SuperCard.

The results of our review were discussed at an exit conference on September 9, 2005, with Mr. Gerard M. McNesby, Vice President for Finance; Mr. Brian Shirey, Esq., Chief Legal Counsel; Mr. Daniel Simpson, Campus Director, Terry Campus; and Mr. Robert Hearn, Business Manager, Terry Campus.

Mr. Gerard M. McNesby
Page 6 of 6
October 20, 2005

Please respond, in writing, within 15 workdays upon receipt of this report with your corrective action plan relative to the findings and recommendation contained within the report. If you have any questions please contact me at 739-5058.

Sincerely,

OFFICE OF AUDITOR OF ACCOUNTS

R. Ronald Draper, CGFM, CFS
Chief Administrative Auditor

RRD:GCE:EJM
Case Number 2005-023
cc:   Mr. Daniel L. Simpson, Campus Director, Terry Campus, Delaware Technical and Community College
      Mr. Robert W. Hearn, Jr., Business Manager, Terry Campus, Delaware Technical and Community College