# ABER, GOLDLUST, BAKER & OVER

(An association of Law Practices)
702 KING STREET, SUITE 600
PO BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST*
DARRELL J. BAKER, P.C.
SUSAN C. OVER
SHAUNA T. HAGAN
SAAGAR B. SHAH

TELPHONE     (302) 472-4900
TELECOPIER   (302) 472-4920

*ALSO ADMITTED IN NEW YORK

April 28, 2006

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE  19899

      RE:    Johnson v. Delaware Technical & Community College, et.al.
                C.A. No.:  05-157 (KAJ)

Dear Judge Jordan:

      I write pursuant to the provisions of the Scheduling Order entered in this matter ¶3(e), concerning a discovery dispute between the plaintiff and defendant in the above-captioned matter.

      As Your Honor may recall, this lawsuit arises out of the alleged retaliation against the plaintiff for her First Amendment protected rights in comments she made regarding matters of public concern.  It is alleged that she was first put on administrative leave, ordered off the Delaware Technical & Community College Terry Campus, directed to have no contact whatsoever with any Del Tech employees, present or past, all while an intense investigation was conducted concerning her.  That investigation was initially to be handled by the defendant's counsel in this matter, David Williams, and later was augmented by the retention of David Dwyer, a CPA, of Santora & Baffone.

      In both the Plaintiff's First Request for Production of Documents (No. 4) and the Plaintiff's Second Request for Production (Nos. 7 & 10), the plaintiff sought materials related to the investigation of Dr. Johnson.  The defendant objected claiming that any materials that he developed were protected by the attorney client privilege.

      Deposition discovery in this matter was conducted of Hope Murray, Ph.D., who is the head of Human Resources for the Delaware Technical & Community College, all campuses who was designated by the defendant as a Rule 30(b)(6)

The Honorable Kent A. Jordan
April 28, 2006
Page Two

witness to testify as to the nature and extent of the investigation conducted of Dr. Johnson. During her deposition she testified that the actions of Mr. Williams, were in performance of his duties as an "Independent Fact Finder" and not as an attorney. She testified and specifically denied that Mr. Williams was acting as legal counsel prior to the decision to terminate Dr. Johnson. [1]

The plaintiff suggests that the materials used by Mr. Williams or developed by Mr. Williams, prior to the decision by the college to terminate Dr. Johnson was reflected in Mr. Williams' letter of April 27, 2005, are discoverable. The defendant has denied that any investigation of Dr. Johnson was conducted for purposes of retaliation for her taking legal action or for her protected speech. Rather, as Dr. Murray testified it was part of the regular conducted business of the school as an "Independent Fact Finder". Such materials prepared in the regular course of business receive no protection from discovery. Onwuka v. Federal Express Corp., 178 F.R.D. 508, 513 (D.Minn. 1997). Even where litigation is expected or imminent, there is no attorney work product for documents prepared in the ordinary course of business. Allen v. Chicago Transit Authority, 198 F.R.D. 495, 499-500 (N.D.Ill. 2001). The attorney client privilege or attorney work product doctrine cannot be used to justify withholding documents and information pertaining to routine internal investigations. Barfoot v. Boehing Co., 184 F.R.D. 642 (N.D. Ala. 1999). The fact that an attorney acts as the investigator does not create a privilege. Broom v. Regal Tile Co., 881 F.2d 412 (7th Cir. 1989).

An additional reason is present for the plaintiff's right to the requested discovery. The deposition of Gerald McNesby, the college's Vice-President for Finance, described the initial investigation in February 2005. Mr. McNesby testified that there was at least one meeting between himself, Mr. Williams, and David Dwyer, CPA, the outside accountant hired to assist in the investigation. That initial meeting in February 2005 was to determine the extent and parameters of the investigation, several months before the decision to terminate Dr. Johnson. [2] The fact that these planning meetings finally culminated in an

---

[1] The plaintiff does not seek any materials used by or developed by Mr. Williams after the College issued its decision to terminate, which occurred by letter dated April 27, 2005.

[2] During the same time in February on February 16, and February 18, 2005, counsel for the defendant had written to the undersigned stating that there was not going to be any investigation, and the college was willing to continue exploring a resolution. This was apparently the same time they were meeting, to determine the scope of the
investigation after initial in-house interviews had been made by Dan Simpson, who took over Dr. Johnson's position in an acting capacity and has now succeeded her.

The Honorable Kent A. Jordan
April 28, 2006
Page Three

accountant's report, which was openly disclosed to numerous people, including myself, the hearing officer, the Attorney General's Office, and the State Auditor's Office, would show that there is a clear waiver of any privileges.

It is also anticipated that based upon the testimony of Mr. McNesby, I will be requesting the deposition of Mr. Williams, and the other participant in the meetings of February 2005, Brian Shirey, Del Tech's in-house attorney.

Certain additional matters have also arisen, which indicate difficulty in obtaining from the defendant, certain documentary evidence, including the electronic and physical calendars of Dan Simpson and Kathy Powell, which had been the subject of a formal request for production. I had written to defense counsel on February 28, 2006, and again on April 11, 2006, attempting to obtain those materials. Similarly, I have been attempting to obtain the formal list of interviewees, which had been testified to as existing by Hope Murray as well as the selection committee for the plaintiff's successor, similarly testified to by Hope Murray, by letters of February 20, 2006, and April 17, 2006. Those two letters also sought, as discussed by David Dwyer in his deposition, and a color coded version of a document referred to in David Dywer's Depo. Ex. No. 4.

In compliance with L.R.7.1.1, plaintiff has corresponded with defendant's attorney on three occasions, June 14, 2005, February 27, 2006, and March 20, 2006 in an effort to resolve these disputes.

Thank you for Your Honor's consideration.

Respectfully,

/s/ Gary W. Aber

Gary W. Aber

GWA/mac
David H. Williams, Esquire