# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

May 2, 2006

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE  19899

RE:   *Johnson v. Delaware Technical & Community College, et al.,*
      C.A. No. 05-157 (KAJ)

Dear Judge Jordan:

This is in response to Gary Aber's ("Aber") April 28, 2006 letter seeking materials protected by the work product and attorney-client privileges.

Plaintiff's argument is based upon the erroneous contention that Hope Murray's deposition testimony establishes that defendant's counsel, David H. Williams ("Williams"), conducted a routine, internal investigation which was later augmented by David Dwyer ("Dwyer"), a CPA employed by Santora Baffone.

While Hope Murray testified the original plan was for Williams to conduct an independent investigation of concerns relating to Plaintiff's behavior, such an investigation never took place because, as Williams informed Aber by letter dated March 7, 2005, information surfaced concerning questionable expenditures.  Hope Murray testified that the financial concerns surfaced because employees came forward to Acting Assistant Campus Director Simpson.

The College retained Dwyer to investigate the financial improprieties.  Hope Murray testified:

The Honorable Kent A. Jordan  **MORRIS, JAMES, HITCHENS & WILLIAMS LLP**
May 2, 2006
Page 2

> Q. And after March 7th any other interviews that were then conducted by Mr. Williams?
> **A. That's correct. Not on the financial side, not having to do with any of that, no.**
> Q. Did Mr. Williams do any interviewing at all?
> **A. Not until preparation for the pre-termination.**
> Q. That was after the decision had been made to terminate?
> **A. Correct.**
> Q. That was all in preparation for that?
> **A. Correct.**
> Q. Okay. But the interviewing of employees was conducted by whom?
> **A. The interviewing of employees was conducted by –**
> Q. Prior to the preparation for the pre-termination hearing, the investigation interviews I'll call them was conducted by whom?
> **A. By Santora & Baffone, auditors or accounting firm.**

(Murray Deposition Transcript at pp.73 & 74)

\* \* \* \*

> Q. As I understand it, there's just been one set of interviews, those done by the Santora firm?
> **A. Correct.**

(Murray Deposition Transcript at p.75)

\* \* \* \*

Dwyer confirmed that his investigation was conducted independently testifying that his first contact with Williams related to the preparation for the Johnson termination hearing in June 2005 (Dwyer Deposition Transcript at p.14).[1] All of Dwyer's work papers and investigative materials have been provided to Aber.

---

[1] Contrary to Aber's assertion, McMesly did not testify that he met with Dwyer and Williams in February 2005.

The Honorable Kent A. Jordan  
May 2, 2006  
Page 3

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

    In short, the work product of Williams was gathered in preparation for the June 2005 termination hearing on the financial issues. The investigation of behavioral issues Williams was retained to conduct did not occur.[2]

    The materials identified in the penultimate paragraph of Aber's April 28, 2006 have been produced, or will be produced within the next two days.

                        Respectfully,

                        *David H. Williams*

                        David H. Williams  
                        (DSBA No. 616)

DHW/srs

cc:    Clerk of Court (via electronic service)  
       Gary W. Aber, Esq. (via electronic service)  
       Brian Shirey, Esq. (via e-mail)

---

[2]   Orlando J. George, Jr., President of the College, testified, however, that all the steps he took, including placement of Johnson on paid leave on January 3, 2005, were based on advice of Williams (George Deposition Transcript at pp. 77 and 78).

DHW/007409-0131/1384578/1