## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-157-KAJ |
| | ) | |
| ORLANDO J. GEORGE, JR., in both his | ) | Trial By Jury Demanded |
| official and personal capacities, and | ) | |
| DELAWARE TECHNICAL AND | ) | |
| COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

David H. Williams (#616)
dwilliams@morrisjames.com
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900
Attorneys for Defendants

Dated:  June 16, 2006

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... iv

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

SUMMARY OF ARGUMENT ................................................................................................. 12

ARGUMENT............................................................................................................................. 13

    I.       SUMMARY JUDGMENT SHOULD BE GRANTED IF THERE
           IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND IF THE
           MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER
           OF LAW ......................................................................................................... 13

    II.      WHEN A PUBLIC EMPLOYEE MAKES STATEMENTS PURSUANT
           TO THE EMPLOYEE'S OFFICIAL DUTIES, THE EMPLOYEE IS
           NOT SPEAKING AS A CITIZEN FOR FIRST AMENDMENT
           PURPOSES ..................................................................................................... 14

    III.     A FIRST AMENDMENT RETALIATION CLAIM MUST BE
           DISMISSED UNDER PRE-*GARCETTI* LAW  IF THE PLAINTIFF
           DOES NOT SPEAK ON A MATTER OF PUBLIC CONCERN ................... 16

           1.      Statements Made By High Ranking Officials Typically
                 Are Not Of A Public Concern ............................................................ 16

           2.      Statements That Do Not Address Wrong-Doing, Misuse
                 Of Funds Or The Quality Of Education At A College
                 Typically Are Not Matters Of Public Concern ................................... 17

           3.      Statements Regarding The Role Of Personnel And Operations
                 Are Not Matters Of A Public Concern ............................................... 17

    IV.     ASSUMING ARGUENDO AN EMPLOYEE'S SPEECH IS PROTECTED
           THE EMPLOYEE CANNOT MAINTAIN A FIRST AMENDMENT
            RETALIATION CLAIM WHEN THE EMPLOYEE'S SPEECH COULD
           NOT HAVE BEEN A SUBSTANTIAL MOTIVATING FACTOR
           IN THE EMPLOYMENT DECISION ............................................................ 18

V.      ASSUMING AN EMPLOYEE ENGAGED IN SPEECH PROTECTED
        BY THE FIRST AMENDMENT, THE EMPLOYEE'S FIRST
        AMENDMENT RETALIATION CLAIM FAILS IF THERE IS NO
        SHOWING OF ADVERSE EMPLOYMENT ACTION ................................. 19

VI.     A TERMINATION PROCESS IS ADEQUATE WHEN IT PROVIDES
        NOTICE AND AN OPPORTUNITY TO BE HEARD BY AN
        IMPARTIAL DECISION MAKER ................................................................. 20

VII.    PLACING AN EMPLOYEE ON PAID LEAVE PENDING AN
        INVESTIGATION IS NOT DISCIPLINE, AND THEREFORE IS
        NOT A DEPRIVATION OF THE AFFECTED EMPLOYEE'S
        PROPERTY RIGHTS. ................................................................................... 21

VIII.   PLACING AN EMPLOYEE ON PAID ADMINISTRATIVE LEAVE
        DOES NOT INFRINGE UPON AN EMPLOYEE'S LIBERTY
        INTEREST ...................................................................................................... 22

IX.     AN EMPLOYEE WHO RECEIVES MORE PROCESS THAN IS
        DUE UNDER THE DUE PROCESS CLAUSE HAS NO PROCEDURAL
        DUE PROCESS CLAIM ................................................................................ 23

        A.     Johnson Received More Process Than Was Due................................. 23

        B.     Providing Johnson The Right To Cross Examine And
               Present Witnesses Replaced And Exceeded Her Limited
               Right to Receive Affidavits ................................................................. 23

        C.     Johnson Was Not Denied Access To Prospective Witnesses............. 25

        D.     There Is No Evidence Supporting The Claim The College
               Subjected Employees to Coerced Interrogation.................................. 25

        E.     The Inability To Compel The Attendance Of Witnesses At A
               Termination Hearing Is Not A Deprivation Of Due Process.....25

X.      GEORGE SHOULD BE DISMISSED ON THE BASIS OF
        OFFICIAL OR QUALIFIED IMMUNITY..................................................... 26

CONCLUSION......................................................................................................... 28

## **Attachments**

**Tab**

*Garcetti v. Ceballos,*
   2006 WL 1458026 (U.S. May 30, 2006) ................................................................................. A

*Gregory v. Merit System Protection Board,*
   2004 WL 842649 (Fed. Cir. 2004) ......................................................................................... B

*Prickett v. Amoco Oil Co.,*
   31 Fed.Appx. 608, 2002 WL 373979 (10th Cir. 2002) ............................................................ C

*Zaffuto v. City of Hammond,*
   2001 WL 327597 (E.D. La.),
   *aff'd* 308 F.3d 485 (5th Cir 2002) ......................................................................................... D

## TABLE OF AUTHORITIES

**PAGE**

<u>Cases</u>

*Anderson v. Creighton,*
  483 U.S. 635 (1987)..................................................................................................... 26

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..................................................................................................... 13

*Ashton v. Whitman,*
  94 Fed.Appx. 896 (3rd Cir. 2004)............................................................................. 23

*Board of Regents v. Roth,*
  408 U.S. 564 (1972)..................................................................................................... 22

*Boyett v. Troy State University at Montgomery,*
  971 F. Supp. 1403 (M.D. AL 1997)
  *aff'd* 142 F.3d 1284 (11th Cir. 1998) ...................................................................... 17

*Brooks v. Univ. of Wisconsin Board of Regents,*
  406 F.3d at 476 (7th Cir. 2005)..........................................................................17, 18

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)..................................................................................................... 13

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985)........................................................................................20, 22, 23, 24

*Cohen v. Rider,*
  258 F. Supp. 693 (E.D. PA 1966),
  *aff'd* 373 F.2d 530 (3rd "Cir. 1967) ......................................................................... 26

*Connick v. Myers,*
  461 U.S. 138 (1983)..................................................................................................... 14

*Coover v. Saucon Valley School District,*
  955 F. Supp. 392 (E.D. Pa. 1997) ............................................................................... 19

*DeLong v. Hampton,*
  422 F.2d 21 (3rd Cir. 1970) ...................................................................................... 26

*Edwards v. California Univ. of Pa.,*
  156 F.3d 488 (3d Cir. 1998) ........................................................................................ 22

*EEOC v. Kallir, Phillips, Ross, Inc.,*
  401 F. Supp. 66 (D.C. NY 1975) ................................................................................. 20

*Farrell v. Planters Lifesavers Company,*
  206 F.3d 271 (3d Cir. 2000) ........................................................................ 18

*Galvin v. New York Racing Association,*
  70 F. Supp. 2d 163 (E.D. NY 1998) .............................................................. 24

*Garcetti v. Ceballos,*
  2006 WL 1458026 (U.S. May 30, 2006) .............................................. 14, 15, 16

*Gardetto v. Mason,*
  100 F.3d 803 (10th Cir. 1996) ...................................................................... 18

*Gniotek v. City of Philadelphia,*
  808 F.2d 241 (3d Cir. 1986),
  *cert. denied,* 481 U.S. 1050 (1987)............................................................... 20

*Gomez v. Texas Dep't of Mental Health & Mental Retardation,*
  794 F.2d 1018 (5th Cir. 1986) ...................................................................... 17

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982)...................................................................................... 26

*Henley v. United States,*
  379 F. Supp. 1044 (M.D. PA. 1974)............................................................. 26

*Horne v. Russell County Commission,*
  379 F. Supp. 2d 1305 (M.D. AL 2005),
  *aff'd* 2006 WL 1428282 (11th Cir. 2006) ...................................................... 21

*Lee v. Mihalich,*
  847 F.2d 66 (3d Cir. 1988) .......................................................................... 26

*Linton v. Frederick County Bd. of County Comm'rs.,*
  964 F.2d 1436 (4th Cir. 1992) ...................................................................... 20

*Mansoor v. County of Albermarle,*
  124 F. Supp. 2d 367 (E.D. Va. 2000) ........................................................... 21

*Marrero v. Camden County Bd. of Social Services,*
  164 F. Supp. 2d 455 (D.N.J. 2001) .............................................................. 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)...................................................................................... 13

*Mosca v. Cole,*
  384 F. Supp. 2d 757 (D.N.J. 2005)............................................................... 20

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
  429 U.S. 274 (1977)...................................................................................... 18

*NLRB v. Valley Mold Co., Inc.,*
  530 F.2d 693 (6th Cir. 1976) ........................................................................................... 24

*Patterson v. Ramsey,*
  413 F. Supp. 523 (D. Md. 1976),
  *aff'd* 552 F.2d 117 (4th Cir. 1977) ................................................................................ 24

*Peltack v. Borough of Manville,*
  547 F. Supp. 770 (D. NJ 1982) .....................................................................................25, 26

*Perry v. Sindermann,*
  408 U.S. 593 (1972) .......................................................................................................... 22

*Pickering v. Board of Ed. Of Township High School Dist. 205, Will City,*
  391 U.S. 563 (1968) .......................................................................................................... 14

*Prickett v. Amoco Oil Co.,*
  31 Fed.Appx. 608, 2002 WL 373979 (10th Cir. 2002) ............................................... 19

*Richards v. City of Weatherford,*
  145 F. Supp. 2d 786 (ND Texas 2001)
  *aff'd* 275 F.3d 46 (5th Cir. 2001) ................................................................................... 21

*Robb v. City of Philadelphia,*
  733 F.2d 286 (3d Cir. 1984) ............................................................................................. 23

*Rose v. Buckeye Telesystem, Inc.,*
  181 F. Supp. 2d 772 (N.D. Ohio 2001) ............................................................................ 19

*Ryan v. Burlington County,*
  889 F.2d 1286 (3d Cir. 1989) ........................................................................................... 27

*San Filippo v. Bongiovani,*
  30 F.3d 424 (1994) ............................................................................................................ 18

*Stroudsburg Area Board of Ed. v. Pennsylvania Labor Relations Board,*
  395 A.2d 622 (PA Cmmwlth. 1978) .................................................................................. 20

*Sturm v. Clark,*
  835 F.2d 1009 (3d Cir. 1987) ........................................................................................... 23

*Swineford v. Snyder County Pennsylvania,*
  15 F.3d 1248 (3d Cir. 1994) ............................................................................................. 18

*Taylor v. Nichols,*
  409 F. Supp. 927 (D. KA 1976),
  *aff'd* 558 F.2d 561 (10th Cir. 1977) .............................................................................. 21

*Thompson v. Exxon Mobil Corp.,*
  344 F. Supp. 2d 971 (E.D. Texas, 2004) ......................................................................... 19

*Waters v. City of Philadelphia,*
   55 F.3d 886 (3rd Cir. 1995) .................................................................................................... 14

*Wells v. Dallas Independent School District,*
   793 F.2d 679 (5th Cir. 1986) ................................................................................................... 24

*Wilson v. Board of Trustees of the Community College of Baltimore County,*
   333 F. Supp. 2d 392 (D. Md. 2004) ......................................................................................... 16

*Zaffuto v. City of Hammond,*
   2001 WL 327597 (E.D. La.),
   *aff'd* 308 F.3d 485 (5th Cir 2002) ......................................................................................... 19

## **Statutes and Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................................................... 13

## NATURE AND STAGE OF THE PROCEEDINGS

This case involves a claim by a public employee that statements she made during the course of her official duties are protected by the First Amendment. Plaintiff also claims that her placement on paid leave pending an investigation of her behavior, and her subsequent termination, following detailed notice of the charges, and a two-day hearing before an independent hearing officer, violated her procedural due process rights and her liberty interest under the Due Process Clause of the 14th Amendment. This is the College's opening brief in support of its motion for summary judgment (the "Motion").

## STATEMENT OF FACTS

### The College

Delaware Technical and Community College (the "College") is a state-wide institution of higher education with campuses in Wilmington, Stanton, Dover (the Terry Campus), and Georgetown. The seven person Board of Trustees is the governing body of the College. (A2-A3)[1]

### Administrative Hierarchy Of The College

The administrative hierarchy of the College consists of Orlando J. George, Jr., ("George"), the President of the College, three Vice-Presidents who work in the Office of the President and have college-wide responsibility, and the three Campus Directors are also Vice-Presidents. (A5-A7)  Plaintiff Marguerite Johnson ("Johnson") was Vice-President and Campus Director of the Terry Campus in Dover. (A6; A55)  As of January 1, 2005, the positions in the Office of the President were occupied by the following individuals:

| | |
|---|---|
| President: | Orlando J. George, Jr. |
| Vice-President for Human Resources and College Relations: | Hope Murray |
| Vice-President for Finance: | Gerry McNesby |
| Vice-President for Academic Affairs: | Dan Simpson |

(A6-A7)

### President's Council

The President's Council consists of the President and the six Vice-Presidents. (A5-A7) The President's Council meets on a regular basis to discuss issues such as reorganizing the fragmented manner in which technology was being addressed throughout the College. (A72-A73)

### Ad Hoc President's Council

The Vice-Presidents also met without the President in the Ad Hoc President's Council. (A79-A80)

---

[1] Citations to the Appendix, filed contemporaneously herewith, are referred to as "(A__)".

### 2002 Concerns About Johnson's Behavior

As early as 2002, George had concerns about Johnson's behavior. Johnson received a November 26, 2002 letter from George stating:

> "On several occasions, I met with you to discuss anecdotal reports that you engaged in conduct typically involving shouting at and publicly berating staff. The manner in which you interact with peers is also a concern. Such behavior will not be tolerated."

(A113-A114; A128-A129)

George and Johnson met on December 3, 2002. (A115) George's December 4, 2002 follow-up letter states ". . . I am pleased that you have chosen to accept my offer to take all reasonable steps aimed at helping you modify your behavior." (A115-A116; A141) While Johnson contends she did not think her behavior needed to be modified (A116-A117), she responded to George's December 4, 2002 letter by contacting Respect in order to secure training addressing behavior and communication styles. (A118-A120) Johnson then sent George a letter dated December 11, 2002 requesting funding to permit Johnson to work with Respect, and representing she will be ". . . open to the recommended suggestions in communication styles . . ." made by Respect. (A121; A130-A140)

Finally, Johnson received a December 17, 2002 Memorandum from George reporting that, during the course of a December 13, 2002 telephone conversation with Esther Graham of Telamor Corporation, Johnson referred to Graham as unethical and low down, treated Graham in a disrespectful and rude manner, was loud and abusive, and stated Telamor would never have the College's support. (A122-A126; A142) Johnson denies calling Graham low down, or threatening anything with respect to the College, but Johnson concedes she was loud and may have been perceived as rude. (A125-A126; A143)

3

### George Continues To Receive Reports
### About Johnson's Behavior in 2004

Throughout 2004, George heard from four of Johnson's colleagues on the President's Council that Johnson's behavior was all too often out of control and abusive. (A4-A12) Indeed, meetings of the Ad Hoc President's Council were dominated by Johnson. In many cases, Johnson was opposed to whatever was being recommended by the other Vice-Presidents, and it was difficult to bring anything to closure. Murray offered an example when Johnson became loud, abusive and disrespectful of her colleagues. (A78-A83)

George did not discipline Johnson, or place information about Johnson's behavior in evaluations, because George did not conduct an investigation to confirm such behaviors occurred. (A8-A12; A32)

### Reorganization Of Technology In 2005

The President's Council was frustrated about the fragmented manner technology was addressed throughout the College. (A72) The College hired Peter Shoudy away from the University of Pennsylvania Wharton School to reorganize and lead the College's Information Technology Division ("IT"). (A13) When the President's Council started talking about the IT reorganization ("the IT Reorganization"), the Vice-Presidents, including Johnson, expressed many concerns. (A13-A15; A96-A98; A72-A73; A145-A146) The IT Reorganization was discussed at several meetings of the President's Council (A96-A97; A73-A75), and unanimously approved at the October 2004 meeting of the President's Council. (A15; A97; A151) George instructed his leadership team (i.e. the Vice-Presidents) there would be no more discussion, and he directed the Vice-Presidents to implement the IT Reorganization. (A15) Johnson does not dispute the fact the President stated that, given the unanimous approval of the IT Reorganization, the President expected the Vice-Presidents to support the IT Reorganization. (A97-A100)[2]

---

[2]When Johnson was initially asked whether the IT Reorganization was unanimously approved by the President's Council, she testified: "I believe so. I can't remember." (A97) At the end of her deposition, in response to questions put to Johnson by her attorney, Johnson testified: "No, we

4

### The November 19, 2004 Meeting

Connie Spampinato, Dean of Instruction at the Terry Campus, invited Shoudy, the College's Chief Technology Officer, to attend the November 19, 2004 meeting of the Terry Campus Department Chairs for the purpose of informing the Department Chairs about the IT Reorganization. (A161-A162) George received reports that Johnson attended this November 19, 2004 meeting, her behavior was abusive, and there was a sense that she did not support the IT Reorganization. (A16-A18; A148-A159)

Johnson states that she asked the following questions at the November 19, 2004 meeting:

> "Peter – would you clarify the role of coordinator of emerging technology?
>
> Is this the same as an instructional coordinator?"

(A166-A167; A109-A110)

### George's December 8, 2004 Letter To Johnson

George's December 8, 2004 letter (A33-A34) advises Johnson of the reports he received concerning the November 19, 2004 meeting, points out that, if the reports George received are accurate, Johnson asked questions raising doubt about her support for the IT Reorganization, and led some to believe Johnson was unaware of the changes brought about by the Reorganization. George pointed out:

> At the October meeting of President's Council, the current structure of the DIET was approved unanimously. The approval for the restructure was deferred at two previous meetings so that the Campus Directors could have time to provide input in the new IT structure, ask questions and express concerns. As you know, I invite and welcome the candid views of the Campus Directors and other senior staff. Once the President, along with President's Council, makes a decision on a path forward, however, I expect your support and cooperation in implementing our decision. Moreover, the decision here followed a lengthy

---

did not vote." Johnson explained that "Sometimes we would vote. Sometimes Dr. George would just say this is the way it's going to be." Johnson also responded to a question whether George asked anyone if they had had any objections by stating: "No. You knew not to have any objections. Once he makes a decision, you don't go against that decision." (A127)

5

discussion and a unanimous affirmative vote at President's Council, including the President.

Under these circumstances, allegations you failed to support Mr. Shoudy and the reorganization in an open forum constitute insubordination.  Indeed, at the meeting of the President's Council, I directed the President's Council to move forward with the reorganization and to support Mr. Shoudy in his effort to advance out IT services.  Your conduct on November 19th demonstrates a lack of support to the college IT efforts and an unwillingness to follow my directives.

The allegations concerning this incident are particularly troubling given the fact I have received reports you engaged in similar conduct over at least the past several years, and have expressed my concern to you about your reported inappropriate and unprofessional behavior.  Please report to my office on Thursday, December 9, 2004 at 10:30 a.m. to discuss the November 19, 2004 incident outlined above and your continuing inappropriate behavior.

(A33-A34)

### George Decides To Initiate An Investigation Focusing On Johnson's Behavior

George testified that he decided to investigate Johnson's behavioral issues for the following reasons:

I understand your question.  And up through these incidents that we have talked about, I have tried to keep on a – in such a relationship with Dr. Johnson that I was hopeful that if there were – if there were behavioral issues, that she would deal with them and change, that I wouldn't have to reprimand her, that I wouldn't have to discipline her. And it was only after the incident in November, the comments from the vice-presidents, the incidents going back in '02, it's all of those together that forced me then to say, I have to get to the bottom and determine whether or not these incidents have any substance to them.

(A19-A20)

George met with Johnson and offered her the option of retiring, or the College would conduct an independent investigation of the behavior allegations.  George told Johnson he did not know whether the allegations were true, but he had to get to the bottom of whether the allegations

concerning the November 19, 2004 meeting, as well as the incidents in 2002 and thereafter, were
true. (A23)  Johnson declined to retire. (A59)

### Johnson Is Placed On Administrative Leave

On January 3, 2005, Johnson was provided notice she was placed on paid administrative
leave ". . . pending an investigation focusing on allegations concerning your pattern of behavior
over at least the past several years." (A21; A35)  Johnson was asked to remove her personal
belongings from her office. (A21-A22)  George was of the view that in order to conduct an
investigation that was fair to the College and Johnson, it was necessary to remove Johnson from
the Campus so that employees she supervised would be free to provide accurate information.
(A24-A26)  Prior to 2005, College employees have been placed on paid administrative leave
pending investigations of alleged misconduct. (A93-A94)

### Johnson Continues To Received Full Salary And Benefits

From January 3, 2005 through the date of the Hearing Officer's termination decision on
July 19, 2005, Johnson received full salary and benefits.    (A107; A169)   Johnson was not
reprimanded.  (A33-A34; A36; A108)

### Johnson Attempts To Assert A Grievance

Johnson contends her placement on paid leave constituted discipline, and she therefore
attempted to assert a grievance. (A59)  The College rejected the argument that placement on paid
leave pending completion of an investigation constitutes discipline. (A84-A93)

### Announcement Of Johnson's Paid Leave

Employees on the Terry Campus received an announcement that:

> Effective January 4, 2005, Dr. Marguerite A. Johnson, Vice
> President & Campus Director, Terry Campus, is on
> administrative leave.
>
> As a result, Daniel L. Simpson, Vice President for Academic
> Affairs, has been appointed Acting Assistant Campus Director
> and will have full administrative responsibility for the Terry
> Campus.

7

> In addition, Dr. Cornielia N. Winner, Assistant Campus Director, Stanton/Wilmington Campus, has been appointed Acting Vice President for Academic Affairs and will have full administrative responsibility for the Division of Academic Affairs in the Office of the President.
>
> With the beginning of our spring semester, as always, please know how much I appreciate everything you do to support our students and our College.

(A36)

There is no evidence in the record supporting a claim (A60) that anyone concluded that the placement of Johnson on paid administrative leave resulted in a belief that she engaged in improper, wrongful or unprofessional conduct. (A101-A103; A110-A112)

### Claim All College Employees Received An Announcement Concerning Investigation

There is no evidence supporting the claim (A61) that the College provided all College employees an announcement that an investigation was to be conducted concerning Johnson. (A10-A106)

### The Investigation Of Behavioral Issues Is Delayed

The behavioral investigation was delayed in order to afford counsel for the College and Johnson to explore a resolution. (A27)

### Information Concerning Financial Improprieties

Prior to the commencement of an investigation of behavioral issues, information surfaced concerning Johnson's expenditures and improper use of College resources. (A172-173; A179-A180; A181; A182-A183; A28-A29)

### The College Retains A CPA Firm

Once the allegations concerning Johnson's financial improprieties surfaced, the College retained a CPA firm, SantoraBaffone ("Santora"), to investigate the allegations. (A70-A71) Santora conducted an investigation and issued an 8 page detailed report on April 12, 2005 ("the Santora Report"). (A46-A53)  The Santora Report included findings Johnson used College

employees to perform personal work, and used a State issued credit card to purchase personal items, and to cover personal expenses. (A197-A200; A169)

### College's Board Of Trustees Adopts Rules Of Procedure For Conduct Of Termination Proceedings

On April 26, 2005, upon recommendation of counsel, the College's Trustees adopted Rules of Procedure for the Conduct of Termination Proceedings ("Rules of Procedure"). (A30-A31)  The Rules of Procedure provide the following procedural rights:

1.    Notice of the reasons for termination.

2.    A hearing before an independent, impartial Hearing Officer.

3.    The right to confront and cross-examine witnesses testifying under oath.

4.    The creation of a stenographic record.

5.    The burden of the College to establish one or more reasons for termination by a preponderance of the evidence.

6.    The preparation of a written decision by the Hearing Officer.

7.    The decision of the Hearing Officer is final.

(A43-A45)

In recommending the Rules of Procedure, counsel was operating under the direction of George that the procedures protect Johnson's due process rights. (A30)  But for the adoption of the Rules of Procedure, the hearing would have been controlled by Johnson's Employee Master Contract (A39-A42), and Section 12.02 of the College's Personal Policy Manual. (A172; A177-A178)  Thus, Plaintiff would have been limited to the following procedural rights:

1.    Notice of the reasons for termination, including any act or course of conduct which constitutes a reasonable hazard to the health, safety and well-being of employer.

2.    Affidavits from persons with knowledge supporting termination.

9

3.     A hearing presided over by the College's Chief Legal Counsel in which neither the employer, nor the employee is obligated to produce witnesses or be subject to cross-examination.

4.     The College's Chief Legal Counsel determines whether witnesses may attend the hearing.

5.     The Chief Legal Counsel submits a recommendation to the applicable Vice President and Campus Director for final determination.

### Notice Of Intent To Terminate

On April 27, 2005, the College provided Johnson's counsel with a notice of intent to terminate detailing the reasons for the notice by incorporating the Santora Report by reference, as well as the Rules of Procedure adopted by the Trustees on April 26, 2005. (A37-A38)

### Appointment Of Hearing Officer

On May 11, 2005, retired Superior Court Judge Vincent Bifferato was appointed as Hearing Officer. (A197-200)

### The Hearing Officer's Decision

Following a two day hearing on June 29 and July 1, 2005, the Hearing Officer issued a decision on July 19, 2005 determining the College met its burden of establishing good cause to terminate Johnson, including Johnson's inappropriate use of her position to have College employees perform personal work at great expense to the College, as well as using College materials for personal matters. The Hearing Officer also concluded Johnson improperly used her State credit card for personal purchases, and, on at least three occasions failed to repay the College for such purchases. (A197-200)

### Claim Employees Subject To Coerced Interrogation
### To Orchestrate Termination

Johnson produced no evidence to support her claim employees were subjected to coerced interrogation in order "to mold their testimony for the termination hearing." (A62)

10

## Timing Of Plaintiffs' Receipt Of Affidavits
## Of Persons Having Knowledge Of The Reasons For Termination

In the context of hearing procedures which did not require that the College produce witnesses at the termination hearing (A172; A177-A178), the Employee Master Contract required that the College provide affidavits of persons having knowledge of the cause for termination. (A39-A42) The College adopted rules requiring the production of witnesses, as well as the right to cross-examine. Johnson nevertheless insisted the College provide affidavits. The College provided affidavits the day before the termination hearing commenced. (A172; A193-A194)

Prior to the termination hearing, the College provided Johnson's counsel well over 1,000 pages of documents, the College's termination hearing exhibits were provided 2 days prior to the hearing, and the College identified its witnesses 12 days prior to the termination hearing. (A172; A186-A187; A189; A192)

### The State Auditor's Findings

The State Officer of Auditor of Accounts reviewed and, by final report dated November 10, 2005 (A201-A202), confirmed the findings of the April 12, 2005 Santora Report.

1387773/1

## SUMMARY OF ARGUMENT

1.  Johnson's statements were not protected speech because she made the statements in her capacity of a public employee, not as a citizen.

2.  Johnson's statements were not protected speech even under pre-*Garcetti* caselaw because they do not touch upon a matter of public concern.

3.  Even if Johnson's statements were protected speech, the statements could not have been a substantial motivating factor in the decision to terminate her because the independent decision maker was not aware of her statements.

4.  Johnson's First Amendment retaliation claim fails because she was not subjected to adverse employment action.

5.  Johnson's due process claims fail because she was provided notice of the charges and an opportunity to be heard before an impartial decision maker.

6.  Placement of an employee on paid leave does not result in the deprivation of an employee's property or liberty rights.

7.  The right to due process does not include an entitlement to discovery before a termination hearing.

8.  State officials should be dismissed from suits on the basis of official or qualified immunity when there is no colorable violation of clearly established constitutional or statutory rights.

1387773/1

## ARGUMENT

### I. SUMMARY JUDGMENT SHOULD BE GRANTED IF THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986) (the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action") (internal citations omitted). Thus, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In responding to a motion for summary judgment, a plaintiff must "make a showing sufficient to establish the existence of [every] element essential to his case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To avoid summary judgment, a plaintiff must offer "concrete evidence from which a reasonable [trier of fact] could return a verdict in his favor" and may not rely on unsupported assertions, conclusory allegations, or mere suspicions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Johnson alleges the College retaliated against her for the purported exercise of her First Amendment rights, violated her right to procedural due process, and deprived her of a liberty interest. Johnson cannot carry her burden of coming forward with facts to support her claims. Thus, there are no material facts in dispute, and her claims fail as a matter of law.

13

II.    **WHEN A PUBLIC EMPLOYEE MAKES STATEMENTS PURSUANT TO THE EMPLOYEE'S OFFICIAL DUTIES, THE EMPLOYEE IS NOT SPEAKING AS A CITIZEN FOR FIRST AMENDMENT PURPOSES**

The Supreme Court's holding in *Garcetti v. Ceballos*, 2006 WL 1458026 (U.S. May 30, 2006)[3] is fatal to Johnson's First Amendment claim. Johnson's November 19, 2004 statements were made pursuant to her official duties, and are therefore not protected by the First Amendment. *See Garcetti*, 2006 WL 1458026 at *10. Thus, while Johnson's First Amendment claim fails for several reasons (See Argument III), the Court need not reach such arguments. *Garcetti* dictates that the First Amendment claim asserted here must be dismissed.

The threshold legal determination is whether the public employee spoke as a citizen on a matter of public concern. *See Garcetti, supra*, 2006 WL 1458026 at *6; *Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty*, 391 U.S. 563, 568 (1968); and *Connick v. Myers*, 461 U.S. 138, 147 (1983). In *Garcetti*, the Court instructs that: "if the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *See also Connick*, 461 U.S. at 147. Moreover, the burden of showing speech is constitutionally protected under the First Amendment is on the public employee. *Waters v. City of Philadelphia*, 55 F.3d 886, 892 (3rd Cir. 1995). Johnson cannot carry this burden.

Assuming for the purposes of the Motion what Johnson claims to have said is consistent with her actual statements,[4] she stated:

> Several individual[s] have asked me questions regarding [another employee's] new position and his role as Coordinator of Emerging Technologies, such as "Would you please clarify these changes?"; "Is his coordinator's position responsibilities comparable to those of an instructional coordinator"? The following are the precise questions that were asked by Johnson:
>
> "Peter—would you clarify the role of coordinator of emerging technology?

---

[3] Unreported cases are attached hereto.

[4] The College reserves the right to present evidence at trial refuting the substance of Johnson's statements.

Is this the same as instructional coordinator?"

More importantly, Johnson concedes the speech occurred at a meeting "for Departmental Chairs and administrators to discuss reorganization of the College's technical network." (A58)

Johnson's speech is not protected because she spoke pursuant to her duties as Vice President and Campus Director. As such, she was speaking as an employee, not as a citizen, and her speech is not protected. See *Garcetti*, 2006 WL 1458026 at *8 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). Application of *Garcetti* here leads to the inescapable conclusion Johnson was not speaking as a citizen for First Amendment purposes.

*Garcetti* involves a calendar deputy (a prosecutor) who claimed retaliation after authoring a memorandum calling for dismissal of a case based upon misrepresentations in an affidavit used to secure a warrant. In *Garcetti*, the Court holds the speech in the memorandum is not protected speech because it was created pursuant to the plaintiff's duties as a calendar deputy. *Id.* The Court recognizes: "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at *5. However, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services....Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." Id. at *6.

Johnson was speaking as an employee, not as a citizen, because her speech was made as part of her job function. Indeed, the speech occurred at a meeting which was not open to the public, and she was discussing the reorganization of the College's IT department. Johnson was participating in the meeting because it was her job to participate in the meeting. *See Id.* at *8

15

("Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do."). Furthermore, participating in College meetings and discussing personnel matters and department reorganizations are not functions citizens undertake as part of the exercise of First Amendment freedoms. Compare *Pickering* (where a letter to the editor had no official significance and was similar to letters submitted daily by the citizenry) with *Garcetti,* 2006 WL at *8 ("When he went to work and performed the tasks he was paid to perform, [plaintiff] acted as a government employee.").

In short, the undisputed facts are that Johnson's speech was made pursuant to her responsibilities as the Vice President and Campus Director, and is not protected. The First Amendment claim therefore fails. *See Garcetti,* 2006 WL at *10 ("Proper application of our precedents thus leads to the conclusion that the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities. Because [plaintiff's] memo falls into this category, his allegation of unconstitutional retaliation must fail.").

## III.    A FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED UNDER PRE-*GARCETTI* LAW IF THE PLAINTIFF DOES NOT SPEAK ON A MATTER OF PUBLIC CONCERN

While *Garcetti* is dispositive on the issue of whether Johnson's speech is protected under the First Amendment, the application of the pre-*Garcetti* case law reveals the following additional fatal flaws in Johnson's claim her speech is protected by the First Amendment.

### 1.    Statements Made By High Ranking Officials Typically Are Not Of A Public Concern

Johnson was a high ranking College official. She was one of six vice-presidents and, effectively second in command to George at the Terry Campus. Such a leadership position demands that she "simply could not cut [her] own path (let alone a path directly contrary to that elected by)" the College. *Wilson v. Board of Trustees of the Community College of Baltimore County*, 333 F. Supp. 2d 392, 397-398 (D. Md. 2004).

16

  **2.**  **Statements That Do Not Address Wrong-Doing, Misuse Of Funds Or The Quality Of Education At A College Typically Are Not Matters Of Public Concern**

  Johnson's statements regarded the role of the technology coordinator. The statements did not purport to bring to light any misuse of College funds, which may have been a matter of public concern if Johnson was speaking as a citizen rather than discharging her official duties (See Argument II). *See Boyett v. Troy State University at Montgomery*, 971 F. Supp. 1403, 1416 (M.D. AL 1997), *aff'd* 142 F.3d 1284 (11th Cir. 1998) (statements made regarding funding (as opposed to a misuse of funds) made to other employees are not a public concern). Nor do her statements allege wrongdoing, which also may be a matter of public concern. Indeed, the Court in *Brooks v. Univ. of Wisconsin Board of Regents* holds that a lack of specific allegations of wrongdoing was evidence that the relevant statements merely related to a personal dispute. 406 F.3d 476, 480 (7th Cir. 2005). Johnson's statements included no such allegations. Thus, her speech does not address a matter of public concern. *Id.; see also Gomez v. Texas Dep't of Mental Health & Mental Retardation*, 794 F.2d 1018, 1021-22 (5th Cir. 1986) (speech regarding proposed reallocation of administrative burdens was not of public concern because it was not a matter of interest in the community and the speech did not alert the public to wrongdoing). Similarly, Johnson's statements were not intended to "influence the public's perception of the quality of education provided" by the College, and therefore do not rise to a level of public concern. *Boyett*, 971 F. Supp. at 1418.

  **3.**  **Statements Regarding The Role Of Personnel And Operations Are Not Matters Of A Public Concern**

  Johnson's statements were not a public concern because they regarded personnel and operational matters. In *Brooks*, the Court holds the plaintiff-doctors, who spoke out regarding the operations of a medical clinic, spoke on a matter more directed to the internal operations of the clinics than to patient welfare. *See Brooks v. Univ. of Wisconsin Board of Regents*, 406 F.3d at 480. The Court found such statements regarded internal personnel matters and were not of public

17

concern. Specifically, the doctor-plaintiffs' statements regarded employees' roles within the clinics. *Id.* at 480. Similarly, Johnson's statements regarded the role of the technology coordinator and are not of public concern. *Id.; see also Gardetto v. Mason*, 100 F.3d 803, 815 (10th Cir. 1996) (finding that statements regarding a college reorganization are not matters of public concern). The Court in *Brooks* holds "At heart, this case involved a power struggle over how the department should be run," and, more specifically, a dispute over resistance to a departmental reorganization. *Id.* at 481. Such comments provide no evidence of commentary on matters of a public concern. *Id.* Johnson's statements similarly regarded a departmental reorganization, and, thus, are not matters of a public concern.

If the Court finds Johnson's speech does not address a matter of public concern, the First Amendment inquiry ends. *Connick*, 461 U.S. at 145; *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1270-1271 (3d Cir. 1994). Even if the Court determines Johnson's speech involves a matter of public concern, her First Amendment claim fails for the reasons set forth in Argument II. In addition, her First Amendment claim collapses for the compelling reasons set forth in Arguments IV and V.

**IV. ASSUMING ARGUENDO AN EMPLOYEE'S SPEECH IS PROTECTED, THE EMPLOYEE CANNOT MAINTAIN A FIRST AMENDMENT RETALIATION CLAIM WHEN THE EMPLOYEE'S SPEECH COULD NOT HAVE BEEN A SUBSTANTIAL MOTIVATING FACTOR IN THE EMPLOYMENT DECISION**

The only adverse employment action here was Judge Bifferato's binding decision to terminate Johnson for financial improprieties. Even if Johnson could get over the hurdle of establishing protected speech, she bears the burden of producing sufficient evidence for a jury to reasonably find the protected activity was a substantial or motivating factor in the alleged retaliatory action. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *San Filippo v. Bongiovani*, 30 F.3d 424, 443-444 (1994). Although she may rely upon a broad "array of evidence" from the record to establish this link, *Farrell v. Planters Lifesavers*

*Company,* 206 F.3d 271, 284-84 (3d Cir. 2000), Johnson failed to produce any evidence the termination decision was motivated by retaliation for her speech.

Stated directly, Judge Bifferato could not be motivated by consideration of speech he was not aware of. There was no evidence presented at the termination hearing concerning Johnson's November 19, 2004 speech. The only reference to Johnson's speech was her counsel's statement in opening argument that "In November, 2004, Dr. Johnson was called in by Dr. George based on some anonymous comments that were attributed to her." Her counsel also stated Johnson was asked to resign or face investigation. (A221-A223)

## V.  ASSUMING AN EMPLOYEE ENGAGED IN SPEECH PROTECTED BY THE FIRST AMENDMENT, THE EMPLOYEE'S FIRST AMENDMENT RETALIATION CLAIM FAILS IF THERE IS NO SHOWING OF ADVERSE EMPLOYMENT ACTION

Johnson alleges George's act of placing her on administrative leave constituted retaliation for her allegedly protected speech. In order to show retaliation for purposes of a First Amendment retaliation claim, Johnson must show she suffered adverse employment action. *Marrero v. Camden County Bd. of Social Services,* 164 F. Supp. 2d 455, 468 (D.N.J., 2001). Placement on paid administrative leave is not, however, adverse employment action. *Prickett v. Amoco Oil Co.,* 31 Fed.Appx. 608, 2002 WL 373979, at *2 (10th Cir. 2002) (one-week suspension with pay did not qualify as an adverse employment action); *Coover v. Saucon Valley School District,* 955 F. Supp. 392, 404 (E.D. Pa. 1997) (holding for purposes of a due process claim stemming from a First Amendment retaliation claim: "A public employee has a property interest in not being suspended without pay with the intent to dismiss."); *Zaffuto v. City of Hammond,* 2001 WL 327597, *2 (E.D. La), *aff'd* 308 F.3d 485 (5th Cir. 2002) (finding for purposes of a Title VII claim that a 240 hour suspension without pay was not adverse employment action); *Thompson v. Exxon Mobil Corp.,* 344 F. Supp. 2d 971, 982 (E.D. Texas, 2004) (finding for purposes a Title VII claim that a 2-3 day paid leave time was not discipline or adverse employment action); *Rose v. Buckeye Telesystem, Inc.,* 181 F. Supp. 2d 772, 777 (N.D. Ohio

19

2001) ("Plaintiff's one-day suspension with pay does not constitute an adverse employment action ."); *but see EEOC v. Kallir, Philips, Ross, Inc.*, 401 F. Supp. 66, 71 (D.C. NY 1975). A suspension with pay essentially is "nothing more than a paid vacation." *Stroudsburg Area Board of Ed. v. Pennsylvania Labor Relations Board*, 395 A.2d 622, 624 (PA Cmmwlth. 1978). Because Johnson cannot meet her burden of showing adverse employment action, summary judgment must be granted. *Mosca v. Cole*, 384 F. Supp. 2d 757, 768 (D.N.J. 2005) (granting defendant summary judgment when plaintiff could not show a connection between protected activity and adverse employment action).

## VI. A TERMINATION PROCESS IS ADEQUATE WHEN IT PROVIDES NOTICE AND AN OPPORTUNITY TO BE HEARD BY AN IMPARTIAL DECISION MAKER

Johnson contends the termination process violated her right to procedural due process. Generally, before an employee can be terminated, she is entitled to "oral or written notice of the charges…, an explanation of the employer's evidence, and an opportunity to present his/her side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Notice is sufficient if it apprises the vulnerable party of the nature of the charges and general evidence against him, and if it is timely under the particular circumstances of the case. *See Goss v. Lopez*, 419 U.S. 565, 581 (1975); *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir.1986), *cert. denied*, 481 U.S. 1050 (1987). Due process requires "only that such descriptive explanation be afforded as to permit [the plaintiff] to identify the conduct giving rise to the dismissal and thereby enable [her] to make a response." *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1440 (4th Cir.1992).

Here, Johnson received more process than she was due. The notice of the charges included the detailed 8 page Santora Report. (A46-A53) Prior to the termination hearing, the College identified its witnesses, provided well over 1,000 pages of documents requested by Johnson's counsel, and provided copies of the College's termination hearing exhibits (See Statement of Facts, p. 12). A well respected retired Judge was appointed as the impartial decision

20

maker, and the Trustees agreed to be bound by his decision (Statement of Facts, pp. 9, 10 & 11). Johnson was represented by experienced counsel who cross-examined the College's witnesses, and presented witnesses at a two day hearing which was transcribed by a court reporter.

In short, Johnson received process which exceeded the minimal due process required by the Due Process Clause of the 14th Amendment. Moreover, Johnson received far more process than was due under her contract and the termination procedures in place prior to the adoption of revised termination procedures on April 26, 2005. Therefore, her right to procedural due process was not violated.

## VII.   PLACING AN EMPLOYEE ON PAID LEAVE PENDING AN INVESTIGATION IS NOT DISCIPLINE, AND THEREFORE IS NOT A DEPRIVATION OF THE AFFECTED EMPLOYEE'S PROPERTY RIGHTS

Johnson claims she was deprived of a protected property interest when she was "placed on administrative leave without recourse, without a hearing, and without the right to a grievance procedure." (A65)  This claim is at war with the controlling law.  The College was free to suspend Johnson with pay without depriving her of a protected property right.  *See Mansoor v. County of Albemarle*, 124 F. Supp. 367, 379 (E.D.Va. 2000) (finding a suspension with pay did not violate the Fourteenth Amendment, even if it was a "suspension... for punitive reasons"); *Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 790 (ND Texas, 2001), *aff'd* 275 F.3d 46 (5th Cir. 2001) (dismissing a property interest claim based upon a suspension with pay for failure to state a claim upon which relief could be granted); *Taylor v. Nichols*, 409 F. Supp 927, 935 (D. KA 1976) *aff'd* 558 F.2d 561 (10th Cir. 1977) ("In the court's mind, a temporary suspension with pay is a far cry from that 'absolute deprivation' against which the Fourteenth Amendment protects."); *Horne v. Russell County Commission*, 379 F. Supp. 2d 1305, 1316 (M.D. AL 2005), *aff'd* 2006 WL 1428282 (11th Cir. 2006) (finding a lack of discipline for purposes of due process when asked to determine whether "a prolonged suspension might amount to a significant change of status under state law to implicate a constitutional liberty interest").

21

Placing a public employee on administrative leave with pay has been blessed by the Supreme Court as an effective means of dealing with interim pre-termination issues without infringing on the employee's rights. Indeed, in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Court noted a public employer can "avoid the [due process] problem by suspending [the public employee] with pay," just as the College did with Johnson in the current case. *Id.* at 545-46.

Given the fact that placement of Johnson on paid leave did not deprive her of a property right, it necessarily follows that she had no right to be heard prior to placement on paid leave. Moreover, there was no right to grieve given the absence of discipline.

## VIII. PLACING AN EMPLOYEE ON PAID ADMINISTRATIVE LEAVE DOES NOT INFRINGE UPON AN EMPLOYEE'S LIBERTY INTEREST[5]

Johnson contends she was deprived of a protected liberty interest when she was placed on paid administrative leave because the act of putting her on administrative leave "stigmatized" her. (A66) Such an argument collides with well-established law in the Third Circuit. *See, e.g., Edwards v. California Univ. of Pa.*, 156 F.3d 488, 492 (3d Cir.1998), *cert. denied*, 525 U.S. 1143 (1999). In *Edwards*, the Third Circuit heard an appeal from a teacher who was suspended with pay and later brought suit alleging, *inter alia*, he was deprived of a protected liberty interest because a suspension harmed his reputation. Johnson makes the same argument. The District Court in *Edwards* holds "because Edwards was suspended with pay, he cannot prove that he was deprived of a property interest deserving due process guarantees." *Id.* On appeal, the Third Circuit agrees, stating "'[s]tigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment.'"

---

[5] Because Johnson being placed on paid leave did not deprive her of a property or liberty interest, no process was due prior to placing her on leave. There is no constitutional requirement of substantive or procedural due process unless a person has been deprived of a property or liberty interest. *See Board of Regents v. Roth, 408 U.S. 564 (1972); Perry v. Sindermann*, 408 U.S. 593 (1972).

*Id.* citing *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3d Cir.1984) and *Sturm v. Clark,* 835 F.2d 1009, 1012 (3d Cir. 1987) (explaining that the Supreme Court requires "both damage to reputation and the extinguishment of government employment as a predicate for due process protection."). Johnson alleges no liberty interest other than harm to her "reputation," and she was merely suspended with pay, not terminated, prior to her pre-termination hearing. *See Id.* at 492 (stigma alone does not violate an employee's liberty interest).[6] Therefore, based upon the holding of *Edwards,* since neither a suspension with pay nor resultant stigma to reputation unconstitutionally deprived the plaintiff therein of a protected liberty interest, Johnson's liberty interest was not violated.

In all events, Johnson produced no evidence showing she actually suffered a stigma as a result of being on paid leave and therefore cannot meet her burden of establishing a *prima facie* case. (A101-A106; A110-A112)

## IX.    AN EMPLOYEE WHO RECEIVES MORE PROCESS THAN IS DUE UNDER THE DUE PROCESS CLAUSE HAS NO PROCEDURAL DUE PROCESS CLAIM

### A.    Johnson Received More Process Than Was Due

There is no credible dispute about the fact that Johnson received a termination hearing which met and exceeded the requirements of the Due Process Clause of the 14th Amendment (See Statement of Facts, pp. 9-12; and *Cleveland Bd. of Ed. v. Loudermill, supra.)*

### B.    Providing Johnson The Right To Cross Examine And Present Witnesses Replaced And Exceeded Her Limited Right to Receive Affidavits

Johnson alleges she was deprived of affidavits in advance of the termination hearing because the affidavits were delivered the day before the termination hearing. (A172; A193-A194) Johnson also contends she was denied equal access to witnesses prior to the termination hearing. To begin with, public employees have no right to pre-termination discovery. *Ashton v. Whitman,*

---

[6] This rule only makes sense. Otherwise, every time that an employee would be put on leave there would be an allegation that the very act of putting the employee on leave stigmatized the employee.

94 Fed.Appx. 896, 900-901 (3rd Cir. 2004) ("Recognizing the limited purpose of pre-termination proceedings, courts have held that due process does not require an employer to provide every piece of evidence relevant to an employee's termination. We conclude that requiring mandatory disclosure of material, exculpatory evidence prior to termination 'would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.'") quoting *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *see also Wells v. Dallas Independent School District*, 793 F.2d 679, 683 (5th Cir. 1986) ("When an administrative termination hearing is required, federal constitutional due process demands either an opportunity for the person charged to confront the witnesses against him and to hear their testimony or a reasonable substitute for that opportunity. One who is present, who sees and hears the witnesses against him, has notice of who they are and what they maintain before he must meet them with his case; his confrontation rights are satisfied.".... "The authorities upon which [the plaintiff] relies to demand names and summaries of testimony in advance plus confrontation are cases in which there was no confrontation and we required the other as a substitute."); *NLRB v. Valley Mold Co., Inc.*, 530 F.2d 693, 695 (6th Cir. 1976) ("[P]arties to judicial or quasi-judicial proceedings are not entitled to discovery as a matter of constitutional right."); *Galvin v. New York Racing Association*, 70 F. Supp. 2d 163, 176 (E.D. NY 1998) (where plaintiff complained of a lack of due process in a hearing resulting in license suspension, the court states: "The exact evidence to be presented need not be included in the notice, so long as the allegations are sufficient to alert the accused to the misconduct with which he is being charged.") citing *Patterson v. Ramsey*, 413 F. Supp. 523, 536 (D.Md.1976) *aff'd* 552 F.2d 117 (4th Cir. 1977) (citations omitted).

More importantly, the provision in Johnson's contract stating she would receive affidavits of persons having knowledge of the cause for termination was a substitute for the right to confront and cross-examine the College's witnesses. Prior to the adoption of revised Rules of Procedure for the Conduct of Termination Hearings, the College was not obligated to produce

24

witnesses at the termination hearing. (A172; A177-A178)  Thus, the employee facing termination was limited to receiving affidavits of persons with knowledge.  Obviously, the employee could not cross examine the affidavits.

In addition to the opportunity to cross examine and present witnesses (A37-A38), prior to the termination hearing Johnson received well over 1,000 pages of documents requested by Johnson's counsel, the College identified its witnesses, and the College provided its termination hearing exhibits. (A172; A186-A187; A189-A192)

C.    **Johnson Was Not Denied Access To Prospective Witnesses**

Johnson's claim she was denied access to College employees identified by Johnson as prospective witnesses (A63) is not supported by the record.  As  early as June 13, 2005, the College made an offer to Johnson's counsel to ". . . make every reasonable effort to secure the cooperation of employees you designed as witnesses . . ." (A184-A185)  On June 17, 2005, the College identified its witnesses. (A186-A187)  On June 17, 2005, the College offered to send each employee Johnson's counsel was attempting to communicate with a letter providing assurances there will be no retaliation for cooperating with Johnson's counsel, or testifying at the termination hearing. (A188)  The College repeated this offer on June 22, 2005 rejecting Johnson's request for a public statement to all employees of the College that there will be no retaliation. (A190-A191)  Johnson's counsel finally accepted the College's offer shortly prior to the hearing.

D.    **There Is No Evidence Supporting The Claim The College Subjected Employees to Coerced Interrogation**

By the same token, there is no evidence supporting Johnson's claim (A62) the College subjected employees to coerced interrogation.

E.    **The Inability To Compel The Attendance Of Witnesses At A  Termination Hearing Is Not A Deprivation Of Due Process**

Johnson's claim that she was denied due process because she was not afforded the power to compel the attendance of witnesses is also without basis in the law.  The only case that supports Johnson's position is *Peltack v. Borough of Manville*, 547 F. Supp. 770 (D. NJ 1982).

25

Although the *Peltack* court orders that a plaintiff be afforded the power to subpoena witnesses, the Court cites no authority for this decision, the issue of whether due process requires this power was not litigated, and the decision was dicta because it was in the context of prospective relief. *Id.* at 775. Therefore, *Peltack* does not necessarily stand for the proposition that due process demands the right to compel witnesses to appear. To the contrary, numerous cases hold that due process does not demand the right to subpoena witnesses.[7] *See, e.g. DeLong v. Hampton*, 422 F.2d 21 at 25 (3rd Cir. 1970) ("No case has been cited holding that this lack of subpoena power denies due process, and we have found none"); *Cohen v. Ryder*, 258 F. Supp. 693, 695 (E.D. PA. 1966), *aff'd* 373 F.2d 530 (3rd Cir. 1967) ("[The regulations at issue] . . . make it clear also that the Commission has no power to subpoena witnesses and the parties are, therefore, required to make their own arrangements for such attendance. There is nothing unfair in such a procedure.") internal citation omitted; *Henley*, 379 F. Supp. 1048.

## X.    GEORGE SHOULD BE DISMISSED ON THE BASIS OF OFFICIAL OR QUALIFIED IMMUNITY

Johnson sues George individually, seeking nominal, compensatory and punitive damages. Her claims should be dismissed under the doctrine of qualified immunity. Generally, government officials are protected from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to protect officials from the personal cost of litigation and the attendant inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

Johnson broadly accuses George of "giving credence to and using anonymous comments made concerning Johnson as a means of managing and disciplining" Johnson. As demonstrated in

---

[7] Furthermore, Johnson does not claim the lack of subpoena power prevented her from arranging for witness attendance. *See Henley v. United States*, 379 F. Supp. 1044, 1048 (M.D. PA. 1974).

this Brief, Johnson has not sufficiently alleged the violation of even colorable constitutional or statutory rights, much less "clearly established" ones.

As the Third Circuit holds in *Ryan v. Burlington County*, 889 F.2d 1286, 1292 (3d Cir. 1989) "[t]he defense of qualified immunity is a recognition of the fact that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions and, quite possibly, deters qualified people from accepting public service." *Id.* Lawsuits like the one Johnson is pursuing highlight the importance of qualified immunity protection for state officials performing their duties. Thus, even if George violated Johnson's federal constitutional or statutory rights in some discretionary function he performed, he is immune from personal liability.

1387773/1

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of the College and George on all counts.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

David H. Williams (#616)
dwilliams@morrisjames.com
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900
Attorneys for Defendants

Dated:  June 16, 2006

1387773/1

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-157-KAJ |
| | ) | |
| ORLANDO J. GEORGE, JR., in both his | ) | Trial By Jury Demanded |
| official and personal capacities, and | ) | |
| DELAWARE TECHNICAL AND | ) | |
| COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I, David H. Williams, hereby certify that on June 16, 2006, I electronically filed the

attached **DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR**

**SUMMARY JUDGMENT** with the Clerk of Court using CM/ECF which will send notification of such

filing(s) to the following:

> Gary W. Aber, Esquire
> Aber, Goldlust, Baker & Over
> 702 King Street, Suite 600
> Wilmington, DE 19899-1675

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

David H. Williams (#616)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
dwilliams@morrisjames.com
Attorneys for Defendants

Dated: June 16, 2006