**TAB B**

96 Fed.Appx. 690                                                                                                Page 131
(Cite as: 96 Fed.Appx. 690, 2004 WL 842649 (Fed.Cir.))

This case was not selected for publication in the Federal Reporter.

NOTE: Pursuant to Fed.Cir.R. 47.6, this order is not citable as precedent. It is public record. Please use FIND to look at the applicable circuit court rule before citing this opinion. Federal Circuit Rule 47.6. (FIND CTAF Rule 47.6.)

United States Court of Appeals,
Federal Circuit.

Sandra L. GREGORY, Petitioner,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent.

No. 03-3148.

DECIDED: April 16, 2004.

Background: Postal worker appealed decision of the Merit Systems Protection Board, that Board lacked jurisdiction over her appeal of her demotion.

Holding: The Court of Appeals held that Board did not have jurisdiction over postal worker's claims.

Affirmed.

West Headnotes

**[1] Officers and Public Employees ⚖ 72.25**
283k72.25

Merit Systems Protection Board did not have jurisdiction over postal worker's appeal of her demotion, even if worker was ineligible to join a collective bargaining unit; worker was not a supervisory or management employee inasmuch as she did not oversee personnel or make policy decisions. 39 U.S.C.A. § 1005(a)(4)(A).

**[2] Officers and Public Employees ⚖ 72.44**
283k72.44

Postal worker who failed to raise argument before administrative judge, that the denial of a right to appeal her demotion to the Merit Systems Protection Board deprived her of due process, waived such argument. U.S.C.A. Const.Amend. 5.

**[3] Constitutional Law ⚖ 278.4(5)**
92k278.4(5)

**[3] Officers and Public Employees ⚖ 72.20**
283k72.20

Postal worker was not deprived of due process by the denial of a right to appeal her demotion to the Merit Systems Protection Board; worker was given notice of the charges against her and the right to be heard through internal Postal Service review procedures. U.S.C.A. Const.Amend. 5.

*690 Jose L. Ongay, Philadelphia, PA, for Petitioner.

Joyce G. Friedman, Stephanie M. Conley, John C. Einstman, Mark A. Melnick, David M. Cohen, Washington, DC, for Respondent.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

DECISION

PER CURIAM.

**1 Petitioner Sandra Gregory appeals from a decision of the Merit Systems Protection Board, Docket No. PH-0752-02-0038-1-2, in which the Board held that it lacked jurisdiction over her appeal because she *691 was not a a manager or supervisor in the Postal Service. We affirm.

BACKGROUND

Before October 6, 2001, Ms. Gregory was employed as an Area Mail Transport Equipment Specialist in the Postal Service's Allegheny Area office. In August 2001, the Postal Service proposed to remove Ms. Gregory from her position for allegedly causing a hostile working environment for another Postal Service employee. After having been given notice of the charge, Ms. Gregory challenged the proposed removal through appeal procedures within the Postal Service. Her challenge was successful in part, and her removal was mitigated to a demotion. Accordingly, in October 2001 she was demoted in pay and grade and was transferred to another position. Ms. Gregory then sought to appeal her demotion to the Merit Systems Protection

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



96 Fed.Appx. 690  
(Cite as: 96 Fed.Appx. 690, *691, 2004 WL 842649 (Fed.Cir.), **1)

Page 132

Board.

Following Ms. Gregory's filing of her Board appeal, the administrative judge who was assigned to her case noted that there was a question whether the Board had jurisdiction over the appeal. After an evidentiary hearing on the jurisdictional question, the administrative judge concluded that Ms. Gregory had failed to establish that she fell within one of the special categories of Postal Service employees who have appeal rights before the Board. Accordingly, the administrative judge dismissed her appeal. Ms. Gregory filed a petition for review by the full Board, and when that petition was denied, she sought review by this court.

DISCUSSION

[1] The Merit Systems Protection Board has limited jurisdiction over appeals by employees of the Postal Service. In order to be entitled to review of adverse agency actions, a Postal Service employee must be either (1) a preference eligible employee (normally, a military veteran), (2) a supervisory or management employee, or (3) a confidential employee engaged in personnel work. 39 U.S.C. § 1005(a)(4)(A). It is undisputed that Ms. Gregory was not a preference eligible employee or a confidential employee engaged in personnel work, so in order to establish Board jurisdiction, she had to demonstrate that her position was that of a supervisor or manager.

The evidence before the administrative judge showed that Ms. Gregory's duties involved the management of mail transportation equipment. Specifically, she was responsible for analyzing transport equipment and making recommendations regarding its deployment; monitoring equipment supply chains; reviewing equipment inventory and recommending corrective action where necessary; providing guidance to employees in the proper handling, storage, and shipping of transport equipment; initiating requests for warehouse facilities of suitable size and location; and formulating and implementing procedures relating to empty equipment to respond to changes in processing and transportation networks. She argues that those duties rendered her a management employee and that her responsibilities with respect to other employees made her a supervisor. The administrative judge, after considering all the evidence offered regarding Ms. Gregory's position, concluded otherwise.

1. Supervisor.

**2 The question whether an employee is a supervisor for purposes of Board jurisdiction is guided by the definition of "supervisor" in the National Labor Relations Act. McCandless v. Merit Sys. Prot. Bd., 996 F.2d 1193, 1198-99 (Fed.Cir.1993). The National Labor Relations Act defines "supervisor" as follows:

*692 The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). In applying that standard to cases involving appeals by Postal Service employees to the Merit Systems Protection Board, this court has stated that the two activities most determinative of supervisory authority are: (1) the authority to discharge or discipline another employee (or to effectively do so through recommendation), and (2) the authority to direct the actions of other employees. Bolton v. Merit Sys. Prot. Bd., 154 F.3d 1313, 1317-18 (Fed.Cir.1998).

Ms. Gregory argues that she was a supervisor at the time she was demoted, because her duties were to provide program oversight and technical guidance to other employees in the proper handling, storage, and shipping of mail transport equipment, to conduct evaluations of equipment handling, and to make recommendations for correcting problems in equipment allocation. In addition, she argues that she analyzed the duties of at least one other employee and approved leave requests.

Following the evidentiary hearing on jurisdiction, the administrative judge found that Ms. Gregory was not a supervisor. The administrative judge noted that she did not have authority to discipline or terminate employees and that she was not responsible for other employees' performance. With respect to several issues on which the evidence was in dispute, the administrative judge found the

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



testimony of the agency witnesses more credible than Ms. Gregory's evidence.

Although Ms. Gregory contended that she was responsible for approving and disapproving other employees' leave requests, the administrative judge found that she had never disapproved a leave request and that her approvals of leave requests were routine clerical tasks that did not involve the exercise of independent discretion. Moreover, although Ms. Gregory argued that she occupied a supervisory position with respect to at least one other employee, the administrative judge concluded from the evidence that she did not direct the activities of, or assign duties to, any other employee.

We conclude that substantial evidence supports the administrative judge's finding that none of the functions that Ms. Gregory relied on made her position supervisory in nature. While it is clear that Ms. Gregory was responsible for the management of equipment, and while her work and recommendations often affected the way other employees performed their tasks, the administrative judge permissibly concluded that the evidence showed that what she oversaw was equipment, not personnel. Furthermore, the evidence showed that her role was more advisory than supervisory; she made recommendations and evaluations, but she had no independent authority to direct the activities of employees. As such, the administrative judge did not err in finding that Ms. Gregory was not a supervisor.

2. Management Employee.

**3 Although the National Labor Relations Act does not define the terms "manager" or "management employee," it excludes managers from its coverage, and the Board has looked to decisions under the National Labor Relations Act to define the *693 term "management employee" in determining the Board's jurisdiction over Postal Service employees under 39 U.S.C. § 1005(a)(4)(A). See Waldau v. Merit Sys. Prot. Bd., 19 F.3d 1395, 1398 (Fed.Cir.1994). Under the National Labor Relations Act, management employees are those who formulate and effectuate management policies by expressing and making operative decisions of their employer. NLRB v. Bell Aerospace Co., 416 U.S. 267, 288, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Ms. Gregory argues that she implemented agency policy in the management of mail transport equipment; determined where and when to deviate from that policy, when to supply equipment when it was in shortage, and when and how to pay for it; provided input to the Postal Service in developing policy; and was responsible for transportation equipment contracts. She argues that "[i]t is clear that anyone with such a vast responsibility" is a manager. It is "very difficult to believe," she argues, "the handling of millions of dollars of mail transport equipment ... would not require [her] to effectuate Agency policy."

The evidence on which Ms. Gregory relies does not support her contention that she was a manager. While it is clear that she was responsible for a large amount of valuable equipment, the evidence did not show that she formulated agency policy. Her evidence showed that she coordinated carriers, arranged to obtain equipment for employees who needed it, balanced costs and inventory, and decided where to deploy equipment. In addition, she participated as a team leader on two special projects- to establish a standard operating procedure for missent mail, and to redesign the Area Mail Transport Service Center. The administrative judge, however, concluded that none of her various job responsibilities rendered her position managerial, because she was simply implementing policy and did not have the authority to formulate policy for the agency. With respect to the two special projects on which she served as a team leader, the administrative judge concluded that the teams collectively made recommendations to management and thus did not fashion policy, but rather merely made suggestions as to steps that management could take to increase agency effectiveness. The administrative judge therefore concluded that in her role in the two special projects, Ms. Gregory was not making policy decisions, but was merely providing information on which such policy decisions would be made.

The administrative judge's conclusions with respect to the "management employee" issue were supported by substantial evidence. The administrative judge permissibly concluded that although Ms. Gregory made the decisions she described as to the disposition and allocation of equipment, there is no indication that she had discretion to change any agency policy in so doing. Making day-to-day decisions about the disposition

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



and allocation of equipment is not the same as making policy decisions that affect the agency beyond the particular circumstances of the decision. The administrative judge therefore did not err in holding that Ms. Gregory's position was not that of a management employee.

3. Eligibility to Join a Collective Bargaining Unit.

**\*\*4** Ms. Gregory next contends that she must be regarded as a management employee because her job rendered her ineligible to joint a collective bargaining unit. In McCandless v. Merit Systems Protection Board, 996 F.2d 1193, 1201 (Fed.Cir.1993), this court held that employees who were excluded from collective bargaining units because they were legally barred from membership in such units would have appeal rights to the Board. This court has **\*694** held, however, that the Postal Service's designation of an employee's position as "nonbargaining" does not establish that the employee is a supervisor or manager; instead, that determination must be based on an examination of the actual job duties of the position. Coursen v. U.S. Postal Serv., 256 F.3d 1353, 1356 (Fed.Cir.2001); Carrier v. Merit Sys. Prot. Bd., 183 F.3d 1376, 1379 (Fed.Cir.1999). Because the evidence showed that Ms. Gregory was not a manager or supervisor, the Postal Service's designation of her position as nonbargaining, although it may have been legally incorrect, does not change her status for purposes of Board jurisdiction. Moreover, the fact that there may have been no collective bargaining unit that Ms. Gregory could join at the time of her demotion does not mean that she was entitled to a Board appeal. A Postal Service employee such as Ms. Gregory has access to the Board only if the employee is barred as a matter of law from joining a union because of the employee's status as a manager or supervisor. Thus, Ms. Gregory's contention that several Postal Service unions had stated that she would not be accepted for membership and that her position was not covered by any collective bargaining agreement does not establish that she was legally barred from joining a union if one were established for a position such as hers.

4. Due Process.

[2][3] Finally, Ms. Gregory argues that the denial of a right to appeal to the Board deprived her of due process. That argument fails for two reasons. First, she did not make that argument before the administrative judge, and therefore she has waived it. See Bosley v. Merit Sys. Prot. Bd., 162 F.3d 665, 668 (Fed.Cir.1998). Second, due process does not require that a federal employee be accorded the right to appeal to the Merit Systems Protection Board before being demoted. As noted, not all Postal Service employees enjoy a right to appeal to the Board. Nonetheless, those employees who are subject to adverse employment actions such as the demotion at issue in this case are accorded the right to notice of the charges against them and the right to be heard in response to those charges through internal Postal Service review procedures. Such internal review procedures satisfy due process requirements. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Ms. Gregory invoked that internal review process and in fact obtained a substantial benefit from it, by having her penalty mitigated from removal to a demotion. She was thus not denied due process as a result of being denied review of her demotion by the Merit Systems Protection Board.

96 Fed.Appx. 690, 2004 WL 842649 (Fed.Cir.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**TAB C**

31 Fed.Appx. 608                                                                                                                    Page   1
31 Fed.Appx. 608, 2002 WL 373979 (C.A.10 (Utah)), 23 NDLR P 112
**(Cite as: 31 Fed.Appx. 608)**

Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
**Jeffery Paul PRICKETT, Plaintiff-Appellant,**
v.
**AMOCO OIL COMPANY, Defendant-Appellee.**
No. 01-4151.

March 11, 2002.

Former employee of convenience store sued former employer for employment discrimination pursuant to Title VII and Americans with Disabilities Act (ADA). The United States District Court for the District of Utah, Tena Campbell, J., 147 F.Supp.2d 1147, granted summary judgment for former employer. Former employee appealed. The Court of Appeals, Henry, Circuit Judge, held that: (1) former employee's termination did not violate ADA; (2) neither former employee's transfer to new work location nor one-week suspension with pay after admitted refusal to comply with new work processes supported ADA claim; (3) refusal to appoint counsel for former employee was not abuse of discretion; (4) denial of motion to compel discovery was not abuse of discretion; and (5) former employee failed to show judicial bias.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ⇐ 1220**

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1220 k. Particular Cases. Most Cited Cases
        (Formerly 78k173.1)
Termination of former employee from position at convenience store did not violate ADA where uncontroverted record established that former employee refused to report to new work location and that former employer had previously accommodated his impairment and promised to continue to do so at new location. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[2] Civil Rights 78 ⇐ 1220**

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1220 k. Particular Cases. Most Cited Cases
        (Formerly 78k173.1)
Neither employee's transfer to new work location nor one-week suspension with pay after admitted refusal to comply with new work processes qualified as significant change in employment status supporting employee's disability discrimination claim under ADA. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[3] Civil Rights 78 ⇐ 1557**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1557 k. Appointment of Counsel. Most Cited Cases
        (Formerly 78k246)
Refusal to appoint counsel for pro se litigant at summary judgment stage of action against former employer under Americans with Disabilities Act (ADA) was not abuse of discretion; finding that litigant did not appear to have strong case was supported by the record and administrative denial of litigant's claims by Equal Employment Opportunity Commission (EEOC) and state agency, and litigant ably responded to former employer's summary judgment motion. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[4] Federal Civil Procedure 170A ⇐ 1278**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Denial of motion to compel discovery was not abuse of discretion where summary judgment materials showed that former employee could not show adverse employment decision that was actionable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

31 Fed.Appx. 608
(Cite as: 31 Fed.Appx. 608)

Page 2

under Americans with Disabilities Act (ADA) and former employee pointed to no relevant evidence which could have been obtained through additional discovery on that issue. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[5] Constitutional Law 92 ⇐ 314

92 Constitutional Law
    92XII Due Process of Law
        92k304 Civil Remedies and Proceedings
           92k314 k. Trial. Most Cited Cases

Judges 227 ⇐ 49(1)

227 Judges
    227IV Disqualification to Act
        227k49 Bias and Prejudice
           227k49(1) k. In General. Most Cited Cases
Pro se plaintiff failed to show judicial bias supporting due process violation; neither adverse rulings nor judge's expressions of impatience, dissatisfaction, annoyance, or anger were sufficient to establish bias. U.S.C.A. Const.Amend. 14.

Before HENRY, ANDERSON, and LUCERO, Circuit Judges.

ORDER AND JUDGMENTFN*

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

HENRY, Circuit Judge.
**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff pro se Jeffrey Prickett appeals from the district court's grant of summary judgment in favor of Amoco Oil Company (Amoco), his former employer, on his employment discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(5), and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. We have jurisdiction under 28 U.S.C. § 1291. Because Mr. Prickett failed to present sufficient evidence to raise a genuine issue whether Amoco discriminated against him because of his alleged disability, we affirm.

I.

We review a grant of summary judgment *de novo*, applying the same standards as the district court. *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)). In conducting our review, "we examine the factual record and reasonable inferences therefrom in the light most favorable to [the nonmoving party]." *Id.* Once the moving party meets its "initial burden to show that there is an absence of evidence to support the nonmoving party's case," it is the nonmoving party's burden to "identify specific facts that show the existence of a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.* (quotations omitted).

To prevail on his ADA discrimination claim, Mr. Prickett had to provide evidence raising genuine issues of material fact that: *610 (1) he is a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of the job he held; and (3) Amoco discriminated against him because of his disability. *See Taylor v. Pepsi-Cola Co.,* 196 F.3d 1106, 1109 (10th Cir.1999).

II.

Mr. Prickett alleged that Amoco terminated him because of a disability and that it retaliated against him for reporting harassment based on his disability. The district court held that both of Mr. Prickett's claims failed in part because he could not show facts tending to prove the third element in his prima facie

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



31 Fed.Appx. 608　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3
(Cite as: 31 Fed.Appx. 608)

case: that Amoco discriminated against him because of his disability. *See* R. Vol. III, Doc. 87, at 11-19. Mr. Prickett raises three issues for appeal: (1) the district court erred in refusing to appoint counsel and compel discovery; (2) the district court was biased against disabled claimants, resulting in a miscarriage of justice; and (3) the district court erred in concluding that neither a one-week suspension with pay; nor a transfer to a new work location at the same pay, same job, and same benefits; nor his termination for refusing to work at the new location constituted actionable adverse employment decisions.

**2 [1][2] We have reviewed the parties' submissions, the record, the relevant law, and the district court's opinion. The uncontroverted record establishes that Mr. Prickett refused to report to a new work location and that Amoco had previously accommodated his impairment and promised to continue to do so at that new location. Further, neither the transfer to the new location nor a one-week suspension with pay after an admitted refusal to comply with new work processes qualify as "significant change[s] in employment status." *See Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532 (10th Cir.1998). We have nothing further to add to the district court's thorough, well-reasoned order on the substantive merits of Mr. Prickett's ADA claims. Therefore, we affirm the district court for substantially the same reasons stated on pages 11-18 in the order dated June 21, 2001.

III.

[3] We next address Mr. Prickett's other claims of error, beginning with the premise that "[a] plaintiff asserting an employment discrimination claim has no constitutional or statutory right to appointed counsel." *Castner v. Colo. Springs Cablevision,* 979 F.2d 1417, 1420 (10th Cir.1992). The decision whether to appoint counsel in a discrimination case is left to the broad discretion of the trial court. *See id.* The district court's finding that counsel should not be appointed because Mr. Prickett did not appear to have a strong case is supported by the record as well as by the administrative denial of Mr. Prickett's claims by the EEOC and the Utah Department of Workforce Services. The record also supports the court's finding that Mr. Prickett had ably responded to the motion for summary judgment. *See id.* at 1420-21 (listing factors court should consider in deciding whether to appoint counsel, including whether allegations are meritorious and plaintiff's capacity to present the case without counsel). We therefore conclude that the court did not abuse its discretion in refusing to appoint counsel at that stage of litigation.

[4] We also review discovery rulings, including the denial of a motion to compel discovery, for an abuse of discretion. *Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1300 (10th Cir.1999). The summary judgment materials demonstrated*611 that Mr. Prickett could not show an actionable adverse employment decision. Mr. Prickett points to no relevant evidence that could have been obtained through additional discovery on that issue. We thus conclude that the court did not abuse its discretion in denying the motion to compel.

[5] Finally, we address Mr. Prickett's claim that his right to a trial conducted by a fair and impartial tribunal was breached by the district court judge's bias as demonstrated by an alleged history of unfairly ruling against plaintiffs in ADA cases.FN1 *See Harline v. D.E.A.,* 148 F.3d 1199, 1204 (10th Cir.1998) (noting the right to trial before an impartial tribunal). To state a due process claim for judicial bias, "a plaintiff must sufficiently allege facts supporting a conclusion that the risk of unfairness is intolerably high under the circumstances of the particular case." *See id.* (quotation omitted). A judge enjoys a presumption of honesty and integrity which is rebutted only by a showing of "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated," *see id.* (quotation omitted), or that "circumstances were such that an appearance of bias created a conclusive presumption of actual bias," *Fero v. Kerby,* 39 F.3d 1462, 1478 (10th Cir.1994).

FN1. We note that, contrary to Mr. Prickett's claims, Judge Campbell has allowed ADA claims for retaliation to go to a jury. *See, e.g., Steele v. Thiokol Corp.,* 241 F.3d 1248 (10th Cir.2001).

**3 Adverse rulings at trial may provide grounds for appeal, but they do not alone show bias. *See Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (interpreting federal recusal statute). Further, Mr. Prickett's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



31 Fed.Appx. 608  
**(Cite as: 31 Fed.Appx. 608)**

Page 4

speculation about the district court judge's political philosophies are insufficient to demonstrate bias. *Cf. United States v. Cooley,* 1 F.3d 985, 993 (10th Cir.1993) (discussing denial of motion to recuse). Likewise insufficient are a judge's "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky,* 510 U.S. at 555-56, 114 S.Ct. 1147. We conclude that Mr. Prickett has failed to show judicial bias.

The judgment of the United States District Court for the District of Utah is AFFIRMED.

C.A.10 (Utah),2002.  
Prickett v. Amoco Oil Co.  
31 Fed.Appx. 608, 2002 WL 373979 (C.A.10 (Utah)), 23 NDLR P 112

Briefs and Other Related Documents (Back to top)

. 01-4151 (Docket) (Aug. 03, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**TAB D**

Not Reported in F.Supp.2d  
85 Fair Empl.Prac.Cas. (BNA) 800  
(Cite as: 2001 WL 327597 (E.D.La.))

Page 73

United States District Court, E.D. Louisiana.

Terry ZAFFUTO, et al.  
v.  
CITY OF HAMMOND

No. Civ.A. 00-941.

April 3, 2001.

DUVAL, J.

*1 Before the Court is a Motion for Summary Judgment or Alternatively for Partial Summary Judgment filed by the City of Hammond, Roddy Devall and Kenny Corkern. This matter involves claims by Terry Zaffuto ("Zaffuto") and Susan Zaffuto ("Susan") against the City of Hammond Roddy Devall and Kenny Corkern. Zaffuto's claims are under the provisions of Title VII of the Civil Rights Act of 1964 and are based on his allegation that he was retaliated against for engaging in a protected activity. Zaffuto and Susan, his wife, also claim that their Constitutional rights were violated when a private telephone communication was intercepted and disseminated without their permission. Therefore, there is an action brought pursuant to 42 U.S.C. § 1983. The Court has reviewed the pleadings, memoranda and the relevant law and finds that the motion shall be granted with respect to the Title VII claim, but denied with respect to the § 1983 claim for the reasons that follow.

Background

Terry Zaffuto is a classified Civil Service employee with the City of Hammond Police Department and currently holds the rank of Lieutenant. Defendants Devall and Corkern had immediate and successively higher supervisory power over Zaffuto. Zaffuto's Title VII claim is related to a lawsuit brought by Lt. Debbie Norwood ("Norwood") in another section of the United States District Court for the Eastern District of Louisiana. As part of those proceedings, Norwood verbally identified Zaffuto as a witness who would support her claim of gender bias in her employment to the Equal Employment Opportunity Commission ("EEOC"). Zaffuto worked under Norwood's supervision. Also, on September 14,

1999, Zaffuto was identified as a witness expected to testify on her behalf in response to interrogatories submitted to Norwood.

In October of 1999, Zaffuto was suspended 240 hours in connection with a claim that Officer Tony Cuti assaulted a pre-trial detainee, Terrell Ciprian, who allegedly is closely associated with Asst. Chief Corkern. Ciprian had previously also claimed to have been abused by Norwood. Plaintiffs claim that Zaffuto was disciplined for the pre-textual reason that he lied about what he observed and failed to report the incident; thus, they claim that the discipline was in retaliation for Zaffuto's anticipated testimony with respect to the Norwood discrimination claim.

The § 1983 claim arises out of the interception of a personal telephone call between Zaffuto and Susan. It is unclear when the interceptions occurred; the Court assumes for purposes of this motion that the recordings were discovered by the plaintiffs within a year of this suit being filed. It was routine for the Police Department to record telephone conversations; however, it was not routine to disseminate personal conversations between an employee and his spouse. It is not clear whether the conversation was recorded inadvertently or whether it was disseminated for any legitimate reason. Both Lt. Paul Miller and Detective Dennis Peavy testified to hearing the taped conversation between Zaffuto and his wife. Both testified that it was Corkern that played the tape for them, and the conversation was not one involving a criminal investigation or official police business.

*2 In memoranda filed with the Court and in the Pretrial Order, there have been a number of other allegations both legal and factual discussed. However, after a conference with the parties, and as a result of relevant time periods, the factual and legal issues have distilled to those matters discussed above. Any other factual claims supporting the action are not relevant to this analysis of plaintiffs' claims.

Analysis

Title VII

In order to support a retaliation claim under Title

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d  
(Cite as: 2001 WL 327597, *2 (E.D.La.))

Page 74

VII, Zaffuto has the burden of establishing that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. See Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir.1995). Furthermore, "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Id. at 781-82. Ultimate employment decisions include hiring, discharging, promoting, compensating, or granting leave, but not "events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee--anything which might jeopardize employment in the future." Mattern v. Eastman Kodak Co., 104 F.3d 702, 707-08 (5th Cir.1997).

Pretermitting questions of fact, the issue is whether as a matter of law, a 240 hour suspension is an "ultimate employment decision" in light of Mattern and its progeny. It should be noted that Zaffuto was promoted to Lieutenant after the suspension. He also presently holds the title of "Firing Range Instructor"; this promotion also occurred after the suspension.

Zaffuto was not demoted or discharged, and he has progressed in his career path. The Mattern court expressly listed "supervisor's reprimands" to which the suspension can be likened as not qualifying as an ultimate employment action. Although the suspension was without pay, thus involving compensation, he has received a permanent promotion and pay increase since the suspension. Moreover, Title VII was not designed to address every decision made by employers that arguably might have some tangential effect upon one's job. Dollis, 77 F.3d at 781 (5th Cir.1995). A suspension is not an ultimate employment decision as it is not permanent or "ultimate". It is temporary discipline that certainly in this case did not affect the career and employment status of Zaffuto. Thus, the motion for summary judgment in this regard must be granted.

Section 1983 Claim

In order to sustain a cause of action under 42 U.S.C. § 1983 for the violation of plaintiffs' constitutional right to privacy, plaintiffs must demonstrate that they had a "constitutionally protected reasonable expectation to privacy." Kee v. City of Rowlett Texas, 247 F.3d 206, 2001 WL 301034 (5th Cir. March 28, 2001). Thus, plaintiffs must prove that they had a justifiable, reasonable or a legitimate expection of privacy that was invaded by government action.

*3 It is undisputed that the Hammond Police Department has a recording system relating to the need to preserve and accurately record messages concerning emergencies or police business. A system that indiscriminately and routinely records all activities on established designated lines is not comparable to the selective use of recording equipment. Knight v. Department of Police, 619 So.2d 1119 (La.App. 4 th Cir.1993), citing Jandeck v. Village of Brookfield, 520 F.Supp. 815 (N.D.Ill.1981). However, there are questions of fact in this case as to whether the Police Department specifically targeted the plaintiffs and whether the dissemination of the phone call recording between the plaintiffs was in any way related to official police business. Therefore, there is a question of fact as to whether there was an unlawful and invasive intrusion of the privacy rights of the plaintiffs.

The Court is also pretermitting any decision as to whether the dissemination of private phone calls was an unlawful policy or custom by the City of Hammond under Monell v. Dept. of Social Services, 436 U.S. 658, 690 (1978). This issue involves questions of fact relating to the reason for the dissemination of the private phone call and that whether the decision was made by a policy maker for the city.

Although the Court is not dismissing this claim, certainly any damages to compensate plaintiffs for this alleged wrong would be minimal. Accordingly,

IT IS ORDERED that the Motion for Summary Judgment is GRANTED with respect to the Title VII claims and DENIED with respect to the § 1983 claims.

2001 WL 327597 (E.D.La.), 85 Fair Empl.Prac.Cas. (BNA) 800

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

