## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MARGUERITE A. JOHNSON,      )
                                )
         Plaintiff,            )
                                )
         v.                       )      C.A. No. 05-157-KAJ
                                )
ORLANDO J. GEORGE, JR., in both his    )      Trial By Jury Demanded
official and personal capacities, and       )
DELAWARE TECHNICAL AND          )
COMMUNITY COLLEGE,             )
                                )
         Defendants.       )

### AFFIDAVIT OF GERARD M. McNESBY

STATE OF DELAWARE        )
                            ) SS:
KENT COUNTY               )

        BE IT REMEMBERED that on this _23rd_ day of February, A.D. 2006, personally appeared before me, the undersigned, a notary public in and for the state and county aforesaid, Gerard M. McNesby, known to me (or satisfactorily proven) to be such, who being by me first duly sworn according to law, did depose and say that:

        1.      I am Vice President for Finance of Delaware Technical and Community College ("the College"),

        2.      Attached is a copy of a report from the State of Delaware Office of Auditor of Accounts dated October 20, 2005; a copy of my November 4, 2005 response to the October 20, 2005 Report; and a copy of the final report from the Office of Auditor of Accounts dated November 10, 2005.

                                   _Gerard M. McNesby_
                                   Gerard M. McNesby

SWORN TO AND SUBSCRIBED before me on the day and year first above written.

Notary Public                    Attorney - at - law

Print Name: _Brian D. Shirey_

My Commission Expires: _n/a_

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-157-KAJ |
| | ) | |
| ORLANDO J. GEORGE, JR., in both his | ) | Trial By Jury Demanded |
| official and personal capacities, and | ) | |
| DELAWARE TECHNICAL AND | ) | |
| COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I, David H. Williams, hereby certify that on March 3, 2006, I electronically filed

the attached **AFFIDAVIT OF GERARD McNESBY** with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

> Gary W. Aber, Esquire
> Aber, Goldlust, Baker & Over
> 702 King Street, Suite 600
> Wilmington, DE 19899-1675


David H. Williams (#616)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
dwilliams@morrisjames.com
Attorneys for Defendants

Dated: March 3, 2006

DHW/007409-0131/1173039/1

**A203**



STATE OF DELAWARE
## OFFICE OF AUDITOR OF ACCOUNTS

R. THOMAS WAGNER, JR., CGFM, CFE
AUDITOR OF ACCOUNTS

PHONE: (302) 739-4241
FAX: (302) 739-2723

October 20, 2005

Mr. Gerard M. McNesby
Vice President For Finance
Delaware Technical and Community College
P. O. Box 897
Dover, DE 19903

Dear Mr. McNesby:

The Office of Auditor of Accounts has completed its review of the allegations received from Delaware Technical and Community College (DTCC), and the following paragraphs contain the results of our review.

## ALLEGATIONS

1. Inappropriate reimbursements to the Vice President/Campus Director, Terry Campus.
2. Inappropriate use of Delaware Technical & Community College employees by the Vice President/Campus Director, Terry Campus.

## BACKGROUND

An entrance conference was held on April 18, 2005, with Mr. Gerard M. McNesby, Vice President for Finance, Delaware Technical and Community College and Mr. Brian D. Shirey, Esq., Chief Legal Counsel, Delaware Technical and Community College. Mr. R. Ronald Draper, Chief Administrative Auditor and Mr. Edward L. Watson, Administrative Auditor represented the Office of Auditor of Accounts. Mr. McNesby reported that the College had engaged the CPA Group, SantoraBaffone, to conduct an agreed-upon procedures engagement to determine the adherence to established policies for certain transactions and events entered into or performed by the Vice President/Campus Director of the Terry Campus. Based on the agreed-upon procedures engagement, dated April 12, 2005, Mr. McNesby advised areas of concern had been discovered regarding the possibility of improper reimbursements for travel and SuperCard purchases by Dr. Marguerite A. Johnson, the Vice President/Campus Director. Mr. McNesby also advised that the Vice President/ Campus Director might have improperly used college employees for non-college duties.

Mr. Gerard M. McNesby
Page 2 of 6
October 20, 2005

A meeting to discuss the scope of our review was held on April 25, 2005, with the following
personnel from the Delaware Technical and Community College: Mr. Gerard M. McNesby,
Vice President for Finance; Mr. Brian D. Shirey, Esq., Chief Legal Counsel;
Mr. Daniel L. Simpson, Acting Assistant Campus Director, Terry Campus; and
Mr. Robert W. Hearn, Jr., Business Manager, Terry Campus. Mr. George C. Eilers, Auditor III;
Mr. Jean Rothenburger, Investigative Administrator; and Ms. Joyce E. Pickett, Auditor II,
represented the Office of Auditor of Accounts.

## SCOPE AND METHODOLGY

We reviewed financial and other documentation relative to travel reimbursements, SuperCard
purchases and use of employee's for non-college duties for the period July 1, 1998, through
December 31, 2004. We interviewed appropriate College personnel.

## REVIEW RESULTS

### TRAVEL REIMBURSEMENTS

DTCC Terry Campus Travel Policy states, that travel requests must be completed by the
employee and approved by the employee's supervisor, Dean/Director, and the Vice
President/Campus Director prior to the trip. According to the Terry Campus Business
Manager it was normal procedure for the Campus Director not to obtain travel request
approval from the College President.

Our review of travel reimbursements for the period July 1, 1999, through
December 31, 2004, identified that the Terry Campus Vice President/Campus Director,
frequently traveled as a representative of the college. We found that only three travel
requests, of the 48 requests reviewed, were submitted for approval by the Campus
Director's supervisor. Two requests were approved and one was disapproved. We also
reviewed travel requests for the Campus Directors at the Stanton Campus and the Owens
Campus. We found that their supervisor approved travel requests for these directors.

The CPA Group identified a business trip by the Campus Director to Wake Technical
Community College (WTCC), Raleigh, North Carolina from October 23 through
October 26, 2002. During their review, the CPA Group examined travel documents and
contacted individuals at WTCC. The results of their review raised questions regarding
the appropriateness of the travel. We concur with the CPA Group's findings and have
referred this issue to the Office of the Attorney General for their review and resolution.

Our review of the Campus Director's travel expenses for meals revealed that in two
instances the daily allowance specified in the DTCC Travel Policy and State Travel
Policy was exceeded. We found that the expenses were paid from the college's
Educational Foundation. The Vice President for Finance stated that he reviewed the
expenses and subsequently approved payment from the Educational Foundation.

**A205**

Mr. Gerard M. McNesby
Page 3 of 6
October 20, 2005

We found that internal control procedures, policy manuals and directives were in place. However, the Campus Director did not comply with existing policy.

## SUPERCARD PURCHASES

DTCC fiscal policy pertaining to the use of the PNC Bank SuperCard states the individual cardholder agrees to use the card for approved purchases and agrees not to charge personal purchases. Each cardholder is responsible for maintaining an activity log of all card purchases with supporting documentation. All SuperCard transactions are subject to prior written approval. Additionally, the "Agreement and Authorization From Individual Requesting a PNC VISA Card" states, "By signing this application, the undersigned parties hereby certify that the designated Cardholder is an employee of the above referenced organization within the State of Delaware and request that PNC Bank establishes a Visa Card account in the name of the above referenced employee." The agreement also states "The employee agrees to use this card for State of Delaware approved purchases and travel ONLY and agrees NOT TO CHARGE PERSONAL PURCHASES." The Campus Director signed the agreement on November 17, 1999.

The Campus Director also signed the "Delaware Technical and Community College Supercard Employee Disclosure Statement and Guidelines", dated March 8, 2000. Paragraph II.B) Purchasing Card Approval, states, "All purchases are subject to State of Delaware purchasing, bid, and travel laws and guidelines. All SUPERCARD purchases are subject to **prior written** approval by the cardholder's supervisor and/or dean, director, or business manager. Once the cardholder has received the prior written approval, then calling, faxing, or mailing the order can be done. If the cardholder incurs expenses that are subsequently disallowed, then the cardholder must submit a personal check to the business office within 24 hours." Paragraph II.C), Purchasing Card Reporting, states "Each cardholder is responsible and personally liable for all charges made to their card and for maintaining an activity log of all card purchases with supporting documentation."

We reviewed the Campus Director's SuperCard purchases for the period June 1, 2001, through December 31, 2004. We found that the Vice President/Campus Director, Terry Campus, did not obtain prior written approval from the supervisor, the College President, for purchases made with the SuperCard during the period of review. The purchases made by the Campus Director included purchases for personal use not authorized under State purchasing regulations. The Campus Director reimbursed the College for some, but not all, of these purchases.

In addition, we found purchases were made for items not authorized under State purchasing regulations, such as meals in state for State employees. In these instances, the expenses were reviewed and approved for payment by the Vice President for Finance utilizing Educational Foundation funds. According to the Terry Campus Business

Mr. Gerard M. McNesby
Page 4 of 6
October 20, 2005

Manager it was normal procedure for the Campus Director not to obtain prior written approval from the supervisor, the College President.

The CPA Group identified the purchase of three children's storybooks from an antique store in West Virginia totaling $371. Although an extensive search, which included an inventory of Campus libraries, was conducted, the storybooks could not be located. During our review, we received information on the location of the storybooks. We found the storybooks were located in the "Learning Research Center" in the Educational Technology Building. It is our understanding from Campus officials that the Learning Research Center is not a Campus library and as such was not included in their search for the storybooks. The storybooks are now in the possession of the current Campus Director.

We found that internal control procedures, policy manuals and directives, were in place. However, the Campus Director did not comply with existing policy.

## INAPPROPRIATE USE OF DTCC EMPLOYEES

DTCC Personnel Policy Manual, Section 6.01, states "the Vice President and Campus Director in charge of the campus is authorized to establish working periods and to designate work assignments in the best interests of DTCC." In addition, Section 11.11 of the Policy Manual states, "the first duty and responsibility of the full-time employee is to render to DTCC the most effective service possible. No outside service or enterprise, professional or other, should be undertaken that might interfere with this discharge of this primary responsibility."

The CPA Group, in their agreed-upon procedures engagement, reported that:

1. The Campus Director's Secretary was required to perform non-DTCC activities during normal DTCC business hours at the direction of the Campus Director from July 1, 1999 to December 31, 2004.

2. Seven other DTCC current employees were involved, in some degree, with the Campus Director's 1999 family reunion.

3. Two current employees were involved in the Campus Director's 2001 family reunion.

4. The Campus Director used DTCC personnel for downloading of pictures from the Internet and printing color copies of the photographs.

5. The Campus Director used DTCC personnel of the marketing department to make congratulation banners for her daughter's graduation in 1998; and the making of graduation invitations for a son.

Mr. Gerard M. McNesby
Page 5 of 6
October 20, 2005

During our review, we found that the Campus Director reimbursed DTCC for the following services and products for a personal family reunion in 1999:

- Color copies, black and white copies, plastic bindings and paper in the amount of $365.40, on invoice number 080299, dated Aug 2, 1999; personal check number 598 on July 28, 1999;

- Graphic & Interior Design Student Guild (GRID) for services in the amount of $245.00, personal check number 578, and invoice dated June 29, 1999.

The findings of the CPA Group and those of the Office of Auditor of Accounts indicate the Campus Director assigned duties to DTCC employees that were not related to DTCC business. We concur with the CPA Group's summary of diverted personnel costs and material costs incurred by DTCC. Based on the CPA Groups analysis we have not done additional work in this area.

**This case has been referred to the Delaware Office of Attorney General for their review and resolution.**

**RECOMMENDATIONS**

**WE RECOMMEND THAT** the Delaware Technical and Community College:

1. Ensure that DTCC employees are complying with established policies and procedures for travel and use of the PNC SuperCard.

The results of our review were discussed at an exit conference on September 9, 2005, with Mr. Gerard M. McNesby, Vice President for Finance; Mr. Brian Shirey, Esq., Chief Legal Counsel; Mr. Daniel Simpson, Campus Director, Terry Campus; and Mr. Robert Hearn, Business Manager, Terry Campus.

Mr. Gerard M. McNesby
Page 6 of 6
October 20, 2005

Please respond, in writing, within 15 workdays upon receipt of this report with your corrective action plan relative to the findings and recommendation contained within the report. If you have any questions please contact me at 739-5058.

Sincerely,

OFFICE OF AUDITOR OF ACCOUNTS

*R. Ronald Draper*

R. Ronald Draper, CGFM, CFS
Chief Administrative Auditor

RRD:GCE:EJM
Case Number 2005-023
cc:   Mr. Daniel L. Simpson, Campus Director, Terry Campus, Delaware Technical and
      Community College
      Mr. Robert W. Hearn, Jr., Business Manager, Terry Campus, Delaware Technical and
      Community College

**A209**



**DELAWARE TECH**

*Dover♦Georgetown♦Stanton♦Wilmington*

November 4, 2005

Mr. R. Ronald Draper, CGFM, CFS
Chief Administrative Auditor
Office of Auditor of Accounts
State of Delaware
401 Federal Avenue
Townsend Building, Suite 1
Dover, DE  19901

Dear Ron:

    I am responding to your correspondence of October 20, 2005 regarding the allegations related to inappropriate reimbursements to the Vice President/Campus Director at the Terry Campus and the inappropriate use of College employees by the same individual. The following paragraphs provide a clarification of the events surrounding the purchase of books from an antique store in West Virginia and, as requested, the College's corrective action plan.

    As a point of clarification, page 4 of your report erroneously states that "the Learning Resource Center was not included in our search for the storybooks purchased by Dr. Johnson." For the record, all materials in the Learning Resource Center ("LRC") were inventoried in May, 2005 in connection with the LRC's relocation. The storybooks were not there at that time. In addition, when the books were subsequently found by Mr. Eilers, they bore no evidence that they had ever been cataloged, stamped or otherwise processed by LRC staff. Finally, it should be noted that the materials in the LRC are owned by the Department of Education ("DOE"), not the College. Therefore, assets acquired for use in the LRC would have been purchased with DOE funds, not College funds. The only reasonable conclusion that can be drawn from these facts is that the books were placed in the LRC by someone acting on Dr. Johnson's behalf sometime after May, 2005.

    In terms of the corrective action plan, we concur with your report that internal control procedures, policy manuals and directives were in place related to travel but the Campus Director did not comply with the existing policy. The College will further

A210

strengthen the established policies and procedures related to travel and use of the PNC SuperCard with more scheduled internal unannounced audits at all campuses. These audits will be random and, as noted before, provide additional controls and the necessary checks and balances regarding compliance on an on-going basis.

Many thanks for your time and all the support you and your staff have provided in assisting the College.

Sincerely,

Gerard M. McNesby
Vice President for Finance

Cc:    Brian Shirey, Esq.
       Mr. Daniel L. Simpson



RECEIVED

NOV 1 7 2005

DELAWARE TECH
FINAN. OFFICE

STATE OF DELAWARE
## OFFICE OF AUDITOR OF ACCOUNTS

R. THOMAS WAGNER, JR., CGFM, CFE
AUDITOR OF ACCOUNTS

PHONE: (302) 739-4241
FAX: (302) 739-2723

November 10, 2005

Mr. Gerard M. McNesby
Vice President For Finance
Delaware Technical and Community College
P. O. Box 897
Dover, DE 19903

Dear Mr. McNesby:

The Office of Auditor of Accounts has completed its review of the allegations received from Delaware Technical and Community College (DTCC), and the following paragraphs contain the results of our review.

## ALLEGATIONS

1. Inappropriate reimbursements to the Vice President/Campus Director, Terry Campus.
2. Inappropriate use of Delaware Technical & Community College employees by the Vice President/Campus Director, Terry Campus.

## BACKGROUND

An entrance conference was held on April 18, 2005, with Mr. Gerard M. McNesby, Vice President for Finance, Delaware Technical and Community College and Mr. Brian D. Shirey, Esq., Chief Legal Counsel, Delaware Technical and Community College. Mr. R. Ronald Draper, Chief Administrative Auditor and Mr. Edward L. Watson, Administrative Auditor represented the Office of Auditor of Accounts. Mr. McNesby reported that the College had engaged the CPA Group, SantoraBaffone, to conduct an agreed-upon procedures engagement to determine the adherence to established policies for certain transactions and events entered into or performed by the Vice President/Campus Director of the Terry Campus. Based on the agreed-upon procedures engagement, dated April 12, 2005, Mr. McNesby advised areas of concern had been discovered regarding the possibility of improper reimbursements for travel and SuperCard purchases by Dr. Marguerite A. Johnson, the Vice President/Campus Director. Mr. McNesby also advised that the Vice President/ Campus Director might have improperly used college employees for non-college duties.

A212

Mr. Gerard M. McNesby
Page 2 of 8
November 10, 2005

A meeting to discuss the scope of our review was held on April 25, 2005, with the following
personnel from the Delaware Technical and Community College: Mr. Gerard M. McNesby,
Vice President for Finance; Mr. Brian D. Shirey, Esq., Chief Legal Counsel;
Mr. Daniel L. Simpson, Acting Assistant Campus Director, Terry Campus; and
Mr. Robert W. Hearn, Jr., Business Manager, Terry Campus. Mr. George C. Eilers, Auditor III;
Mr. Jean Rothenburger, Investigative Administrator; and Ms. Joyce E. Pickett, Auditor II,
represented the Office of Auditor of Accounts.

## SCOPE AND METHODOLGY

We reviewed financial and other documentation relative to travel reimbursements, SuperCard
purchases and use of employee's for non-college duties for the period July 1, 1998, through
December 31, 2004. We interviewed appropriate College personnel.

## REVIEW RESULTS

### TRAVEL REIMBURSEMENTS

DTCC Terry Campus Travel Policy states, that travel requests must be completed by the
employee and approved by the employee's supervisor, Dean/Director, and the Vice
President/Campus Director prior to the trip. According to the Terry Campus Business
Manager it was normal procedure for the Campus Director not to obtain travel request
approval from the College President.

Our review of travel reimbursements for the period July 1, 1999, through
December 31, 2004, identified that the Terry Campus Vice President/Campus Director,
frequently traveled as a representative of the college. We found that only three travel
requests, of the 48 requests reviewed, were submitted for approval by the Campus
Director's supervisor. Two requests were approved and one was disapproved. We also
reviewed travel requests for the Campus Directors at the Stanton Campus and the Owens
Campus. We found that their supervisor approved travel requests for these directors.

The CPA Group identified a business trip by the Campus Director to Wake Technical
Community College (WTCC), Raleigh, North Carolina from October 23 through
October 26, 2002. During their review, the CPA Group examined travel documents and
contacted individuals at WTCC. The results of their review raised questions regarding
the appropriateness of the travel. We concur with the CPA Group's findings and have
referred this issue to the Office of the Attorney General for their review and resolution.

Our review of the Campus Director's travel expenses for meals revealed that in two
instances the daily allowance specified in the DTCC Travel Policy and State Travel
Policy was exceeded. We found that the expenses were paid from the college's
Educational Foundation. The Vice President for Finance stated that he reviewed the
expenses and subsequently approved payment from the Educational Foundation.

Mr. Gerard M. McNesby
Page 3 of 8
November 10, 2005

We found that internal control procedures, policy manuals and directives were in place. However, the Campus Director did not comply with existing policy.

## SUPERCARD PURCHASES

DTCC fiscal policy pertaining to the use of the PNC Bank SuperCard states the individual cardholder agrees to use the card for approved purchases and agrees not to charge personal purchases. Each cardholder is responsible for maintaining an activity log of all card purchases with supporting documentation. All SuperCard transactions are subject to prior written approval. Additionally, the "Agreement and Authorization From Individual Requesting a PNC VISA Card" states, "By signing this application, the undersigned parties hereby certify that the designated Cardholder is an employee of the above referenced organization within the State of Delaware and request that PNC Bank establishes a Visa Card account in the name of the above referenced employee." The agreement also states "The employee agrees to use this card for State of Delaware approved purchases and travel ONLY and agrees NOT TO CHARGE PERSONAL PURCHASES." The Campus Director signed the agreement on November 17, 1999.

The Campus Director also signed the "Delaware Technical and Community College Supercard Employee Disclosure Statement and Guidelines", dated March 8, 2000. Paragraph II.B) Purchasing Card Approval, states, "All purchases are subject to State of Delaware purchasing, bid, and travel laws and guidelines. All SUPERCARD purchases are subject to **prior written** approval by the cardholder's supervisor and/or dean, director, or business manager. Once the cardholder has received the prior written approval, then calling, faxing, or mailing the order can be done. If the cardholder incurs expenses that are subsequently disallowed, then the cardholder must submit a personal check to the business office within 24 hours." Paragraph II.C), Purchasing Card Reporting, states "Each cardholder is responsible and personally liable for all charges made to their card and for maintaining an activity log of all card purchases with supporting documentation."

We reviewed the Campus Director's SuperCard purchases for the period June 1, 2001, through December 31, 2004. We found that the Vice President/Campus Director, Terry Campus, did not obtain prior written approval from the supervisor, the College President, for purchases made with the SuperCard during the period of review. The purchases made by the Campus Director included purchases for personal use not authorized under State purchasing regulations. The Campus Director reimbursed the College for some, but not all, of these purchases.

In addition, we found purchases were made for items not authorized under State purchasing regulations, such as meals in state for State employees. In these instances, the expenses were reviewed and approved for payment by the Vice President for Finance utilizing Educational Foundation funds. According to the Terry Campus Business

Mr. Gerard M. McNesby
Page 4 of 8
November 10, 2005

Manager it was normal procedure for the Campus Director not to obtain prior written approval from the supervisor, the College President.

The CPA Group identified the purchase of three children's storybooks from an antique store in West Virginia totaling $371. Although an extensive search, which included an inventory of Campus libraries, was conducted, the storybooks could not be located. During our review, we received information on the location of the storybooks. We found the storybooks were located in the "Learning Research Center" in the Educational Technology Building. It is our understanding from Campus officials that the Learning Research Center is not a Campus library and as such was not included in their search for the storybooks. The storybooks are now in the possession of the current Campus Director.

We found that internal control procedures, policy manuals and directives, were in place. However, the Campus Director did not comply with existing policy.

**INAPPROPRIATE USE OF DTCC EMPLOYEES**

DTCC Personnel Policy Manual, Section 6.01, states "the Vice President and Campus Director in charge of the campus is authorized to establish working periods and to designate work assignments in the best interests of DTCC." In addition, Section 11.11 of the Policy Manual states, "the first duty and responsibility of the full-time employee is to render to DTCC the most effective service possible. No outside service or enterprise, professional or other, should be undertaken that might interfere with this discharge of this primary responsibility."

The CPA Group, in their agreed-upon procedures engagement, reported that:

1. The Campus Director's Secretary was required to perform non-DTCC activities during normal DTCC business hours at the direction of the Campus Director from July 1, 1999 to December 31, 2004.

2. Seven other DTCC current employees were involved, in some degree, with the Campus Director's 1999 family reunion.

3. Two current employees were involved in the Campus Director's 2001 family reunion.

4. The Campus Director used DTCC personnel for downloading of pictures from the Internet and printing color copies of the photographs.

5. The Campus Director used DTCC personnel of the marketing department to make congratulation banners for her daughter's graduation in 1998; and the making of graduation invitations for a son

Mr. Gerard M. McNesby
Page 5 of 8
November 10, 2005

During our review, we found that the Campus Director reimbursed DTCC for the following services and products for a personal family reunion in 1999:

- Color copies, black and white copies, plastic bindings and paper in the amount of $365.40, on invoice number 080299, dated Aug 2, 1999; personal check number 598 on July 28, 1999;

- Graphic & Interior Design Student Guild (GRID) for services in the amount of $245.00, personal check number 578, and invoice dated June 29, 1999.

The findings of the CPA Group and those of the Office of Auditor of Accounts indicate the Campus Director assigned duties to DTCC employees that were not related to DTCC business. We concur with the CPA Group's summary of diverted personnel costs and material costs incurred by DTCC. Based on the CPA Groups analysis we have not done additional work in this area.

**This case has been referred to the Delaware Office of Attorney General for their review and resolution.**

**RECOMMENDATIONS**

**WE RECOMMEND THAT** the Delaware Technical and Community College:

1. Ensure that DTCC employees are complying with established policies and procedures for travel and use of the PNC SuperCard.

The results of our review were discussed at an exit conference on September 9, 2005, with Mr. Gerard M. McNesby, Vice President for Finance; Mr. Brian Shirey, Esq., Chief Legal Counsel; Mr. Daniel Simpson, Campus Director, Terry Campus; and Mr. Robert Hearn, Business Manager, Terry Campus.

**AUDITEE'S RESPONSE**

On November 8, 2005, the Office of Auditor of Accounts received Delaware Technical and Community College's response/corrective action plan regarding the allegations related to inappropriate reimbursements to the former Vice President/Campus Director at the Terry Campus. The College's response has been incorporated as part of this report.



**DELAWARE TECH**

*Dover♦Georgetown♦Stanton♦Wilmington*

November 4, 2005

Mr. R. Ronald Draper, CGFM, CFS
Chief Administrative Auditor
Office of Auditor of Accounts
State of Delaware
401 Federal Avenue
Townsend Building, Suite 1
Dover, DE  19901

Dear Ron:

I am responding to your correspondence of October 20, 2005 regarding the allegations related to inappropriate reimbursements to the Vice President/Campus Director at the Terry Campus and the inappropriate use of College employees by the same individual. The following paragraphs provide a clarification of the events surrounding the purchase of books from an antique store in West Virginia and, as requested, the College's corrective action plan.

As a point of clarification, page 4 of your report erroneously states that "the Learning Resource Center was not included in our search for the storybooks purchased by Dr. Johnson." For the record, all materials in the Learning Resource Center ("LRC") were inventoried in May, 2005 in connection with the LRC's relocation. The storybooks were not there at that time. In addition, when the books were subsequently found by Mr. Eilers, they bore no evidence that they had ever been cataloged, stamped or otherwise processed by LRC staff. Finally, it should be noted that the materials in the LRC are owned by the Department of Education ("DOE"), not the College. Therefore, assets acquired for use in the LRC would have been purchased with DOE funds, not College funds. The only reasonable conclusion that can be drawn from these facts is that the books were placed in the LRC by someone acting on Dr. Johnson's behalf sometime after May, 2005.

In terms of the corrective action plan, we concur with your report that internal control procedures, policy manuals and directives were in place related to travel but the Campus Director did not comply with the existing policy. The College will further

*Delaware Technical & Community College*
Office of the President
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-3737 Fax: (302) 739-3345
*Equal Opportunity/Affirmative Action Institution*

strengthen the established policies and procedures related to travel and use of the PNC SuperCard with more scheduled internal unannounced audits at all campuses. These audits will be random and, as noted before, provide additional controls and the necessary checks and balances regarding compliance on an on-going basis.

Many thanks for your time and all the support you and your staff have provided in assisting the College.

Sincerely,

Gerard M. McNesby
Vice President for Finance

Cc:    Brian Shirey, Esq.
        Mr. Daniel L. Simpson

Mr. Gerard M. McNesby
Page 8of 8
November 10, 2005

### AUDITOR'S COMMENT

The Office of Auditor of Accounts concurs that Delaware Technical and Community College has taken the necessary corrective action in response to the findings and recommendation contained within this report.

Sincerely,

OFFICE OF AUDITOR OF ACCOUNTS

R. Thomas Wagner, Jr., CGFM, CFE
Auditor of Accounts

RRD:GCE:EJM
Case Number 2005-023
cc:  Mr. Daniel L. Simpson, Campus Director, Terry Campus, Delaware Technical and
     Community College
     Mr. Robert W. Hearn, Jr., Business Manager, Terry Campus, Delaware Technical and
     Community College
     Mr. Brian D. Shirey, Esq., Chief Legal Counsel, Delaware Technical and Community
     College

Page 1

1   IN THE MATTER OF:                                    )

2   THE TERMINATION OF MARGUERITE JOHNSON, Ph.D.         )

3                    Termination hearing in the

4   above-referenced matter taken pursuant to notice

5   before Tanya M. Congo, a Notary Public and Certified

6   Professional Reporter, in Conference Room 305 of the

7   MBNA Building at Delaware State University, Dover,

8   Delaware, on Wednesday, June 29, 2005, beginning at

9   9:35 a.m., there being present:

10  APPEARANCES:

11  BIFFERATO, GENTILOTTI & BIDEN, P.A.
    1308 Delaware Avenue
12  Wilmington, Delaware 19899
    BY:  THE HONORABLE VINCENT A. BIFFERATO, SR.
13  Hearing Officer

14  ABER, GOLDLUST, BAKER & OVER
    702 King Street, Suite 600
15  Wilmington, Delaware 19899
    BY:  GARY W. ABER, ESQUIRE
16  Attorney for Dr. Marguerite Johnson

17  MORRIS, JAMES, HITCHENS & WILLIAMS
    222 Delaware Avenue, 10th Floor
18  Wilmington, Delaware 19801
    BY:  DAVID H. WILLIAMS, ESQUIRE
19  Attorney for Delaware Technical and Community College

20

21

22

23

24

Page 16

1       A.    I indicated to Dr. Johnson that I had a

2   responsibility to investigate fully the allegations

3   of abusive behavior on her part.   That they were

4   coming from many different sources, and that my

5   responsibility was to get to the bottom of it, so to

6   speak, and find out whether the allegations were true

7   or false.

8             I made the determination that I had to

9   protect both the college and Dr. Johnson's due

10  process rights.   For that reason I made a decision,

11  and shared this with Dr. Johnson as one of the

12  options, that if we were to proceed with the

13  investigation, that I would retain outside counsel,

14  an independent, arm's length, well-respected law

15  firm, who would come in and do the independent

16  investigation formally, and determine whether or not

17  the allegations were true.

18            In that manner I believe I was

19  protecting her due process rights rather than just

20  turning it over to my internal staff for an

21  investigation.

22            Conversely, in order to protect the

23  college's interest, I placed her on paid

24  administrative leave, and I did that to protect the

Page 17

1   college's interests so that when the investigation

2   went forward, and the individuals from Morris, James

3   conducted their investigation, that people would feel

4   free to be open and honest and relay what they knew

5   factually first hand to the investigators.

6             So I balanced both of those out and

7   told her that that was one option.

8             The second option would be, obviously,

9   if she was to retire then there would be no need for

10  an investigation.

11      Q.   Now, at the point when you placed Dr.

12  Johnson on paid leave, to what extent, if at all, did

13  you view that as a disciplinary action?

14      A.   It was not a disciplinary action at all.

15  In fact, Delaware Tech, of course, is governed by the

16  Federal and State laws.  But we're also governed by

17  the Board of Trustees' Personnel Policy Manual.  And

18  there's a section in there on disciplinary action.

19  And there's a list of actions that the Board is

20  authorized to be taken as disciplinary actions.

21            Administrative leave is not one of

22  them.  It is simply not one of them.  Reprimand,

23  suspension, all of those are enumerated.

24  Administrative leave is not a disciplinary action of

A222

mean, I'm sorry, in October, 2002.

I think that that gives at least a general summary of what we will present through our witnesses.

JUDGE BIFFERATO:  Thank you.  Mr. Aber.

MR. ABER:  We had a brief teleconference prior to this, but I, for the record, want to establish what is happening here.

It is our position that this entire matter is an attempt to post-hoc justification the inappropriate dismissal of Dr. Johnson's from her position.

In November, 2004, Dr. Johnson was called in by Dr. George based upon some anonymous comments that were attributed to her.  She was not told who was making the comments.  She was not told who was making -- the nature of the comments.

She was just told abruptly, you either resign or I'm going to conduct an investigation and I'm going to have you gone.

Dr. Johnson declined to resign.  She was put on administrative leave, told to clear out her office.  And Dr. George, true to his word, then

A223

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-157-KAJ |
| | ) | |
| ORLANDO J. GEORGE, JR., in both his | ) | Trial By Jury Demanded |
| official and personal capacities, and | ) | |
| DELAWARE TECHNICAL AND | ) | |
| COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I, David H. Williams, hereby certify that on June 16, 2006, I electronically filed the

attached **APPENDIX TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION**

**FOR SUMMARY JUDGMENT** with the Clerk of Court using CM/ECF which will send notification of

such filing(s) to the following:

> Gary W. Aber, Esquire
> Aber, Goldlust, Baker & Over
> 702 King Street, Suite 600
> Wilmington, DE 19899-1675

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

David H. Williams (#616)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900
dwilliams@morrisjames.com
Attorneys for Defendants

Dated: June 16, 2006