# TAB 2

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 1

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Texas, Dallas
Division.
Kevin ELLIS, et al., Plaintiffs,
v.
Eddie CRAWFORD, et al., Defendants.
No. Civ.A. 3:03CV2416D.

March 3, 2005.

**Background:** Police officers brought § 1983 action
against city police officials, alleging unlawful
retaliation for their perceived support of
African-American colleague who had been
promoted through settlement of race discrimination
suit. Officials moved for dismissal.

2**Holding:** The District Court, Fitzwater, J., held
that officer did not suffer "adverse employment
action" for purposes of retaliation claim.

Motion granted in part and denied in part.

**[1] Constitutional Law 92 ☜0**

92 Constitutional Law
First Amendment retaliation; nexus issue. Plaintiffs
assert in their Rule 7(a) reply that "[o]vertime and
compensatory time is denied to all ICP Officers at
Northwest per Chief Edwards," and that other ICP
Units are permitted overtime. They also assert that,
at all relevant times," they were assigned to the
Northwest Division ICP Unit. They therefore
appear to allege that Edwards denied all of them the
opportunity to earn overtime and compensatory
time. This allegation is insufficient to serve as the
basis for plaintiffs' First Amendment retaliation
claim. To prove such a claim, plaintiffs must show,
*inter alia,* that they suffered an adverse action that "

was motivated by [their] protected speech." They
have not specified when Edwards made the decision
to deny them overtime. This deficiency is fatal to
the claim. U.S.C.A. Const.Amend. 1.

**[2] Constitutional Law 92 ☜0**

92 Constitutional Law
First Amendment retaliation. Adverse employment
action. Although plaintiffs apparently allege that
they were prevented from accumulating overtime
and compensatory time credit, they have not alleged
facts that permit the court to determine whether this
denial was " 'sufficiently serious to constitute a
constitutional injury. Specifically, their pleadings
lack any facts that show that the alleged denial was
significant enough that it could be considered
analogous to the actions the Fifth Circuit lists as
examples of adverse employment actions, as
opposed to something more trivial. Without such
detail, the court is unable to determine whether
plaintiffs have pleaded a First Amendment
violation. This failure prevents plaintiffs from
overcoming the qualified immunity defense because
the allegations fail to show that the alleged denial of
overtime and compensatory time constituted an
adverse employment action. U.S.C.A.
Const.Amend. 1.

**[3] Constitutional Law 92 ☜0**

92 Constitutional Law
Adverse employment action. Plaintiffs also allege
that required hours of employment for the
Northwest Division ICP Unit, which included night
duty, were different from those in DPD's other ICP
Units and "were established by the Defendants for
racial and/or retaliatory reasons." In *Benningfield*
the court rejected an argument that a transfer to the
night shift was an adverse employment action.
Although "a transfer may also constitute a demotion,
" plaintiffs allege in this case only that they were
required to work different hours, not that they were
transferred. They have not adequately pleaded an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

adverse employment action on this basis. U.S.C.A. Const.Amend. 1.

**[4] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. Plaintiffs also assert that they have been falsely accused of several acts of misconduct for "racially and/or retaliatory reasons [.]" This allegation is insufficient to show that plaintiffs suffered an adverse employment action, because mere accusations, without more, are not adverse employment actions. U.S.C.A. Const.Amend. 1.

**[5] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. Plaintiffs advance certain allegations that appear to focus on defendants' failure to take action when adverse actions were taken against plaintiffs. For example, they assert that "Hampton failed to take action against Crawford for his attempted illegal entry into Bush's office and have failed to take action against Defendants Renaud, Edwards, Gunn, Andrews and Gerdes when these Defendants took racially inspired and retaliatory actions against the plaintiffs. U.S.C.A. Const.Amend. 1.

**[6] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. Even if Bush was completely precluded from attending community meetings, this would not of itself rise to the level of an adverse employment action. Moreover, the assertion that Bush was denied the opportunity to earn compensatory time or overtime pay are alone insufficient to show that he suffered an adverse employment action. U.S.C.A. Const.Amend. 1.

**[7] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. Plaintiffs do not assert that, as a result of the downgraded performance evaluation, Bush suffered the alteration of an important condition of employment, was denied an

employment benefit or incurred some other negative employment consequence, or that the lower rating functioned as a formal reprimand. Although plaintiffs allege that Bush was "downgraded" on his review, they do not even plead facts that show that the review could be construed as negative. Absent such facts, plaintiffs have failed to allege that Bush's downgraded appraisal was significant enough to rise to the level of a constitutional violation. U.S.C.A. Const.Amend. 1.

**[8] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. Plaintiffs' allegation that Renaud placed false and adverse comments in Bush's personnel file without his knowledge did not constitute "adverse employment action," for purposes of plaintiff's First Amendment retaliation claim; they neither characterize the comments as a reprimand nor plead facts to show that the comments could be construed as something akin to a formal reprimand. The Fifth Circuit has recognized that criticism alone is not an adverse employment action. U.S.C.A. Const.Amend. 1.

**[9] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. The failure of Gerdes, Edwards, Hampton, and Bolton to intercede at Bush's request to prevent an unfounded investigation of Ellis, Fuentes, and Clayton regarding their alleged improper use of City property does not constitute an adverse employment action. Nor does Gerdes' alleged withholding of pertinent evidence that Bush provided him. Plaintiffs' allegation that Bush once attempted to correct information contained in Fuentes' internal affairs file and that, for retaliatory reasons, the file was not altered similarly fails to show that Bush suffered an adverse employment action. U.S.C.A. Const.Amend. 1.

**[10] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. The allegations that Renaud required Bush to answer recorded questions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

regarding Andrews' transfer, pick up court sign-in and sign-out sheets, and carry out her orders and relay her opinions to those under his command are likewise inadequate to plead an adverse employment action. U.S.C.A. Const.Amend. 1.

**[11] Constitutional Law 92 ⬤0**

92 Constitutional Law
Adverse employment action. Plaintiffs have not sufficiently pleaded that Bush suffered an adverse employment action when Edwards allegedly required him to relinquish the keys to his assigned vehicle. U.S.C.A. Const.Amend. 1.

**[12] Constitutional Law 92 ⬤0**

92 Constitutional Law
Adverse employment action. Renaud, Gerdes, and Edwards initiated an investigation against Bush based on an allegation that he made inappropriate workplace comments. An investigation by itself does not constitute an adverse employment action. U.S.C.A. Const.Amend. 1.

**[13] Constitutional Law 92 ⬤0**

92 Constitutional Law
The allegation that Renaud rejected Bush's nomination for Supervisor of the Year is likewise insufficient to show an adverse employment action. The court can neither say that the denial of such recognition is equivalent in gravity to a discharge, demotion, refusal to hire, refusal to promote, or reprimand, nor can it conclude from plaintiffs' allegations that Bush suffered "some serious, objective, and tangible harm" as a result of not being nominated. U.S.C.A. Const.Amend. 1.

**[14] Constitutional Law 92 ⬤0**

92 Constitutional Law
Adverse employment action. Neither Crawford's posting of Bush's IAD complaint nor his attempted unlawful entry into Bush's office constitutes an adverse employment action. Plaintiffs have not pleaded facts that show that the posting of a complaint regarding another officer's misconduct altered an important condition of Bush's

employment or resulted in the denial of an employment benefit or some other negative consequence. Thus it cannot be classified with the activities that constitute adverse employment actions. U.S.C.A. Const.Amend. 1.

**[15] Constitutional Law 92 ⬤0**

92 Constitutional Law
Adverse employment action. Edwards' directive to Gunn to question Bush's work performance is not an adverse employment action. Merely questioning an employee about his work performance cannot, without more, serve as the basis for a First Amendment retaliation claim. U.S.C.A. Const.Amend. 1.

**[16] Constitutional Law 92 ⬤0**

92 Constitutional Law
Plaintiffs allege that, after Bush informed Renaud and Edwards of his interest in filling an advertised vacancy in the DPD's deployment section, Renaud and Edwards told Bush that a decision had been made not to fill the position. Because Bush was already employed by DPD, the court construes the allegation as being akin to a refusal to promote than to a refusal to hire. U.S.C.A. Const.Amend. 1.

**[17] Constitutional Law 92 ⬤0**

92 Constitutional Law
The allegation that Bush's grievance regarding Gerdes' downgraded performance evaluation was intentionally not acted upon does not allege an adverse employment action. It fails to connect the action to a specific defendant. U.S.C.A. Const.Amend. 1.

**[18] Constitutional Law 92 ⬤0**

92 Constitutional Law
Adverse employment action. Crawford's posting of Wash's statement, Edwards' removal of Wash's memorandum to Bolton informing him of that posting, and Edwards' false explanation as to why she removed the memorandum are not adverse employment actions. Although these acts may have been unpleasant to Wash, plaintiffs have failed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

plead specific facts that establish that they alone adversely affected an important condition of his employment or otherwise affected him negatively. This same reasoning applies to the adverse decisions regarding the validity of Wash's grievances. U.S.C.A. Const.Amend. 1.

**[19] Constitutional Law 92 ☞0**

92 Constitutional Law
Adverse employment action. Plaintiffs' allegations regarding Wash's transfers are similarly inadequate to allege that he suffered an adverse employment action. In certain circumstances, a transfer may constitute an adverse employment action for purposes of a First Amendment retaliation claim. Plaintiffs fail to allege that Wash suffered any adverse consequences as a result of the transfers. U.S.C.A. Const.Amend. 1.

**[20] Constitutional Law 92 ☞0**

92 Constitutional Law
The alleged investigation of Ellis initiated by Crawford, Renaud, Edwards, and Gerdes, and Gerdes' act of withholding evidence pertinent to that investigation, are not adverse employment actions. Even if false allegations were made against Ellis, false accusations do not constitute an adverse employment action. U.S.C.A. Const.Amend. 1.

**[21] Constitutional Law 92 ☞0**

92 Constitutional Law
Plaintiffs fail to assert facts to show that any defendant was responsible for the dent on Ellis' truck. Thus even assuming that denting one's vehicle can constitute an adverse employment action, the allegation is insufficient to show that Ellis suffered an adverse employment action committed by a particular defendant. U.S.C.A. Const.Amend. 1.

**[22] Constitutional Law 92 ☞0**

92 Constitutional Law
Plaintiffs have sufficiently pleaded that Ellis suffered an adverse employment action at the hands of Renaud and Edwards. As the court explains

above, formal reprimands are adverse employment actions. U.S.C.A. Const.Amend. 1.

**[23] Constitutional Law 92 ☞0**

92 Constitutional Law
The court first considers whether Ellis' IAD memorandum regarding Crawford's alleged attempted break-in of Bush's office relates to a matter of public concern. The subject line of Ellis' memorandum is: "Attempted entry into Sgt. Lee Bush's office." The contents of the memorandum concern facts that Ellis gathered in a conversation he had with the officer who was present at the time of the attempted break-in. U.S.C.A. Const.Amend. 1
.

**[24] Constitutional Law 92 ☞0**

92 Constitutional Law
Protected speech. Plaintiffs allege that on or about February 1, 2002, Plaintiff[s] Wash, Fuentes, Bush, Ellis and Clayton reported and complained of Defendant Crawford's retaliatory and racially motivated posting of the Plaintiffs' complaint and statements on the Police bulletin board at the Northwest Division headquarters. U.S.C.A. Const.Amend. 1.

**[25] Constitutional Law 92 ☞0**

92 Constitutional Law
Plaintiffs allege that "Clayton observed and filed grievances concerning racially discriminatory treatment accomplished by officers at the Northwest Division against black members of the ICP Unit. Plaintiffs attach a memorandum addressed to Hampton that alleges, *inter alia,* that Lieutenant Archie King engaged in acts of racism against other police officers. The memorandum is signed by Clayton and Fuentes and is dated March 10, 2004. Even if the grievances or the memorandum constitutes speech on a matter of public concern, the allegations cannot serve as the basis for plaintiffs' First Amendment retaliation claims. U.S.C.A. Const.Amend. 1.

**[26] Civil Rights 78 ☞0**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

78 Civil Rights

The court now considers whether defendants are entitled to qualified immunity concerning plaintiffs' § 1983 race discrimination claims. Defendants maintain that these actions must be dismissed because plaintiffs have not shown that they suffered an adverse employment action at the hands of any defendant that rises to the level of a constitutional violation or a violation of clearly established law of which a reasonable person would have known. The court holds that the broader definition of adverse employment action, which may include reprimands, disciplinary filings, and some transfers, applies to plaintiffs' § 1983 race discrimination claims as it does to their First Amendment retaliation claims. 42 U.S.C.A. § 1983.

[27] Civil Rights 78 ⬩⟊0

78 Civil Rights

Defendants move to dismiss plaintiffs' § 1985(2) conspiracy claim, contending they have failed to state a claim on which relief can be granted because defendants are entitled to qualified immunity. They argue, *inter alia,* that the conspiracy allegations against them are general, conclusory, and lack detail concerning the actionable conduct that they undertook to make their conduct a conspiracy. The court agrees. 42 U.S.C.A. § 1985(2).

Douglas R. Larson, Law Office of Douglas R. Larson, Mesquite, TX, for Plaintiffs.
Janice Smith Moss, Dallas City Attorney's Office, Dallas, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*
FITZWATER, J.

*1 Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) presents the questions whether defendants are entitled to qualified immunity from plaintiffs' suit to recover under 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments and whether plaintiffs have stated a claim for relief under 42 U.S.C. § 1985(2). For the reasons that follow, the court grants the motion in part and denies it in part and permits plaintiffs to file an amended Rule 7(a) reply.

I

Plaintiffs Kevin Ellis ("Ellis"), Lee Bush ("Bush"), Tom Clayton ("Clayton"), Shawn Wash ("Wash"), and Steve Fuentes ("Fuentes") sue under 42 U.S.C. § 1983 to recover for violations of their First and/or Fourteenth Amendment rights to freedom from discrimination, retaliation, and/or equal protection of the law,[FN1] and under § 1985(2) for conspiracy to violate their civil rights.[FN2] Ellis and Clayton are Caucasian, Wash and Bush are African-American, and Fuentes is of Hispanic heritage. Plaintiffs allege that defendants Eddie Crawford ("Crawford"), Randy Hampton (" Hampton"), Terrell Bolton ("Bolton"), Roseanna Renaud ("Renaud"), June Kim Edwards ("Edwards" ), Joe Gunn ("Gunn"), Rick Andrews ("Andrews"), and Scott Gerdes ("Gerdes") unlawfully retaliated against Bush for obtaining a promotion to the rank of sergeant through a settlement of a race discrimination suit against the City of Dallas ("City" ) and individuals in the Dallas Police Department (" DPD"). They aver that defendants retaliated against the other four plaintiffs because they appeared to support Bush.

> FN1. Plaintiffs allege in their complaint that defendants acted "in violation of Title 42 U.S.C. § 1983[.]" Compl. ¶ 23. Section 1983 cannot be "violated." " Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. It is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Colson v. Grohman,* 174 F.3d 498, 504 n. 2 (5th Cir.1999) (citation omitted). "Section 1983 provides that any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress [.] Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir.1997) (quoting, *inter alia, Johnston v. Harris County Flood Control Dist. .,* 869 F.2d 1565, 1573 (5th Cir.1989)) (citations and internal quotation marks omitted).

FN2. Contending it is unclear whether plaintiffs intend to allege a claim under Title VII of the Civil Rights Act of 1964 (" Title VII"), 42 U.S.C. § 2000e *et seq.,* defendants move to dismiss such a claim, if made. On January 31, 2005 plaintiffs filed a notice of error that indicates that the reference in their complaint to Title VII is mistaken. This notice also clarifies that plaintiffs are asserting claims solely under 42 U.S.C. §§ 1983 and 1985. Accordingly, the court need not address this ground of defendants' motion.

According to plaintiffs' complaint and Rule 7(a) reply, after being passed over several times for promotion, Bush sued the City and several members of the DPD command staff, including former DPD Police Chief Bennie Click ("Click"). Under the terms of a settlement, Bush was promoted to the rank of sergeant. Before the case settled, the City promoted Bolton, who is also African-American, to the position of Chief of Police. Bolton replaced virtually all members of Click's command staff who had been responsible for the discrimination against Bush. All the persons who were formerly members of Click's command staff were members of the Dallas Police Association ("DPA"), a union that represents DPD officers. Defendant Crawford was the DPA Vice President.

In February 2001 Bush was assigned to command the Interactive Community Policing ("ICP") Unit of DPD's Northwest Division. Each other plaintiff was also assigned to that Unit and was under Bush's direct supervision. Before Bush took over command, all six DPD ICP Units were treated similarly. Afterward, however, the Northwest Division ICP Unit was singled out for discriminatory and retaliatory treatment, including unfounded claims of misconduct, denial of the ability to earn overtime, and unfavorable work hours. Other ICP Units are not subjected to such treatment.

Edwards, an Assistant Police Chief, commanded the Northwest Division. Bush's immediate supervisors were Renaud, Gunn, Andrews, and Gerdes, each of whom is Caucasian. Edwards, Renaud, Gunn, Andrews, and Gerdes are DPA members, as are the vast majority of DPD members. Many minorities perceive DPA to be racist, so many African-American and Hispanic officers are members of other unions. DPA is the largest union, however, and carries the most clout with the DPD administration. Most DPA members objected to Bush's promotion. Plaintiffs allege that Crawford, Renaud, Edwards, Gunn, Andrews, and Gerdes are racists and are among the DPA members who resent Bush's advancement via a lawsuit in which he alleged racism.

*2 The members of DPD upper management whom Bolton replaced were active members of the DPA. DPA perceived Bolton as having replaced union members whom Bush had accused of racial discrimination, and it resented Bush for his role in terminating several senior officers who were DPA members. DPA has great influence over the activities and operations of DPD because it is the largest police union and a majority of DPD supervisory officers are DPA members. DPD supervisory staff, including Bolton, Renaud, Andrews, Gunn, Gerdes, and Edwards, permit DPA officers to conduct union business while on duty.

Crawford, as DPA Vice President, enjoys privileges not given other officers, including conducting DPA business while on duty. Because of his position in the DPA, he enjoys an aura of protection from criticism for misconduct and for performing DPA business while on duty. Just before Bush assumed command of the Northwest Division ICP Unit, Crawford vented his personal dislike for Bush to several division officers and made it clear that he did not want to serve with him and was against his assignment to the Division. He promised several DPA members that he had a plan to get rid of Bush when he arrived.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Wash once observed Crawford attempt to gain unlawful entrance to Bush's locked office at the Northwest Division. Another officer was nearby. When Wash alerted them to his presence, they walked away. Later that same day, Ellis attempted to learn the role of the other officer who was present. Ellis and Wash made written reports of their observations and/or activities, and Bush submitted a complaint and reports to the DPD Internal Affairs Division ("IAD"). Fuentes and Clayton supported the actions of the other plaintiffs.

Crawford obtained copies of the statements and/or complaints that Bush, Ellis, and Wash had made and posted them on a bulletin board at Northwest Division headquarters. He did this to signal to all DPA members that they should shun and retaliate against Bush and the other plaintiffs who associated with him and/or were persons who supported his IAD complaint. The posting also signaled that Bush and the other plaintiffs had violated the code of silence and that other DPD officers should join him in retaliating against Bush and any officer who supported him. And it challenged Bolton and Hampton not to take action against him because he and the DPA would view punishment of him as support for Bush and the other plaintiffs.

Renaud, Edwards, Gunn, Andrews, and Gerdes joined Crawford in his retaliatory and racially-inspired actions against plaintiffs. Bolton and Hampton joined in the actions to avoid any direct attack against Crawford, a high profile DPA member. Bolton and Hampton thus failed to take action against Crawford for illegally attempting to enter Bush's office and failed to take action against Renaud, Edwards, Gunn, Andrews, and Gerdes for taking racially-inspired and retaliatory actions against plaintiffs. Bolton and Hampton had received extensive criticism from DPA officials that Bolton had promoted minorities over more-qualified Caucasians. Bolton had also been criticized for the perception that he had been responsible for the favorable resolution of Bush's discrimination suit.

**\*3** Plaintiffs later reported and complained about Crawford's retaliatory and racially-motivated posting of their complaint and statements. Each time they attempted to obtain relief from the racially-inspired retaliatory acts and treatment that Crawford instigated, Renaud, Bolton, Hampton, Edwards, Gunn, Andrews, and/or Gerdes refused to take any action to resolve or prevent the retaliatory treatment. Because of plaintiffs' submissions to IAD and the other defendants' failure to take action against Crawford for attempting to burglarize Bush's office and for his acts of retaliation in posting the documents, plaintiffs have been falsely accused of several acts of misconduct. FN3

> FN3. The court discusses below the actions that are relevant to its analysis of defendants' motion to dismiss.

Defendants Crawford, Hampton, Renaud, Edwards, and Gerdes FN4 move to dismiss under Rule 12(b)(6), contending they are entitled to dismissal of plaintiffs' claims under §§ 1983 and 1985 based on qualified immunity.

> FN4. Defendants point out that Bolton, Gunn, and Andrews have not been served. They do not address the claims against these defendants, noting instead that the actions against them are subject to dismissal under Rule 4(m). The court has not addressed plaintiffs' claims against these defendants, and it has today filed an order under Rule 4(m) that requires plaintiffs to show good cause why the actions against them should not be dismissed.

## II

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at n. 30 (citing *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)); *Palmer v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

*Johnson,* 193 F.3d 346, 351 (5th Cir.1999). It also applies to a claim brought under 42 U.S.C. § 1985. *See Kinney v. Weaver,* 367 F.3d 337, 351-55 (5th Cir.2004) (en banc) (addressing whether defendants were entitled to qualified immunity from § 1985 claim); *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 556 (5th Cir.1997) (holding that defendant had qualified immunity as to claims under §§ 1983 and 1985). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 284 (5th Cir.2002) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991))). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* " Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal,* 400 F.3d 284, 2005 WL 348155, at *3 (5th Cir. Feb.14, 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the rules clearly established at the time it was taken. " *McClendon v. City of Columbia,* 258 F.3d 432, 438 (5th Cir.2001); *see Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir.2000). " 'The

defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo,* 279 F.3d at 284 (quoting *Thompson v. Upshur County, Tex.,* 245 F.3d 447, 457 (5th Cir.2001)).

051 Extra cent-Y found within cent-Y markup.

*4 Plaintiffs were not required to anticipate the defense of qualified immunity and "provide greater specificity" in their complaint. *Todd v. Hawk,* 72 F.3d 443, 446 (5th Cir.1995) (per curiam) (citing *Schultea v. Wood,* 47 F.3d 1427, 1430, 1433-34 (5th Cir.1995) (en banc)). They were obligated initially to "file a short and plain statement of [their] claim pursuant to Rule 8(a)(2)[.]" *Id.* When, as here, defendants raised the affirmative defense of qualified immunity and the court required that they file a Rule 7(a) reply,[FN5] plaintiffs became obligated to augment their complaint with "a more particularized reply pursuant to Rule 7[.]" *Id.; see Schultea,* 47 F.3d at 1433. "[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire,* 77 F.3d 116, 121 (5th Cir.1996) (citing *Schultea,* 47 F.3d at 1433). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea,* 47 F.3d at 1433. "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff['s] injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir.1999). The case should not be allowed to proceed unless plaintiffs can assert specific facts that, if true, would overcome the defense. *See Morin,* 77 F.3d at 120 ("Public officials are entitled to qualified immunity *from suit* under § 1983 unless it is shown by *specific allegations* that the officials violated clearly established law." (emphasis added)); *Schultea,* 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]"). "*Schultea* says that a plaintiff must first 'support [ ] his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.' " *Baker v. Putnal,* 75 F.3d 190, 197 (5th Cir.1996) (quoting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 9

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

*Schultea,* 47 F.3d at 1434).[6]

> FN5. The magistrate judge granted defendants' motion to require plaintiffs to file a Rule 7(a) reply.

Relying on *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), plaintiffs maintain that their complaint satisfies the notice pleading standard of Rule 8(a)(2). This argument is irrelevant. *Swierkiewicz* addressed the sufficiency of facts alleged in a complaint and did not pertain to what a plaintiff must allege to overcome the defense of qualified immunity. In this circuit, a district court may require a plaintiff to respond to a public official's assertion of a qualified immunity defense by way of a Rule 7(a) reply. *See Schultea,* 47 F.3d at 1433. *Schultea* holds that the Rule 8(a) pleading standard is inapplicable to a Rule 7 reply. *Id.* "[T]he more exacting jurisprudence of Rule 7(a)" controls whether plaintiffs have alleged facts that are sufficient to overcome defendants' qualified immunity defense. *Hoskins v. Kaufman Indep. Sch. Dist.,* 2003 WL 22364356, at *3 (N.D.Tex. Aug.25, 2003) (Fitzwater, J.).

### III

Defendants contend they are entitled to dismissal of plaintiffs' First Amendment retaliation claim based on qualified immunity.

### A

To establish a First Amendment retaliation claim under § 1983, plaintiffs must show: (1) that [they] suffered an adverse employment action; (2) as a result of speech involving a matter of public concern; (3) that [their] interest in commenting on the matter of public concern outweighed the [defendants'] interest in promoting efficiency, and (4) that the adverse action was motivated by the protected speech.

*Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 341 (5th Cir.2003).

Defendants maintain that none of plaintiffs' allegations concerning Bush and Wash asserts that a defendant took an adverse employment action against them, that plaintiffs have failed to show that any defendant violated clearly established law or a constitutional right, and that they cannot defeat qualified immunity for defendants Crawford, Hampton, Renaud, Edwards, and Gerdes.

*5 Regarding Ellis, Fuentes, and Clayton, defendants posit that the only arguable adverse employment action is a reprimand that Renaud issued. They contend that, even assuming Renaud's reprimand constitutes an adverse employment action, these plaintiffs have not shown that their speech was a matter of public concern, because all matters were raised internally as employment grievances or matters that involved their personal employment disputes. Defendants also maintain that plaintiffs have not shown that Ellis, Fuentes, and Clayton suffered an adverse employment action committed by Crawford, Hampton, Edwards, or Gerdes, that they have therefore failed to demonstrate that the actions of these four defendants amounted to a violation of clearly established law or a constitutional right of which a reasonable person would have known, and that they cannot overcome the defense of qualified immunity.

### B

The Fifth Circuit takes a "narrow view of what constitutes an adverse employment action[.]" *Breaux v. City of Garland,* 205 F.3d 150, 157 (5th Cir.2000). Included in the list of recognized adverse employment actions are "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.* (citing *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.,* 37 F.3d 1146, 1149 (5th Cir.1994)). The court has also recognized that, in some circumstances, transfers can constitute adverse employment actions. *See Sharp v. City of Houston,* 164 F.3d 923, 933 (5th Cir.1999) ("[F]or the purposes of a § 1983 retaliation claim, an adverse employment action can include a transfer,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 10

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

because it may serve as a demotion."); *Breaux,* 205 F.3d at 157 ("Transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one." (citations omitted)). The court has suggested that disciplinary filings may also qualify under § 1983. *See Banks v. E. Baton Rouge Parish Sch. Bd.,* 320 F.3d 570, 580 (5th Cir.2003) (observing that "the definition of adverse employment action under § 1983 may include reprimands and disciplinary filings[.]"). But it has " 'declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech.' " *Breaux,* 205 F.3d at 157 (quoting *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir.1998)). The *Breaux* panel explained that "[t]he reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in 'relatively trivial matters.' " *Id.* (quoting *Dorsett v. Bd. of Trustees,* 940 F.2d 121, 123 (5th Cir.1991)).

### C

" 'Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court.' " *Bradshaw v. Pittsburg Indep. Sch. Dist.,* 207 F.3d 814, 816 (5th Cir.2000) (per curiam) (quoting *Tompkins v. Vickers,* 26 F.3d 603, 606 (5th Cir.1994)). In making this determination, the court considers the " 'content, form, and context of a given statement, as revealed by the whole court record.' " *Teague v. City of Flower Mound, Tex.,* 179 F.3d 377, 380 (5th Cir.1999) (quoting *Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The court examines "whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee." *Terrell v. Univ. of Tex. Sys. Police,* 792 F.2d 1360, 1362 (5th Cir.1986). The Fifth Circuit has distilled "three reliable principles" from its determinations regarding whether speech was a matter of public concern:

*6 First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management

policies that is only interesting to the public by virtue of the manager's status as an arm of the government. If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature. Second, speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate. And third, the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern.

*Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 372 (5th Cir.2000) (citations omitted). Public employees' speech on matters of private concern in most instances will not support a First Amendment violation.We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 147; *see Teague,* 179 F.3d at 381 ("[S]peech concerning the conditions of one's employment is a private matter."). Cases can also involve so-called "mixed speech," i.e., speech that involves both public and private concerns. *See Teague,* 179 F.3d at 381.

### IV

The court initially considers whether plaintiffs have adequately pleaded [FN7] that each defendant committed a retaliatory act that qualifies as an adverse employment action. Plaintiffs appear to rely on acts that affected them collectively and those that impacted them individually. The court will first address whether they have adequately pleaded that the actions that affected all plaintiffs are adverse employment actions.

FN7. Unless the court specifically

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

differentiates between plaintiffs' complaint and their Rule 7(a) reply, it has considered both pleadings in assessing the adequacy of their allegations.

### A

[1] Plaintiffs assert in their Rule 7(a) reply that " [o]vertime and compensatory time is denied to all ICP Officers at Northwest per Chief Edwards," and that other ICP Units are permitted overtime. Rule 7(a) Rep. ¶ 20(jj). They also assert that, "[a]t all relevant times," they were assigned to the Northwest Division ICP Unit. They therefore appear to allege that Edwards denied all of them the opportunity to earn overtime and compensatory time. FN8

> FN8. The period during which Edwards is alleged to have denied Northwest Division ICP Unit employees from working overtime and compensatory time is not stated explicitly. Plaintiffs aver that Wash was transferred to another unit on July 24, 2002. If Edwards' decision to deny overtime to Northwest Division ICP Unit employees occurred after this date, Wash apparently would not have been affected. Because plaintiffs allege that "at all relevant times" they were employees of the Northwest Division ICP Unit, this is sufficient to assert that Wash was employed there when Edwards allegedly prevented unit employees from working overtime and compensatory time.

### 1

This allegation is insufficient to serve as the basis for plaintiffs' First Amendment retaliation claim. To prove such a claim, plaintiffs must show, *inter alia,* that they suffered an adverse action that "was motivated by [their] protected speech." *Foley,* 355 F.3d at 341. They have not specified when Edwards made the decision to deny them overtime. This deficiency is fatal to the claim because, without specifying when Edwards made the decision, they have failed to show that she acted in response to

plaintiffs' exercise of their First Amendment rights.

*7 Although defendants have not included this ground in their motion to dismiss, the court may raise it *sua sponte* as a basis for dismissal as long as the procedure employed is fair to the parties. *See, e.g., Coates v. Heartland Wireless Communications, Inc.,* 55 F.Supp.2d 628, 633 (N.D.Tex.1999) (Fitzwater, J.). To ensure fairness, the court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that addresses this deficiency.

### 2

Even if plaintiffs are able to correct the above-noted defect, the court must still consider whether a denial of overtime constitutes an adverse employment action.FN9

> FN9. The court's reasoning concerning overtime applies equally to plaintiffs' allegations regarding the denial of compensatory time as now asserted in their pleadings. Accordingly, the court will not discuss compensatory time separately from overtime.

Citing *Benningfield* defendants maintain that the denial of overtime does not constitute an adverse employment action. *Benningfield* considered, *inter alia,* whether a plaintiff's allegation that she had " not received overtime and travel reimbursement due her" asserted an adverse employment action. *Benningfield,* 157 F.3d at 376-77. The court held that it did not, because her allegations involved " administrative matters." *Id.* at 377. Although it is not entirely clear from the opinion, it appears that the plaintiff in *Benningfield* actually worked overtime hours for which she was not paid. *See id.* at 376 ("[Plaintiff] contends that she ... has not received overtime and travel reimbursement *due her.* " (emphasis added)). This is different from a scenario in which a plaintiff is prevented from working overtime in the first place. *Benningfield* thus does not address a case like this one, where

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 12

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

plaintiffs appear to contend they were prevented from earning overtime.

3

The Fifth Circuit has not decided, in the context of a First Amendment retaliation claim, whether a denial of the opportunity to work overtime is an adverse employment action. This court has held, however, that such conduct is an ultimate employment decision that will support a Title VII retaliation claim. *See Hadad v. Am. Airlines, Inc.,* 2003 WL 292170, at *7 (N.D.Tex. Feb.7, 2003) (Fitzwater, J.) (denying summary judgment on Title VII retaliation claim because plaintiff "adduced evidence of at least one ultimate employment decision-a denial of overtime[.]"); *Williams v. J.B. Parks Wholesale Florist, Inc.,* 1997 WL 160194, at *1, *5 (N.D.Tex. Mar.31, 1997) (Fitzwater, J.) (holding in Title VII retaliation context that plaintiff's allegation that overtime was reduced was actionable because it related to compensation and "caused an immediate reduction in her income."). The Fifth Circuit has recognized that " § 1983's definition of adverse employment action may be broader than Title VII's definition, which limits the meaning of adverse employment action to ultimate employment decisions." *Banks,* 320 F.3d at 580 (citing *Sharp,* 164 F.3d at 933 n. 21). "Section 1983 's definition of adverse employment action, like Title VII's definition, includes ultimate employment decisions, such as hiring, granting leave, discharging, promoting, demoting, and compensating." *Id.* (discussing these definitions when considering whether plaintiffs alleged adverse employment action in context of First Amendment retaliation claim). But it has recognized that certain actions that do not constitute ultimate employment actions under Title VII-like reprimands and disciplinary filings-can be actionable under § 1983. *Id.*

*8 The court concludes that, in some circumstances, denial of the opportunity to earn overtime can qualify as an adverse employment action that will support a First Amendment retaliation claim. As noted above, "discharges, demotions, refusals to hire, refusals to promote, and reprimands" are

recognized adverse employment actions. *See, e.g., Breaux,* 205 F.3d at 157. Although panels in this circuit often cite this list when discussing what an adverse employment action is, *see, e.g., id.; Benningfield,* 157 F.3d at 376; *Pierce,* 37 F.3d at 1149, the court has "not held this list to be exclusive[.]" *Sharp,* 164 F.3d at 933 n. 21.[FN10] Accordingly, the fact that a denial of overtime does not appear in this list is not dispositive.

> FN10. "Transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one." *Breaux,* 205 F.3d at 157 (citations omitted). That the Fifth Circuit has held that some transfers constitute adverse employment actions in the context of First Amendment retaliation claims demonstrates that it considers the list to be non-exclusive.

4

Several acts that would be unpleasant if suffered by an employee are not adverse employment actions. *See Breaux,* 205 F.3d at 157-58 (observing that Fifth Circuit has held, *inter alia,* that false accusations, criticism, and investigations are not adverse employment actions); *see also Southard,* 114 F.3d at 555 ("Not every negative employment decision or event is an adverse employment action that can give rise to a discrimination or retaliation cause of action under 1983."). Even the capacity of an action to stigmatize an employee is inadequate to make it one. *See Breaux,* 205 F.3d at 158 n. 14 (" Stigma by itself, without an impact on one's employment, does not constitute an adverse employment action.") (citing *Blackburn v. City of Marshall,* 42 F.3d 925 (5th Cir.1995)). Instead, to qualify as an adverse employment action that will support a First Amendment retaliation claim, the act taken must alter an important condition of employment, result in the denial of an employment benefit, or have a negative consequence on the plaintiff's employment. *See id.* at 159 & n. 16 (" Some benefit must be denied or some negative consequence must impinge on the Plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

employment before a threat of discharge is actionable."); *Click v. Copeland,* 970 F.2d 106, 110 (5th Cir.1992) (recognizing that, in *Bickel v. Burkhart,* 632 F.2d 1251 (5th Cir.1980), the Fifth Circuit "held that an employee could establish a deprivation by showing that his employer altered an important condition of employment." (internal quotation marks omitted)); *Sharp v. City of Houston,* 960 F.Supp. 1164, 1179 (S.D.Tex.1997) (observing that, in *Pierce,* the Fifth Circuit "did not merely rely on its 'short list' of adverse actions, instead, it evaluated whether the employment actions at issue could be regarded as punishment of the employee and analyzed whether they had led to adverse results."), *aff'd,* 164 F.3d 923 (5th Cir.1999) . The retaliatory act must also be more than a trivial one. *See Sharp,* 164 F.3d at 933 (recognizing that, " [a]lthough the Supreme Court has intimated that the First Amendment protects against trivial acts of retaliation, this court has required something more than the trivial[.]" (citing *Pierce,* 37 F.3d at 1146) (footnote omitted)). It must be equivalent to a discharge, demotion, refusal to hire, refusal to promote, or reprimand in its seriousness, causing " some serious, objective, and tangible harm[.]" *Serna v. City of San Antonio,* 244 F.3d 479, 482-83 (5th Cir.2001) (holding in context of First Amendment retaliation claim that plaintiff must make such showing to demonstrate that he suffered adverse employment action by being transferred).

*\*9* [2] Although plaintiffs apparently allege that they were prevented from accumulating overtime and compensatory time credit, they have not alleged facts that permit the court to determine whether this denial was " 'sufficiently serious to constitute a constitutional injury.' " *Serna,* 244 F.3d at 483 (quoting *Breaux,* 205 F.3d at 152). Specifically, their pleadings lack any facts that show that the alleged denial was significant enough that it could be considered analogous to the actions the Fifth Circuit lists as examples of adverse employment actions, as opposed to something more trivial. Without such detail, the court is unable to determine whether plaintiffs have pleaded a First Amendment violation. This failure prevents plaintiffs from overcoming the qualified immunity defense because the allegations fail to show that the alleged denial of overtime and compensatory time constituted an

adverse employment action.

The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that the denial rises to the level of an adverse employment action. [FN11]

> FN11. In today's decision, the court is allowing plaintiffs to file an amended Rule 7(a) reply not only when it raises a ground for dismissal *sua sponte,* but in other instances when it appears possible that plaintiffs can plead facts that would permit them to overcome the defense of qualified immunity. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir.2002) (Fitzwater, J.). Although plaintiffs were on notice through the order of the magistrate judge requiring a Rule 7(a) reply that they were obligated to plead sufficient facts to defeat qualified immunity, this opinion is the first that explicitly discusses the substantive deficiencies in plaintiffs' pleadings, and the court in its discretion will allow plaintiffs one more opportunity to attempt to plead the facts necessary to overcome the defense of qualified immunity.

B

[3] Plaintiffs also allege that required hours of employment for the Northwest Division ICP Unit, which included night duty, were different from those in DPD's other ICP Units and "were established by the Defendants for racial and/or retaliatory reasons." Rule 7(a) Rep. ¶ 20(ii). A mere change in an employee's work hours is not alone an adverse employment action. *See Benningfield,* 157 F.3d at 377. In *Benningfield* the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 14

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

court rejected an argument that a transfer to the night shift was an adverse employment action. *Id.* Although "a transfer may also constitute a demotion," *id.,* plaintiffs allege in this case only that they were required to work different hours, not that they were transferred. They have not adequately pleaded an adverse employment action on this basis.

C

[4] Plaintiffs also assert that they have been falsely accused of several acts of misconduct for "racially and/or retaliatory reasons[.]" Rule 7(a) Rep. ¶ 18. This allegation is insufficient to show that plaintiffs suffered an adverse employment action, because " mere accusations, without more, are not adverse employment actions." *Benningfield,* 157 F.3d at 376 . Moreover, even if this was an adverse employment action, the allegation cannot serve as a basis for plaintiffs' claim because it fails to connect the action to a particular defendant. "In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995) (per curiam); *see also Reyes,* 168 F.3d at 161 ("Heightened pleading requires allegations of fact focusing specifically on the conduct *of the individual who caused the plaintiff['s] injury."* (emphasis added)). Because plaintiffs have failed to identify the defendants who were personally involved in accusing them of acts of misconduct, the allegation is insufficient to support a § 1983 claim. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

D

*10 [5] Plaintiffs advance certain allegations that appear to focus on defendants' failure to take action when adverse actions were taken against plaintiffs. For example, they assert that "Hampton failed to take action against Crawford for his attempted

illegal entry into Bush's office and have failed to take action against Defendants Renaud, Edwards, Gunn, Andrews and Gerdes when these Defendants took racially inspired and retaliatory actions against the [p]laintiffs." Rule 7(a) Rep. ¶ 16. In a similar allegation, they maintain that all defendants engaged in this type of conduct. Plaintiffs assert that, because, *inter alia,* of defendants' failure to take action against Crawford for attempting to burglarize Bush's office and for his posting the IAD complaint and statements of Bush, Ellis, and Wash, they have been falsely accused of acts of misconduct. They also allege that on numerous occasions Hampton misrepresented the status of plaintiffs' complaints of mistreatment and falsely claimed to have initiated investigations into Crawford's misconduct, but none actually occurred. Plaintiffs assert that Hampton overlooked acts of racist conduct and retaliation by the other defendants to cover up his refusal to take action against Crawford.

These allegations are insufficient to show that plaintiffs suffered an adverse employment action. Plaintiffs have not pleaded facts to show that an important condition of their employment was altered by these actions or that they otherwise suffered an action that rises to the level of a constitutional violation as a result of these actions. Although they have suggested that defendants' failure to act was one impetus of false allegations of misconduct against them, as already explained above, false allegations do not constitute adverse employment actions. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

V

Beginning with Bush, the court now considers whether plaintiffs have sufficiently pleaded that they individually incurred adverse employment actions.

A

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 15

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs allege that Bush sustained the following acts of retaliation: (1) Crawford attempted to enter Bush's office unlawfully [FN12] and posted his IAD complaint on a bulletin board in the Northwest Division headquarters as a signal to other police officers that all DPA members should shun and retaliate against Bush and the other plaintiffs, and as a signal that Bush and the other plaintiffs had violated the code of silence and that all DPD officers should retaliate against Bush and any officer who supported him; [FN13] (2) Renaud required Bush to answer recorded questions regarding Andrews' transfer, required him to pick up sign-in and sign-out sheets from county court for her, Fuentes, and Ellis, required him to carry out her orders and relay opinions regarding those under his command, rejected his nomination for Supervisor of the Year, (with Gerdes' knowledge) placed false and adverse comments in his personnel file without his knowledge, after Bush indicated interest, and, acting together with Edwards, informed him that a decision had been made not to fill a position within DPD's deployment section that had been advertised, and informed Bush that he was no longer permitted to attend committee meetings that would result in receiving compensatory time or overtime, even though no other ICP supervisors were similarly prohibited; (3) Edwards required him to relinquish his keys to his assigned vehicle, directed Gunn to question Bush's work performance, and told Bush that he was no longer permitted to attend community meetings and claim compensatory time or overtime, even though other ICP supervisors were allowed to do so; (4) Gerdes downgraded Bush on his performance evaluation as a result of Renaud's adverse comments; (5) a grievance Bush filed based on Gerdes' evaluation was intentionally not acted upon; (6) after Bush requested that Gerdes and then Edwards, Hampton, and Bolton intercede to prevent an unfounded investigation of Ellis, Fuentes, and Clayton on the basis that they had improperly used City property, they ignored the requests, and Gerdes intentionally withheld pertinent evidence from IAD that Bush had provided him; [FN14] and (7) Renaud, Gerdes, and Edwards initiated an investigation against Bush stemming from allegations that he made inappropriate workplace comments.

FN12. Although it is unclear whether plaintiffs rely on Crawford's attempted entry into Bush's office as a basis for their claims, for purposes of this motion, the court will address whether it constitutes an adverse employment action.

FN13. Plaintiffs also assert that Crawford did so as a challenge to Bolton and Hampton to take no action against him. This assertion does not appear to state a claim of retaliation against any particular defendant.

FN14. Plaintiffs also allege that Bush once attempted to correct information contained in Fuentes' internal affairs file and, for retaliatory reasons, the file was not altered.

B

**\*11** The court turns first to the assertion that Renaud and Edwards told Bush that he could no longer attend community meetings that would result in receiving compensatory time or overtime. The allegations concerning Renaud and Edwards differ slightly. Plaintiffs allege that "Renaud informed Bush that he was no longer permitted to attend community meetings that would result in receiving compensatory time or overtime." Rule 7(a) Rep. ¶ 20(o). This appears to suggest that Bush was not prevented from attending all community meetings, but only if doing so would result in his receiving compensatory or overtime pay. Plaintiffs assert that Edwards "told Sgt. Bush he could no longer attend community meetings and claim overtime or compensatory time." *Id.* ¶ 20(jj). It is not clear from this allegation whether Bush was only denied the opportunity to receive overtime or compensatory pay for attending community meetings or whether he was prevented from attending the meetings.[FN15] It also is not evident from this allegation whether Edwards denied Bush the opportunity to accumulate overtime or compensatory time altogether, or only through attending community meetings. The allegation considered *supra* in § IV(A) suggests that the former may be the case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 16

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

FN15. Plaintiffs' Rule 7(a) reply contains language that follows their allegation that Edwards told Bush he could no longer attend community meetings and claim overtime or compensatory time and that suggests that Bush may not have been prohibited from attending community meetings altogether. *See* Rule 7(a) Rep. ¶ 20(jj) ("If an ICP Officer at the Northwest Division has a late community meeting to attend, Northwest Division ICP Officers must flex hours for that day.").

[6] Even if Bush was completely precluded from attending community meetings, this would not of itself rise to the level of an adverse employment action. *See Benningfield,* 157 F.3d at 376 (holding that allegation that plaintiff was denied opportunity to attend conferences was not actionable). Moreover, the assertion that Bush was denied the opportunity to earn compensatory time or overtime pay are alone insufficient to show that he suffered an adverse employment action. *See supra* § IV(A)(2)-(4). The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that the denial of overtime or compensatory time rises to the level of an adverse employment action.

C

The court next considers Gerdes' decision to downgrade Bush on his performance evaluation.

1

Defendants maintain that, under *Benningfield,* lowering one's job performance rating does not constitute an adverse employment action. In *Benningfield* the panel concluded that an adverse employment action did not result from lowering an employee's job performance rating when it was restored to its previous level two days afterward. *Benningfield,* 157 F.3d at 376. Because the prior rating was reinstated, the panel did not decide whether the performance rating reduction, if it

remained, would have qualified. Although the Fifth Circuit does not appear to have decided the question whether a downgraded performance review constitutes an adverse employment action, one district court in this circuit has recently held that it does not. *See Chiasson v. City of Thibodaux,* 347 F.Supp.2d 300, 307 (E.D.La.2004) ( "[Plaintiff's] receipt of lower evaluation scores, along with any other warnings and criticism she received ... are administrative or departmental matters, not adverse employment actions." (citing *Harrington v. Harris,* 118 F.3d 359, 366 (5th Cir.1997)).

2

*12 The court concludes that, in some circumstances, a downgraded performance review can qualify as an adverse employment action that will support a First Amendment retaliation claim. As the court explains *supra* at § IV(A)(3), the fact that downgraded performance reviews are not included in the standard list of adverse employment actions is not dispositive. It is possible that a downgraded performance evaluation can constitute an adverse employment action when it functions as a formal reprimand rather than as a mere criticism or accusation. *See Colson v. Grohman,* 174 F.3d 498, 511 (5th Cir.1999) ( "Formal reprimands ... do qualify as adverse employment actions and, when given in retaliation for First Amendment activity, are actionable."); [FN16] *Benningfield,* 157 F.3d at 376 ("[M]ere accusations, without more, are not adverse employment actions."); *Harrington,* 118 F.3d at 366 ("[M]ere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment."). "[A] formal reprimand, by its very nature, goes several steps beyond a criticism or accusation and even beyond a mere investigation; it is punitive in a way that mere criticisms, accusations, and investigations are not." *Colson,* 174 F.3d at 512 n. 7.

FN16. The Fifth Circuit "has never explicitly explained why formal reprimands given in retaliation for the exercise of First Amendment rights are actionable but less formal criticisms and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 17

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

accusations are not." *Colson,* 174 F.3d at 512 n. 7.

[7] Plaintiffs do not assert that, as a result of the downgraded performance evaluation, Bush suffered the alteration of an important condition of employment, was denied an employment benefit or incurred some other negative employment consequence, or that the lower rating functioned as a formal reprimand. Although plaintiffs allege that Bush was "downgraded" on his review, they do not even plead facts that show that the review could be construed as negative. *See Merriweather v. Ala. Dep't of Pub. Safety,* 17 F.Supp.2d 1260, 1274-75 (M.D.Ala.1998) (holding in context of Title VII retaliation claim that "since [plaintiff's] lowest score fell within the high end of her employer's 'meets expectations' range of scores and no adverse employment consequences resulted from or were based on these evaluation scores, [plaintiff's] ... employee performance appraisal scores could not be established as negative."). Absent such facts, plaintiffs have failed to allege that Bush's downgraded appraisal was significant enough to rise to the level of a constitutional violation.


3

Defendants base their qualified immunity arguments solely on the contention that Bush has not alleged an adverse employment action. Nevertheless, the court holds that, even if in some circumstances a downgraded performance review can constitute an adverse employment action, defendants are entitled to qualified immunity because, at the time Gerdes downgraded Bush on his performance review, it was not clearly established in this circuit that such an action could constitute an adverse employment action. "Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.' " *Kinney,* 367 F.3d at 350 (quoting *Saucier,* 533 U.S. at 206). The court has not located on its own a decision of a court in this circuit that has held that a downgraded performance review constitutes an adverse employment action. This was also the state of the law when Gerdes allegedly downgraded Bush on his

performance evaluation. Thus it cannot be said that Gerdes or any other reasonable official would have known that, if he downgraded an employee on a performance review, it could give rise to a retaliation claim by the employee. For this reason, plaintiffs have failed to overcome Gerdes' qualified immunity defense.

*13 The court raises this ground for dismissal *sua sponte.* To ensure fairness, the court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that shows that, at the time Gerdes downgraded Bush on his performance review, the law was clearly established that such an action would violate Bush's First Amendment rights. The amended Rule 7(a) reply must also plead sufficient facts to show that the downgraded performance review rises to the level of constitutional significance.


D

[8] Plaintiffs' allegation that Renaud placed false and adverse comments in Bush's personnel file without his knowledge similarly fails to show an adverse employment action. They neither characterize the comments as a reprimand nor plead facts to show that the comments could be construed as something akin to a formal reprimand. The Fifth Circuit has recognized that criticism alone is not an adverse employment action. *See Breaux,* 205 F.3d at 157; *Harrington,* 118 F.3d at 366 ("[M]ere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment."). Because plaintiffs do not allege any facts to show that these comments were anything more than criticism of Bush, they have failed to plead an adverse employment action. *See Benningfield,* 157 F.3d at 377 (holding that allegations that plaintiff was verbally reprimanded failed to state claim where she did not present evidence to show that reprimands "were anything more than mere criticisms.").

The allegation that Gerdes downgraded Bush on his performance review as a result of Renaud's comments is also insufficient to show that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 18

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

comments rise to the level of a constitutional harm, especially when the comments themselves have not been pleaded. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that Renaud's comments are akin to a formal reprimand rather than simply criticism, or that they otherwise rise to the level of constitutional significance.

E

[9] The failure of Gerdes, Edwards, Hampton, and Bolton to intercede at Bush's request to prevent an unfounded investigation of Ellis, Fuentes, and Clayton regarding their alleged improper use of City property does not constitute an adverse employment action. Nor does Gerdes' alleged withholding of pertinent evidence that Bush provided him. Plaintiffs' allegation that Bush once attempted to correct information contained in Fuentes' internal affairs file and that, for retaliatory reasons, the file was not altered similarly fails to show that Bush suffered an adverse employment action.[FN17] Plaintiffs have not pleaded facts that show that the refusal to halt an investigation that did not involve Bush, the improper handling of evidence pertinent to the investigation, or the failure to correct information in another employee's file affected the conditions of Bush's employment or otherwise negatively impacted him. Although it is difficult at this juncture to envision how such actions could constitute adverse employment actions with respect to Bush, the court will allow plaintiffs an opportunity to make such a showing, if possible, by pleading sufficient facts in their amended Rule 7(a) reply.

FN17. Plaintiffs have also failed to connect the failure to alter Fuentes' file to a specific defendant.

F

*14 [10] The allegations that Renaud required Bush to answer recorded questions regarding Andrews' transfer, pick up court sign-in and sign-out sheets,

and carry out her orders and relay her opinions to those under his command are likewise inadequate to plead an adverse employment action. "Undesirable work assignments are not adverse employment actions." *Southard,* 114 F.3d at 555 (addressing § 1983 retaliation claim) (citing *Harrington,* 108 F.3d at 604). The Fifth Circuit has declined on several occasions to hold that assignments given to employees constituted adverse employment actions in the context of First Amendment retaliation claims. *See Pierce,* 37 F.3d at 1149-50 (holding that plaintiff's assignment to guard showers was not actionable because it was regular assignment for someone in her position and there was no evidence that assignment was punishment); *Benningfield,* 157 F.3d at 376-77 (holding that assignment of "an unusually heavy work load" was not adverse employment action, but involved "administrative matters"); *Dorsett v. Bd. of Trustees for State Colleges & Univs.,* 940 F.2d 121, 123-124 (5th Cir.1991) (declining to hold that decisions concerning, *inter alia,* teaching assignments rose " to the level of a constitutional deprivation," and concluding that court had "neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions."). The court similarly declines to hold that Renaud's directives to Bush rise to the level of a constitutional violation. Although plaintiffs maintain that Bush was embarrassed, belittled, harassed, and placed under duress by having to answer questions regarding Andrews' transfer, and that Renaud did not require other employees to provide court sign-in and sign-out sheets in similar circumstances, this is insufficient to plead that Renaud's acts constituted an adverse employment action. Plaintiffs have failed to plead that the duties Renaud assigned Bush rise to the level of constitutional significance. Therefore, these allegations fail to plead an adverse employment action. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

G

[11] Plaintiffs have not sufficiently pleaded that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Bush suffered an adverse employment action when Edwards allegedly required him to relinquish the keys to his assigned vehicle. In *Dorsett* the court recognized that "[i]n public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment ... and a host of other relatively trivial matters," and it concluded that "[a] federal court is simply not the appropriate forum in which to seek redress for such harms." *Dorsett,* 940 F.2d at 123. The court observed that it had "neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions." *Id.* at 124. Edwards' decision concerned the use of a departmental resource and is more appropriately characterized as one involving an "administrative matter" rather than an adverse employment action. *See Benningfield,* 157 F.3d at 376-77 (holding that allegations that plaintiff was assigned heavy work load and had not received overtime and travel reimbursement involved " administrative matters" and were not adverse employment actions). This court has neither the competence nor the inclination to second-guess decisions made concerning the proper allocation of resources to DPD officers. The court declines to hold that the denied use of a work vehicle rises to the level of a constitutional deprivation. This allegation is therefore insufficient.

### H

**\*15** [12] Renaud, Gerdes, and Edwards initiated an investigation against Bush based on an allegation that he made inappropriate workplace comments. An investigation by itself does not constitute an adverse employment action. *See Pierce,* 37 F.3d at 1150 (holding that investigations of plaintiff were not actionable where they did not result in any action); *Benningfield,* 157 F.3d at 376 ("Although a reprimand can constitute an adverse employment action, an investigation does not."); *Breaux,* 205 F.3d at 158 (holding that police officers did not suffer adverse employment action by being subjected to internal affairs investigation). Plaintiffs do not allege that any action has been taken against Bush pursuant to the investigation that Edwards,

Gerdes, and Renaud initiated. Accordingly, it does not constitute an adverse employment action. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that an action was taken against Bush as a result of the investigation.

### I

[13] The allegation that Renaud rejected Bush's nomination for Supervisor of the Year is likewise insufficient to show an adverse employment action. The court can neither say that the denial of such recognition is equivalent in gravity to a discharge, demotion, refusal to hire, refusal to promote, or reprimand, nor can it conclude from plaintiffs' allegations that Bush suffered "some serious, objective, and tangible harm" as a result of not being nominated. *See Serna,* 244 F.3d at 483. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that this action rises to the level of an adverse employment action.

### J

[14] Neither Crawford's posting of Bush's IAD complaint nor his attempted unlawful entry into Bush's office constitutes an adverse employment action. Plaintiffs have not pleaded facts that show that the posting of a complaint regarding another officer's misconduct altered an important condition of Bush's employment or resulted in the denial of an employment benefit or some other negative consequence. Thus it cannot be classified with the activities that constitute adverse employment actions. This same reasoning applies to Crawford's attempt to enter Bush's office. Although it appears unlikely that plaintiffs can plead facts that show that this constituted an adverse employment action, the court will allow them an opportunity to do so. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that addresses this deficiency.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

### K

[15] Edwards' directive to Gunn to question Bush's work performance is not an adverse employment action. Merely questioning an employee about his work performance cannot, without more, serve as the basis for a First Amendment retaliation claim.

### L

[16] Plaintiffs allege that, after Bush informed Renaud and Edwards of his interest in filling an advertised vacancy in the DPD's deployment section, Renaud and Edwards told Bush that a decision had been made not to fill the position. Because Bush was already employed by DPD, the court construes the allegation as being akin to a refusal to promote than to a refusal to hire.

*16 Although it is clear that a refusal to promote is an adverse employment action, *see Breaux,* 205 F.3d at 157, the court is unable to conclude, based on the facts alleged, that plaintiffs have pleaded an adverse employment action. They have not asserted any facts to show that the deployment position could be considered a promotion. The absence of such facts is determinative, because without an indication that the position was somehow better than Bush's current one, they have not pleaded that Bush suffered an action that was equivalent to the denial of a promotion.

Additionally, in *Mylett v. City of Corpus Christi,* 97 Fed. Appx. 473 (5th Cir.2004) (unpublished opinion), the court considered an employee's claim that he had been denied a promotion in the context of a discrimination and retaliation claim brought under both Title VII and § 1983. *Id.* at 474, 476. Observing that the district court had found that the positions for which the plaintiff applied "either did not exist or were already filled when he applied," the court concluded that "[i]f a position is not available, an employee has no actionable claim for not being promoted." *Id.* This same reasoning applies to the allegation here.[FN18] The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that addresses these deficiencies.

FN18. Although defendants do not raise the point, the court notes that plaintiffs have not pleaded facts to show when the decision was made not to fill the position. If the decision had already been reached by the time Bush informed Renaud and Edwards of his interest, Bush cannot establish that the decision was motivated by a retaliatory animus.

### M

[17] The allegation that Bush's grievance regarding Gerdes' downgraded performance evaluation was intentionally not acted upon does not allege an adverse employment action. It fails to connect the action to a specific defendant. Moreover, plaintiffs have not pleaded facts to show that the failure to act on the grievance altered an important condition of Bush's employment or otherwise affected him adversely. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

### N

As presently constituted, plaintiffs' allegations are insufficient to show that Bush suffered an adverse employment action at the hands of any defendant. Nevertheless, plaintiffs may still be able to plead facts to show that Bush suffered an adverse employment action. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

### VI

The court now turns to plaintiffs' allegations pertaining to Wash.

### A

Plaintiffs allege that the following acts of retaliation were taken against Wash: (1) Crawford posted his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 21

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

IAD statement on a bulletin board in the Northwest Division headquarters as a signal to other police officers that all DPA members should shun and retaliate against him and the other plaintiffs, and as a signal that he and the other plaintiffs had violated the code of silence and that all DPD members should retaliate against him and any officer who supported him; (2) his work hours were changed from 7:00 a.m. to 3:00 p.m. to 10:00 a.m. to 6:00 p.m.; (3) Edwards removed from internal mail a memorandum Wash and Ellis had written to Bolton concerning the posting of their IAD letters; (4) when Ellis and Wash met with Edwards regarding their memorandum, Edwards falsely stated that she kept the memorandum from Bolton because the department was unable to investigate; [FN19] (5) Renaud denied Wash overtime even though she had authorized overtime for other officers in the ICP unit; (6) he was twice denied relief on grievances he filed, once by Renaud and once by a Grievance Review Committee; and (7) he was transferred twice, once at Edwards' behest after he was promoted from the ICP unit to First Watch Patrol, even though other officers who were promoted at the same time were left in the ICP units on special assignments, and once by Edwards and Gunn to an unspecified unit.

> FN19. Plaintiffs aver that there was no investigation because Hampton did not wish to offend the DPA. This alleged failure to investigate is insufficient to plead an adverse employment action for the reasons stated *supra* at § IV(D).

B

**\*17** Plaintiffs' allegations that Renaud denied Wash overtime fail to establish that he suffered an adverse employment action for the reasons stated above. *See supra* § IV(A)(2)-(4). Nevertheless, plaintiffs may be able to allege facts to show that Renaud's denial rises to the level of an adverse employment action. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address this deficiency.

C

**[18]** Crawford's posting of Wash's statement, Edwards' removal of Wash's memorandum to Bolton informing him of that posting, and Edwards' false explanation as to why she removed the memorandum are not adverse employment actions. Although these acts may have been unpleasant to Wash, plaintiffs have failed to plead specific facts that establish that they alone adversely affected an important condition of his employment or otherwise affected him negatively. This same reasoning applies to the adverse decisions regarding the validity of Wash's grievances.[FN20] The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

> FN20. The allegation that a Grievance Review Committee denied one of Wash's grievances also fails to connect any defendant to this action. Thus even if the allegation adequately pleads an adverse employment action, it fails to implicate any particular defendant.

D

The allegation that Wash incurred a shift change is insufficient to show that he suffered an adverse employment action, because a mere change in an employee's work hours is not alone sufficient. *See Benningfield,* 157 F.3d at 377. Plaintiffs have also failed to connect this allegation to any defendant.

E

**[19]** Plaintiffs' allegations regarding Wash's transfers are similarly inadequate to allege that he suffered an adverse employment action. In certain circumstances, a transfer may constitute an adverse employment action for purposes of a First Amendment retaliation claim. *See Serna,* 244 F.3d at 482 (holding in context of First Amendment retaliation claim that "[u]nder 42 U.S.C. § 1983 a transfer may, under certain circumstances,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

constitute an adverse employment action."). In *Breaux* the Fifth Circuit explained that "[t]ransfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one." *Breaux,* 205 F.3d at 157 (citations omitted). Similarly, in *Sharp* the court held that, " for the purposes of a § 1983 retaliation claim, an adverse employment action can include a transfer, because it may serve as a demotion," and that a transfer can be equivalent to a demotion, even without an attendant loss of pay, grade, or title, "if the new position proves objectively worse-such as being less prestigious or less interesting or providing less room for advancement." *Sharp,* 164 F.3d at 933; *see also Forsyth v. City of Dallas,* 91 F.3d 769, 774-75 (5th Cir.1996) (affirming judgment under § 1983 against individual defendants where positions from which plaintiffs were transferred "were more prestigious, had better working hours, and were more interesting than night patrol" and where few others voluntarily made such transfers and other officers had received same type of transfer as punishment); *Click,* 970 F.2d at 110-11 (holding that "plaintiffs presented sufficient evidence of a 'deprivation' of rights under § 1983 to reach the jury" where there was evidence that they were transferred to less interesting and less prestigious jobs and lost seniority rights).

*18 Plaintiffs fail to allege that Wash suffered any adverse consequences as a result of the transfers. With respect to Wash's transfer from the ICP unit to First Watch Patrol, plaintiffs do not assert any facts to show that assignment to the First Watch Patrol is less interesting or less prestigious than assignment to the ICP Unit. Nor do they allege that Wash suffered an attendant reduction in pay or benefits from the transfer. Plaintiffs have also failed to allege similar facts concerning Wash's other transfer, even neglecting to specify the nature of the post to which he was assigned. They have failed to plead facts that show that the transfers were punitive or adverse in nature. For these reasons, plaintiffs have not alleged facts that demonstrate that Wash suffered an adverse employment action by being transferred. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that

alleges facts that show that these transfers constitute adverse employment actions.

F

Plaintiffs have failed to allege facts that show that Wash suffered an adverse employment action. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address the deficiencies that the court has identified.

VII

The court now considers the actions allegedly taken against Ellis.

A

Plaintiffs allege that the following adverse actions have been taken against Ellis: (1) Crawford posted Ellis' memorandum to IAD on a bulletin board in the Northwest Division headquarters; (2) Ellis found a new dent on his truck one day after his IAD memorandum was posted; (3) Edwards removed from internal mail a letter Wash and Ellis had written to Bolton concerning the posting of their IAD letters; (4) when Ellis and Wash met with Edwards regarding their memorandum, Edwards falsely stated that she kept it from Bolton because the department was unable to investigate; [FN21] (5) at various times, Ellis was informed that grievances he lodged were invalid or were not going to result in any action; (6) Renaud denied Ellis overtime, reprimanded him, (along with Edwards) ordered Bush to issue to Ellis a white copy or supervisor's report for not being alert, ordered Ellis, through Bush, to get a haircut, glared at Ellis when he refused to speak with her and ordered Bush to give an "advice and instruction" to him, required Bush to inform Ellis that she wanted Ellis transferred, and falsely claimed that Ellis had a bad attitude and that he had threatened her; (7) Ellis' nomination for the Police Shield, even though approved, disappeared; (8) Crawford, Renaud, Edwards, and Gerdes initiated an IAD investigation against Ellis based on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

false charges and Gerdes intentionally withheld evidence pertinent to the investigation; and (9) after Ellis filed an appeal concerning the supervisor's report issued at the behest of Renaud and Edwards, Edwards prevented the appeal from being resolved.

> FN21. Plaintiffs aver that there was no investigation because Hampton did not wish to offend the DPA. This alleged failure to investigate is insufficient to plead an adverse employment action for the reasons stated *supra* at § IV(D).

**B**

*19 Crawford's posting of Ellis' memorandum and the refusal to act on Ellis' grievances do not constitute adverse employment actions for reasons the court has explained above. *See supra* §§ V(M) and VI(C).[FN22] The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

> FN22. Not only have plaintiffs failed to plead sufficient facts to show that Ellis suffered an adverse employment action as a result of the alleged actions, in the case of two of Ellis' grievances, plaintiffs have not connected any defendant to the failure to act on those grievances.

**C**

[20] The alleged investigation of Ellis initiated by Crawford, Renaud, Edwards, and Gerdes' act of withholding evidence pertinent to that investigation, are not adverse employment actions. Even if false allegations were made against Ellis, false accusations do not constitute an adverse employment action. *See Breaux*, 205 F.3d at 157-58 (citing *Colson*, 174 F.3d at 511). Gerdes' act of withholding evidence pertinent to an investigation of Ellis is not itself actionable because plaintiffs have not pleaded sufficient facts to show that an adverse consequence attended it. Although Ellis may have been saved from enduring the

investigation if the evidence Bush provided had not been withheld, *see* Rule 7(a) reply § 20(gg) (averring that Gerdes withheld the evidence because he "knew that IAD would not accept the complaint if the evidence justifying the deployment was included."), as already explained, investigations by themselves do not constitute adverse employment actions. *See supra* § V(H). Thus some greater harm must have attended the withholding of the evidence for it to be significant. Plaintiffs have failed to plead the existence of any such harm. Their allegations therefore fail to plead an adverse employment action. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

**D**

[21] Plaintiffs fail to assert facts to show that any defendant was responsible for the dent on Ellis' truck. Thus even assuming that denting one's vehicle can constitute an adverse employment action, the allegation is insufficient to show that Ellis suffered an adverse employment action committed by a particular defendant. Plaintiffs also fail to impute the disappearance of Ellis' Police Shield nomination to a specific defendant. Accordingly, the allegations are insufficient to show that Ellis suffered an adverse employment action at the hands of any defendant. Plaintiffs have therefore failed to state a claim under § 1983 against defendants based on these allegations. *See Woods*, 51 F.3d at 583 ("In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."). Moreover, plaintiffs have not alleged facts to show that an important condition of Ellis' employment was altered by this action or that he otherwise suffered some constitutionally significant harm. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 24

E

**\*20** [22] Plaintiffs have sufficiently pleaded that Ellis suffered an adverse employment action at the hands of Renaud and Edwards. As the court explains above, formal reprimands are adverse employment actions. *See supra* § V(C)(2). Plaintiffs allege that Renaud and Edwards ordered Bush to issue a white copy or supervisor's report to Ellis for not being alert. Although it is not entirely clear whether this was a formal reprimand, the terms " white copy" and "supervisor's report" suggest that some formal record of the reprimand was made. Drawing all inferences from these adequately-pleaded facts in the light most favorable to Ellis, the court concludes that this allegation is sufficient to plead an adverse employment action. This conclusion does not, of course, preclude a later determination (e.g., at the summary judgment stage) that the supervisor's report does not in fact constitute a formal reprimand. Because this allegation sufficiently pleads that Ellis suffered an adverse employment action at the hands of Renaud and Edwards, the court need not consider whether other acts taken by these defendants constitute adverse employment actions.

F

In sum, plaintiffs have adequately alleged that Renaud and Edwards took an adverse employment action against Ellis. They have failed to assert adequately that any other defendant committed an adverse employment action against him. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that Ellis suffered an adverse employment action committed by the other defendants.

VIII

A

Plaintiffs allege that Clayton suffered the following acts of retaliation: (1) Renaud reprimanded him,

yelled at him, and falsely claimed that a response he gave her was rude, (along with Edwards) ordered Bush to issue a white copy or supervisor's report to Clayton for failing to be alert; [FN23] (2) Crawford, Renaud, Edwards, and Gerdes initiated an IAD investigation against Clayton on a false claim of using city property for personal gain, and Gerdes withheld evidence pertinent to the investigation; (3) a Grievance Review Committee informed Clayton that a grievance he filed did not fit the definition of a grievance; and (4) defendants ignored grievances that Clayton filed concerning alleged racially-discriminatory behavior by officers at the Northwest Division against black members of the ICP unit.

> FN23. After Clayton appealed the supervisor's report issued at the behest of Renaud and Edwards, Edwards prevented the appeal from being resolved.

B

The allegation that Renaud and Edwards directed Bush to issue Clayton a white copy or supervisor's report for failing to be alert is sufficient to show an adverse employment action for the reasons stated above. *See supra* § VII(E). The allegations regarding the IAD investigation fail to allege an adverse employment action for the reasons already explained. *See supra* § VII(C). Similarly, plaintiffs have failed to show that the failure to act on Clayton's grievances constitutes an adverse employment action for the reasons set out *supra* at § § V(M) and VI(C).[FN24] Plaintiffs have only adequately alleged that Renaud and Edwards committed an adverse employment action against Clayton.

> FN24. The allegation that a Grievance Review Committee informed Clayton that a grievance he filed did not fit the definition of a grievance also fails to link the conduct to a specific defendant.

**\*21** Before dismissing Clayton's First Amendment retaliation claim against the other defendants, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address these deficiencies.

## IX

### A

Plaintiffs allege that Fuentes suffered the following retaliatory acts: (1) Renaud reprimanded Fuentes and (along with Edwards) ordered Bush to issue him a white copy or supervisor's report; [FN25] (2) Edwards, Gerdes, Renaud, and Crawford initiated an IAD investigation against him based on false charges, and Gerdes withheld evidence pertinent to the investigation; (3) a Grievance Review Committee informed Fuentes that a grievance he filed did not fit the definition of a grievance; and (4) Renaud notified Fuentes of a Public Integrity complaint against him, potentially in Ellis' presence, [FN26] and, although the complainant's affidavit was later determined to be false and DPA members attempted to intimidate witnesses against Fuentes, this information was omitted from the final IAD report. Although Bush wrote a memorandum detailing the need to correct the information in the file, no such action was taken.

> FN25. After Fuentes appealed the supervisor's report issued at the behest of Renaud and Edwards, Edwards prevented the appeal from being resolved.

> FN26. Plaintiffs' Rule 7(a) reply alleges that "Renaud notified Plaintiff Fuentes of the Public Integrity complaint against him. In the presence of Plaintiff Ellis, Renaud loudly stated, "Hey! Señor Fuentes! Contact this lieutenant at Public Integrity as soon as possible." Rule 7(a) Rep. ¶ 20(m).

### B

The allegation that Fuentes was issued a white copy

or supervisor's report at the direction of Edwards and Renaud is sufficient to show that he suffered an adverse employment action for reasons explained above. *See supra* § VII(E). Accordingly, there is no need to consider whether other actions these defendants may have taken against Fuentes also constitute adverse employment actions. The allegations pertaining to the IAD investigations that Edwards, Gerdes, Renaud, and Crawford initiated fail to plead an adverse employment action. *See supra* § VII(C). The assertion regarding the Grievance Review Committee's decision on Fuentes' grievance is also insufficient because it fails for the reasons explained *supra* at §§ V(M) and VI(C), and plaintiffs have failed to link any specific defendant to the action. The allegation that witnesses were intimidated during the investigation of the Public Integrity complaint against Fuentes, and that Fuentes' file was not corrected to reflect accurate information concerning the investigation, also fails to implicate any specific defendant. Additionally, even if plaintiffs linked these actions to a specific defendant, their allegations are insufficient to show that an important condition of Fuentes' employment was altered or that he otherwise suffered adverse consequences that rise to the level of constitutional significance.

For these reasons, Fuentes only adequately alleges that he suffered an adverse employment action at the hands of Renaud and Edwards. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that Fuentes suffered an adverse employment action at the hands of the other defendants.

### X

Defendants contend that the First Amendment retaliation claims of Ellis, Fuentes, and Clayton must be dismissed because plaintiffs cannot show that the issues on which they spoke concerned matters of public concern. They maintain that their complaint shows that they spoke about personnel issues raised internally within DPD. Plaintiffs have not responded to this argument, and they do not specify what speech serves as the basis for their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 26

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

retaliation claims.

### A

**\*22** [23] The court first considers whether Ellis' IAD memorandum regarding Crawford's alleged attempted break-in of Bush's office relates to a matter of public concern. The subject line of Ellis' memorandum is: "Attempted entry into Sgt. Lee Bush's office." The contents of the memorandum concern facts that Ellis gathered in a conversation he had with the officer who was present at the time of the attempted break-in. It is written on City letterhead and, in signing the memorandum, Ellis included his badge number and specified that he was a police officer in the Northwest Operations Division.

The court considers the "content, form, and context" of the statement, "as revealed by the whole court record," *Teague,* 179 F.3d at 380 (internal quotation marks omitted), and examines whether the speech "was made primarily in ... plaintiff's role as citizen or primarily in his role as employee," *Terrell,* 792 F.2d at 1362. "Speech concerning police misconduct is public in content." *Teague,* 179 F.3d at 383; *see Markos v. City of Atlanta, Tex.,* 364 F.3d 567, 570-71 (5th Cir.2004) (observing that Fifth Circuit "has often stated that allegations of police misconduct and corruption are important matters of public concern," and holding that plaintiff's speech that "involved allegations of a police cover up ... addressed a matter of significant public concern.") (citing, *inter alia, Thompson v. City of Starkville,* 901 F.2d 456, 463 (5th Cir.1990), and *Brawner v. City of Richardson,* 855 F.2d 187, 191-92 (5th Cir.1988)); *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir.2001) ("While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern, speech 'complaining of misconduct within the police department ... [is] speech addressing a matter of public concern,' " (quoting *Thompson,* 901 F.2d at 463) (citation omitted))). " Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ... concerns matter of public import." *Conaway v. Smith,* 853 F.2d 789, 796 (10th

Cir.1998) (per curiam) (quoted in *Thompson,* 901 F.2d at 463). The content of the memorandum is public in nature because it exposes potential misconduct by Crawford.

In evaluating the context of the speech, the Fifth Circuit has examined whether it was conveyed in the context of an employee-employer dispute. A finding that it was suggests that the speech is private. *See Teague,* 179 F.3d at 383 (holding that where plaintiff's grievance "was made in the setting of a private employee-employer dispute," it was " more appropriately characterized as private" in context); *Bradshaw,* 207 F.3d at 818 (holding that where speech was made after decision had been made to reassign plaintiff, speech was "more akin to a personal grievance rather than a matter of public concern."). The Fifth Circuit has also considered the fact that speech was made outside the context of an employment dispute in reaching the conclusion that it related to a matter of public concern. *See Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 222-23 (5th Cir.1999) (holding that speech at issue was matter of public concern where, *inter alia,* " [t]here [was] no evidence that the Plaintiffs' speech merely concerned an employment related squabble with their supervisor" and where "the [d]efendants did not point to any evidence of an underlying personal dispute between the [p]laintiffs" and their supervisor). Plaintiffs do not allege any facts that suggest that Ellis was involved in any dispute with defendants or anyone else at DPD before he wrote his internal memorandum to IAD. Therefore, this favors the conclusion that the memorandum was public in context.

**\*23** The Fifth Circuit has also examined whether the speech occurred " 'against a backdrop of widespread debate in the community.' " *Markos,* 364 F.3d at 572 (quoting *Harris,* 168 F.3d at 222). Plaintiffs' pleadings are devoid of any mention of public debate or any indication that the public was aware of, or concerned about, misconduct within DPD. This favors the conclusion that Ellis' memorandum was private in context. Thus Ellis' memorandum is neither wholly private nor wholly public in its context.

The court now considers the form of Ellis'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

memorandum. In *Bradshaw* the Fifth Circuit considered whether three memoranda written by a high school principal addressed a matter of public concern. *Bradshaw,* 207 F.3d at 815, 817-18. In evaluating the form of the memoranda, the court noted that they were signed by the principal as " High School Principal," and that "[a]t least two of the memoranda were on [school] [l]etterhead." *Id.* at 817. The court held that "[t]hese facts heavily favor a conclusion that [the principal's] speech did not constitute matters of public concern." *Id.* The court also noted that the principal did not voice her concerns publicly, and that her concerns in the memoranda "were made in the form of a response in an employer-employee dispute." *Id.; see Teague,* 179 F.3d at 383 (pointing specifically to language in plaintiff's grievance letter that indicated that speech pertained to employment dispute to support court's conclusion that "the speech in question is undeniably private in form."). The court held that " [t]he form of the memoranda provides ... support that [plaintiff] drafted the documents in her capacity as a public employee rather than as a public citizen." *Bradshaw,* 207 F.3d at 817.

Ellis wrote his memorandum on City letterhead, included his badge number, and, in signing the memorandum, specified that he was a police officer. As in *Bradshaw,* these facts suggest that Ellis wrote the memorandum in his capacity as a public employee. It was also addressed internally to an officer in IAD, which favors a conclusion that the speech is of private concern rather than public. *See Teague,* 179 F.3d at 383; *Bradshaw,* 207 F.3d 817. Nevertheless, the fact that Ellis communicated his message internally is only one factor to be considered. *See Teague,* 364 F.3d at 571 (" Publicization of the speech is a factor to be weighed in determining whether the speech was of public concern."); *Benningfield,* 157 F.3d at 375 ("The fact that the Plaintiffs chose to file internal grievances rather than publicize their complaints is not dispositive."); *Thompson,* 901 F.2d at 467 (" [T]he fact that [plaintiff] chose to make his superiors aware of his grievances (and to help others do the same), instead of alerting the public, does not preclude our finding that his alleged speech addressed issues of public concern."). That said, the foregoing factors favor the conclusion that

the speech was private in its form, although it should be noted that, unlike in *Bradshaw,* where the speech took the "form of a response in an employee-employer dispute," nothing about the way Ellis' memorandum is written indicates that it was written in the context of an employment dispute.

**\*24** The Fifth Circuit has also considered the motivation behind the employee's speech when determining whether it relates to a matter of public concern. *See Teague,* 179 F.3d at 383-84 (noting that plaintiffs' "focus ... was primarily on clearing their names-not on rooting out police corruption *per se,*" and their "grievances were primarily motivated by, and primarily addressed, concerns particular to their private interests" in evaluating whether plaintiffs were speaking as employees or citizens). Although an assessment of the employee's motivation does not displace the content-form-context analysis, *see Markos,* 364 F.3d at 572, it can be relevant in determining whether the employee was speaking as a citizen or as an employee. In *Thompson* the court evaluated circumstances that helped to indicate the employee's motivations for speaking when determining whether the speech at issue was a matter of public concern. *See Thompson,* 901 F.2d at 465-66. In considering a grievance the employee had filed, the court observed that language illustrated "that [plaintiff] stood to gain little personally through his grievance" and further noted that his assistance in helping others to file complaints similar to his own "did not redound to his own benefit." *Id.* The court also pointed out that other aspects of plaintiffs speech " drew attention to matters well beyond any personal interest he might have had in filing his written grievance[.]" *Id.* at 466. In the present case, there is no indication that Ellis was motivated by personal reasons to write the memorandum to inform IAD of potential misconduct by a fellow officer.

Although the context in which the speech was conveyed yields an equivocal result, and the form of the speech took favors the conclusion that it was private rather than public, the court holds that the speech pertains to a matter of public concern. This conclusion is supported by *Thompson,* where the plaintiff's speech pointed, as here, "to misconduct on the part of various police officers," and the Fifth

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Circuit held that, if his allegations were true, it would support the conclusion that his "speech addressed issues of public concern," even where he communicated "his grievances in a private, internal manner, instead of seeking to publicize his complaints [.]" *Thompson,* 901 F.3d at 466-67. Moreover, just as *Thompson* noted aspects of the plaintiff's speech that suggested that he was not motivated by a desire for personal benefit, plaintiffs' pleadings do not contain facts that suggest that Ellis was motivated by personal interests. Thus the court concludes that Ellis' memorandum relates to a matter of public concern.

Accordingly, the court rejects defendants' contention that plaintiffs have failed to show that Ellis spoke on a matter of public concern.

### B

[24] Plaintiffs allege that "[o]n or about February 1, 2002, Plaintiff[s] Wash, Fuentes, Bush, Ellis and Clayton reported and complained of Defendant Crawford's retaliatory and racially motivated posting of the Plaintiffs' complaint and statements ... on the Police bulletin board at the Northwest Division headquarters." Rule 7(a) Rep. ¶ 18. They also assert that Ellis, Wash, Fuentes, and Clayton submitted a class action grievance for disparity in treatment. The court holds that these allegations are insufficient to overcome defendants' qualified immunity defense because plaintiffs have not adequately pleaded the speech they contend was protected.

*25 In *Foley* the court evaluated whether a plaintiff had sufficiently asserted that she had engaged in speech related to a matter of public concern, thereby enabling her to overcome a qualified immunity defense. *See Foley,* 355 F.3d at 341-42. The panel concluded that "[n]either in the court below nor in this Court has [the plaintiff] identified the precise speech which she claims to have addressed a matter of public concern and to have triggered retaliation." *Id.* at 342. This was necessary because "the precise identification of the speech ... would permit consideration of its content, context, and form as required by the Supreme Court." *Id.*

The court held that because the plaintiff maintained "that the Appellees retaliated against her for making statements protected by the First Amendment, she [was] required to be specific as to when her statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Id.* (emphasis omitted). The court observed that if plaintiff could not be so specific, she could not overcome a qualified immunity defense. *Id.* Based on the record, the court held that the plaintiff "failed to show the deprivation of a clearly established First Amendment right." *Id.* (emphasis omitted).

As in *Foley,* plaintiffs' conclusory allegations that they complained of and reported the posting of Bush's, Wash's, and Ellis' complaint and statements, and that Ellis, Wash, Clayton, and Fuentes filed a grievance for disparity in treatment, insufficiently identify the speech at issue. With respect to the complaints about the posting of the IAD complaint and statements, plaintiffs do not identify to whom the speech was directed, specify the content of the speech, or allege whether the complaints were written or oral. The absence of this information prevents the court from determining whether the speech addressed a matter of public concern. The allegation regarding the grievance for disparity in treatment is equally insufficient because plaintiffs have not pleaded facts sufficient to set out the context in which it was filed or the form of the grievance. Additionally, although they state that the grievance was for disparity in treatment, they have not specified the content of the grievance. As explained above, such facts are relevant in determining whether the speech concerns a matter of public concern. Thus, as in *Foley,* these deficiencies prevent plaintiffs from overcoming defendants' qualified immunity defense, at least to the extent their First Amendment retaliation claims rest on these allegations.

Although these assertions are presently insufficient to show that Ellis, Clayton, and Fuentes spoke on a matter of public concern, the court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that the speech in question pertained to a matter of public

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 29

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

concern.

### C

**\*26** [25] In their Rule 7(a) reply, plaintiffs allege that "Clayton observed and filed grievances concerning racially discriminatory treatment accomplished by officers at the Northwest Division against black members of the ICP Unit." Rule 7(a) Rep. ¶ 20(kk). Plaintiffs attach a memorandum addressed to Hampton that alleges, *inter alia*, that Lieutenant Archie King engaged in acts of racism against other police officers. The memorandum is signed by Clayton and Fuentes and is dated March 10, 2004. Even if the grievances or the memorandum constitutes speech on a matter of public concern, the allegations cannot serve as the basis for plaintiffs' First Amendment retaliation claims. Plaintiffs do not allege when Clayton filed the grievances. To show that they suffered acts of retaliation as a result of First Amendment activity, plaintiffs must show, *inter alia*, "that the adverse action was motivated by the protected speech." *Foley,* 355 F.3d at 341. Because plaintiffs have failed to state when Clayton filed these grievances, the court is unable to determine whether any of the adverse actions that plaintiffs allege could have been motivated by these grievances.[FN27] Additionally, the memorandum that Clayton and Fuentes signed cannot serve as a basis for plaintiffs' First Amendment retaliation claim because plaintiffs have not sufficiently alleged that any adverse action was taken by defendants after March 10, 2004. Accordingly, these allegations fail to serve as a basis for plaintiffs' First Amendment retaliation claims. Because the court is raising this ground for dismissal *sua sponte,* to ensure fairness, the court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that addresses these deficiencies.

> FN27. The allegations regarding the grievances also fail to identify adequately the speech at issue, which prevents the court from determining whether it pertains to a matter of public concern. *See supra* §

X(B).

### D

Plaintiffs have sufficiently alleged that Ellis spoke on a matter of public concern. Their allegations, however, are insufficient to show that adverse employment actions were taken against Clayton and Fuentes for speaking on a matter of public concern. The court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that address this deficiency.

### XI

[26] The court now considers whether defendants are entitled to qualified immunity concerning plaintiffs' § 1983 race discrimination claims. Defendants maintain that these actions must be dismissed because plaintiffs have not shown that they suffered an adverse employment action at the hands of any defendant that rises to the level of a constitutional violation or a violation of clearly established law of which a reasonable person would have known.

To prevail on these claims in the absence, as here, of direct evidence of racial discrimination, plaintiffs must make out a *prima facie* case through use of a four-prong test. *See Wallace,* 80 F.3d at 1047-48 (addressing, *inter alia,* § 1983 claim). Each plaintiff must show that he " '(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to *an adverse employment action;* and (4) was replaced by someone outside the protected class,' or, in the case of disparate treatment, show[ ] 'that others similarly situated were treated more favorably.' " *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512-13 (5th Cir.2001) (addressing Title VII claim) (emphasis added) (quoting, *inter alia, Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir.1999)).

**\*27** Defendants posit that plaintiffs have failed to adequately show that they have suffered an adverse employment action. As the court discusses above, *see supra* § IV(A)(3), " § 1983's definition of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

adverse employment action may be broader than Title VII's definition, which limits the meaning of adverse employment action to ultimate employment decisions." *Banks,* 320 F.3d at 580. Despite this distinction, defendants cite several Title VII cases to argue that "[t]he Fifth Circuit requires that an ' adverse employment action' be an 'ultimate employment decision [ ] ... such as hiring, granting leave, discharging, promoting, [or] compensating.' " Ds. Br. at 20 (quoting *Zaffuto v. City of Hammond,* 308 F.3d 485, 493 (5th Cir.2002) (quoting *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997) (quoting *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995))). Thus defendants appear to maintain that the court should apply the Title VII definition of adverse employment action in assessing whether plaintiffs have adequately pleaded § 1983 race discrimination claims.

The distinction between the two definitions is significant in this case. For instance, the court has already held in the context of plaintiffs' First Amendment retaliation claims that Ellis, Clayton, and Fuentes suffered an adverse employment action at the hands of Renaud and Edwards in the form of supervisor reports that could be construed as formal reprimands. This same allegation, however, would not constitute an adverse employment action for purposes of plaintiffs' § 1983 race retaliation claims if the court applies the Title VII definition of adverse employment action. *See Banks,* 320 F.3d at 580 ("[T]he definition of adverse employment action under § 1983 may include reprimands ... which do not qualify as ultimate employment decisions under Title VII.").

The court holds that the broader definition of adverse employment action, which may include reprimands, disciplinary filings, and some transfers, applies to plaintiffs' § 1983 race discrimination claims as it does to their First Amendment retaliation claims. In *Southard* the Fifth Circuit considered whether a defendant was entitled to qualified immunity from a plaintiff's § 1983 sex discrimination and retaliation claims. *Southard,* 114 F.3d at 554-55. The panel evaluated whether the plaintiff had suffered an adverse employment action. *Id.* It recognized that "[n]ot every negative employment decision or event is an adverse

employment action that can give rise to a *discrimination or retaliation* cause of action under 1983." *Id.* at 555 (emphasis added). And it held that "[a]dverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.* The court's inclusion of " reprimands" in what constitutes an adverse employment action suggests that it was applying the broader definition of adverse employment action to the plaintiff's claims. The court did not distinguish between the plaintiff's discrimination and retaliation actions.

**\*28** Because this court is applying the same definition of adverse employment action to plaintiffs' § 1983 race discrimination and First Amendment retaliation claims, the same reasoning applies.[FN28] Based on the analysis discussed above, the continued viability of Bush's and Wash's § 1983 race discrimination claims depend on their alleging facts sufficient to show that they suffered an adverse employment action. Accordingly, the court will give plaintiffs 30 days from the date of this memorandum opinion and order to file an amended Rule 7(a) reply that alleges facts that show that they suffered an adverse employment action.

> FN28. The only exception concerns part of the court's reasoning with respect to the allegation that Edwards denied plaintiffs the opportunity to earn overtime and compensatory time. *See supra* § IV(A). This allegation was deemed insufficient to serve as a basis for plaintiffs' First Amendment retaliation claim because, *inter alia,* plaintiffs failed to plead facts that would allow the court to determine whether the denial could have been motivated by the expression of protected speech. *See supra* § IV(A)(1). This reasoning is inapplicable to plaintiffs' race discrimination claim. Nevertheless, the allegation is still insufficient to serve as a basis for plaintiffs' race discrimination claim because, as already explained, plaintiffs have not pleaded sufficient facts to show that the denial constitutes an adverse employment action. *See supra* §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

IV(A)(2)-(4).

Ellis, Clayton, and Fuentes sufficiently allege that they suffered an adverse employment action at the hands of Renaud and Edwards, but they have failed to plead sufficient facts to make such a showing as to Crawford, Gerdes, and Hampton. Accordingly, in their amended Rule 7(a) reply, plaintiffs must allege facts that show that these defendants took an adverse employment action against Ellis, Clayton, and Fuentes.

## XII

[27] Defendants move to dismiss plaintiffs' § 1985(2) conspiracy claim, [FN29] contending they have failed to state a claim on which relief can be granted because defendants are entitled to qualified immunity.[FN30] They argue, *inter alia*, that the conspiracy allegations against them are general, conclusory, and lack detail concerning the actionable conduct that they undertook to make their conduct a conspiracy. The court agrees.

FN29. Although plaintiffs' pleadings appear to invoke language from § 1985(2) and (3), in their response to defendants' motion to dismiss, they state that their pleadings incorrectly refer to § 1985(3) and should cite § 1985(2). In their reply brief, defendants ask the court to dismiss plaintiffs' § 1985(2) claim to the extent plaintiffs are attempting to amend their complaint to add a new cause of action under § 1985(2). The inclusion of language from § 1985(2) in their brief was sufficient to put defendants on notice of their claim. Thus the court will consider the viability of plaintiffs' claim under this subsection.

FN30. The doctrine of qualified immunity is applicable to claims brought under § 1985 as well as to those brought under § 1983. *See Southard,* 114 F.3d at 555 (holding that defendant was entitled to qualified immunity as to plaintiff's claims

brought under §§ 1983 and 1985).

To prevail on a § 1985(2) claim, plaintiffs must prove either (1) a conspiracy "designed to deny or interfere with equal protection rights" or (2) "a nexus between the alleged conspiracy and a proceeding in federal court." *See Bradt v. Smith,* 634 F.2d 796, 801 (5th Cir. Unit A Jan.1981). In pleading a conspiracy, plaintiffs "must plead the operative facts upon which their claim is based. Mere conclusory allegations are insufficient." *Holdiness v. Stroud,* 808 F.2d 417, 424 (5th Cir.1987); *see also Lynch v. Cannatella,* 810 F.2d 1363, 1369-70 (5th Cir.1987); *Henrise v. Horvath,* 174 F.Supp.2d 493, 501 (N.D.Tex.2001) (Lindsay, J.) (citing *Holdiness,* 808 F.2d at 424). That plaintiffs may not rely on conclusory allegations of a conspiracy to overcome defendants' qualified immunity defense is bolstered by the applicability of *Schultea'* s heightened pleading to plaintiffs' § 1985 claim, which requires that plaintiffs support their claim "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [defendants'] conduct at the time of the alleged acts." *Schultea,* 47 F.3d at 1434. Plaintiffs may, however, "rely on circumstantial evidence and reasonable inferences therefrom, since conspiracies 'are rarely evidenced by explicit agreements.' " *Way v. Mueller Brass Co.,* 840 F.2d 303, 308 (5th Cir.1988) (quoting *Mack v. Newton,* 737 F.2d 1343, 1350-51 (5th Cir.1984) (quoting *Michelman v. Clark Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1043 (2d Cir.1976))).
*29 Since conspiracies, whether among businessmen or others, are rarely evidenced by explicit agreements, the determination of whether a conspiracy existed almost inevitably rests on the inferences that may fairly be drawn from the behavior of the alleged conspirators. At a minimum, their actions, to support a finding of a conspiracy, must suggest a commitment to a common end. The circumstances [must be] such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.

*Mack,* 737 F.2d at 1351 (quoting *Michelman,* 534 F.2d at 1043) (internal quotation marks omitted).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 32

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiffs aver in their complaint that "[t]he Defendants individually and jointly conspired and/or agreed to jointly undertake the actions against the Plaintiffs which are set out herein." Compl. ¶ 8. In their Rule 7(a) reply, they alter this language only slightly, asserting that "[t]hese Defendants individually and jointly conspired and/or agreed among themselves presently unknown to Plaintiff to undertake the actions against the Plaintiffs which are set out herein." Rule 7(a) Rep. ¶ 2. Plaintiffs' complaint and Rule 7(a) reply also allege that "[t]he individual Defendants separately, and in concert with one another and others unknown to Plaintiff, have acted outside the scope of their respective jurisdictions and without authorization of law," and "[o]n or prior to the 14th day of October, 2001, in the City of Dallas ... the individual Defendants, and each of them, in violation of Title 42 U.S.C. § 1983 and/or § 1985, did conspire and agree between themselves and with other person or persons[.]" Compl. ¶¶ 22-23; Rule 7(a) Rep. ¶¶ 22-23. These allegations are conclusory and, of themselves, are insufficient to overcome defendants' qualified immunity defense. Moreover, plaintiffs fail to allege facts in their pleadings that even circumstantially suggest the existence of an agreement among the defendants to violate plaintiffs' civil rights. Because they have failed to allege such facts, they cannot overcome defendants' qualified immunity defense. For these reasons, plaintiffs' § 1985(2) conspiracy claims are dismissed against all defendants.

For the reasons set out, the court grants in part and denies in part defendants' motion to dismiss and permits plaintiffs to file an amended Rule 7(a) reply that addresses certain of the pleading deficiencies addressed above. [FN31]

FN31. In their reply brief, defendants point out that plaintiffs allege for the first time in their response that they have been subjected to a hostile work environment. Plaintiffs maintain in their response to defendants' motion to dismiss that they " have been subjected to a hostile work

environment." Ps. Resp. at 5. This allegation is conspicuously missing, however, from their complaint and Rule 7(a) reply. Because plaintiffs do not include this claim in either pleading, the court will not address it.

SO ORDERED.

N.D.Tex.,2005.
Ellis v. Crawford
Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 744443 (Trial Motion, Memorandum and Affidavit) Defendant Randy Hampton's Reply Brief in Support of His Motion for Summary Judgment (Jan. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 744444 (Trial Motion, Memorandum and Affidavit) Defendant Scott Gerdes' Reply to Plaintiffs' Response to Defendants' Motions for Summary Judgment and Brief in Support (Jan. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 744445 (Trial Motion, Memorandum and Affidavit) Defendant June Kim Edwards' Reply to Plaintiffs' Response to Defendants' Motions for Summary Judgment and Brief in Support (Jan. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 744446 (Trial Motion, Memorandum and Affidavit) Defendant Scott Gerdes' Motion to Strike Plaintiffs' Summary Judgment Response and Evidence and Brief in Support (Jan. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 744447 (Trial Motion, Memorandum and Affidavit) Defendant June Kim Edwards' Motion to Strike Plaintiffs' Summary Judgment Response and Evidence and Brief in Support (Jan. 31, 2006)
• 2006 WL 424854 (Trial Motion, Memorandum and Affidavit) Defendant's (Crawford) Objections to. and Motion to Strike, Plaintiffs' Summary Judgment Evidence (Jan. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 424853 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Response to the Defendants' Motions for Summary Judgment (Jan.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 525406 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 33

4, 2006) Original Image of this Document (PDF)
• 2005 WL 3625309 (Trial Motion, Memorandum and Affidavit) Defendant June Kim Edwards' Motion for Summary Judgment (Nov. 16, 2005) Original Image of this Document (PDF)
• 2005 WL 3625310 (Trial Motion, Memorandum and Affidavit) Brief in Support of Defendant June Kim Edwards' Motion for Summary Judgment (Nov. 16, 2005) Original Image of this Document (PDF)
• 2005 WL 3625304 (Trial Motion, Memorandum and Affidavit) Defendant's (Crawford) Brief in Support of His Motion for Summary Judgment (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3625305 (Trial Motion, Memorandum and Affidavit) Defendant Randy Hampton's Brief in Support of His Motion for Summary Judgment (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3625306 (Trial Motion, Memorandum and Affidavit) Brief in Support of Defendant Roseanna Renaud's Motion for summary Judgment (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3625307 (Trial Motion, Memorandum and Affidavit) Defendant Scott Gerdes' Motion for Summary Judgment (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3625308 (Trial Motion, Memorandum and Affidavit) Brief in Support of Defendant Scott Gerdes' Motion for Summary Judgment (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 2759001 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Response to Defendant's rule 12 Motion for Judgment on the Pleadings (Oct. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 3137622 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Response to Defendant's Rule 12 Motion for Judgment on the Pleadings (Oct. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 2758757 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant Crawford's Motion for Judgment (Sep. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 988606 (Trial Motion, Memorandum and Affidavit) Plaintiffs' April 2005 7(a) Reply

(Apr. 4, 2005) Original Image of this Document with Appendix (PDF)
• 2004 WL 1597276 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Rule 7(a) Reply (Apr. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 1597275 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion for A Rule 7(a) Reply (Mar. 9, 2004) Original Image of this Document (PDF)
• 2003 WL 23660037 (Trial Pleading) Defendant June Kim Edwards' Original Answer, Affirmative Defenses, and Jury Demand (Dec. 9, 2003) Original Image of this Document (PDF)
• 2003 WL 23660041 (Trial Pleading) Defendant Roseanna Renaud's Original Answer, Affirmative Defenses, and Jury Demand (Dec. 9, 2003) Original Image of this Document (PDF)
• 2003 WL 23660045 (Trial Pleading) Defendant Eddie Crawford's Original Answer, Affirmative Defenses, and Jury Demand (Dec. 9, 2003) Original Image of this Document (PDF)
• 2003 WL 23660033 (Trial Pleading) Defendant Scott Gerdes's Original Answer, Affirmative Defenses, and Jury Demand (Dec. 4, 2003) Original Image of this Document (PDF)
• 2003 WL 23660029 (Trial Pleading) Defendant Randy Hampton's Original Answer, Affirmative Defenses, and Jury Demand (Nov. 25, 2003) Original Image of this Document (PDF)
• 2003 WL 23660020 (Trial Pleading) Plaintiffs' Original Complaint and Jury Demand (Oct. 15, 2003) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.