

# DELAWARE TECH

*Orlando J. George, Jr., President*                    *Dover♦Georgetown♦Stanton♦Wilmington*

December 8, 2004

Dr. Marguerite A. Johnson
Vice President and Campus Director
Terry Campus
Delaware Technical & Community College
100 Campus Drive
Dover, De 19904

Dear Dr. Johnson:

It has been brought to my attention that you attended a Terry Campus Department Chairs meeting on Friday, November 19, 2004. At that meeting Peter Shoudy, CTO for the college, answered questions about the IT reorganization and future direction. It is reported that your conduct and line of questioning during the meeting was antagonistic and inconsistent with what can be reasonably expected of a Vice President and Campus Director. It is the opinion of those in attendance that you expressed a negative attitude toward the DIET reorganization, opposition to the DIET structure, and disdain for Mr. Shoudy. If the reports I received are accurate, your comments and questions raised doubts about your support of Mr. Shoudy and the IT reorganization and led at least some of the participants to believe you were unaware of the changes brought about by the reorganization. Your specific references to Mr. Siok and the emerging technologies initiatives left many with the sense that you were unfamiliar with the elements of the new DIET structure. It is alleged that your demeanor before your subordinates was subversive and undermined the morale of those who look to you for assurance and institutional loyalty. Since you, Dan Houghtaling and Shelby Crawford are not regular attendees at department chair meetings, it is the opinion of those in attendance that the purpose of your visit was to confront and attack Mr. Shoudy.

At the October meeting of President's Council, the current structure of the DIET was approved unanimously. The approval for the restructure was deferred at two previous meetings so that the Campus Directors could have time to provide input in the new IT structure, ask questions and express concerns. As you know, I invite and welcome the candid views of the Campus Directors and other senior staff. Once the President, along with President's Council, makes a decision on a path forward, however, I expect your support and cooperation in implementing our decision. Moreover, the decision here followed a lengthy discussion and a unanimous affirmative vote at President's Council, including the President.

*Delaware Technical & Community College*
**Office of the President**
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-4053 Fax: (302) 739-6225 E-mail: pres@college.dtcc.edu
*Equal Opportunity/Affirmative Action Institution*

B-46

DEPOSITION
EXHIBIT
#2
11/30/05 ASB

Under these circumstances, allegations you failed to support Mr. Shoudy and the reorganization in an open forum constitute insubordination. Indeed, at the meeting of the President's Council I directed the President's Council to move forward with the reorganization and to support Mr. Shoudy in his effort to advance our IT services. Your conduct on November 19th demonstrates a lack of support to the college IT efforts and an unwillingness to follow my directives.

The allegations concerning this incident are particularly troubling given the fact I have received reports you engaged in similar conduct over at least the past several years, and have expressed my concern to you about your reported inappropriate and unprofessional behavior. Please report to my office on Thursday, December 9, 2004 at 10:30 a.m. to discuss the November 19, 2004 incident outlined above and your continuing inappropriate behavior.

Sincerely,

Orlando J. George, Jr.
President



# DELAWARE TECH

January 3, 2005

Dover ◆ Georgetown ◆ Stanton ◆ Wilmington

*Marguerite A. Johnson, Vice President and Campus Director*

Dr. George,

I am responding to your letter of December 8, 2004, and to the two alternatives presented to me in our December 10, 2004 meeting; retire or be placed on administrative leave with pay and have an outside group interview my colleagues and staff (both current and retired) regarding my behavior.

First, I must apologize for the delay, but as you are aware, I have recently been hospitalized and could not properly respond to you within the two day deadline set by you.

Based upon what you wrote in your letter of December 8, 2004, the information provided you from unknown sources was grossly inaccurate. As I explained to you, the Dean of Instruction invited Terry Campus Deans/Directors or their designees to attend the November 19, 2004, Department Chair meeting, which was an informational meeting held with Peter Shoudy, CTO. The purpose of the meeting was to educate the staff about the implementation of the new DIET organizational structure. At no time was any disrespect directed to Mr. Shoudy.

With regard to the substance of the discussions had during the informational meeting referenced in your letter, I believe that those discussions were held in a non-disruptive manner on matters, which were of public concern to not only myself, the Terry Campus staff, but the public at large. The administration of the Terry Campus had a rightful concern, on behalf of the public that they serve, in fully understanding the nature and extent of the reorganization and how it would operate. The inquiries by them were an effort to more fully understand and comply with these changes. I do not believe any impartial observer could deny that the subject matter of the discussions that we had on November 19, 2004 were not matters of "public concern", and enjoyed certain protections. Not only were they matters of "public concern", but without those concerns being adequately addressed during this meeting, the reorganization implemented by yourself, and the President's Council, would obviously fail for lack of full and complete understanding by those who are charged with its use. I do not believe asking for clarification about an area which many of my staff had asked me to explain constitutes insubordination. I have always moved forward with your directives assuring that my staff worked positively toward implementation.

The more than 34 years of meritorious service that I have devoted to Delaware Technical & Community College have been characterized uniformly by growth, success, and attainment of goals which fulfill the College's mission. I do not believe that any of the actions I have taken during my career in support of the College have been anything but for the benefit of Delaware Technical & Community College. Moreover, in the last ten years the many accomplishments and successes of the Terry Campus are an outstanding testament to my dedicated stewardship. The high caliber of programs, excellent reputation, campus beautification, state of the art

*Delaware Technical & Community College*
**Terry Campus**
100 Campus Drive, Dover, DE 19904
Phone: (302) 857-1126 Fax: (302) 857-1096 email: mjohnson@college.dtcc.edu
Equal Opportunity/Affirmative Action Institution

B-48

DEPOSITION
EXHIBIT
#3

11/30/05 ASR

# DELAWARE
# TECH

Dover ◆ Georgetown ◆ Stanton ◆ Wilmington

*Marguerite A. Johnson, Vice President and Campus Director*

facilities, significant enrollment increases, and most recently the successful Gourmet Gala which raised $100,000 for Scholarships, are concrete evidence of Terry Campus's positive transformation under my leadership.   Consequently, employee morale is the highest in the history of the campus.

My institutional loyalty has been demonstrated at the highest level. My family sacrificed personally and financially as the result of our move to Kent County, so I could assume the position of Vice President and Campus Director. Even when my personal safety was jeopardized due to hate mail, racial threats, and stalking by a disgruntled ex-employee's boyfriend, my loyalty to Delaware Technical and Community College never wavered. Any thing that I do or any actions that I take, I do solely for the purposes of bringing positive recognition to the institution and providing a quality education to the citizens of Kent County and the State.

I have considered the two alternatives that you offered in our meeting, and believe that neither is warranted under the circumstances or based on any conduct of mine. Since my actions in furtherance of the College's best interest have done nothing to injure the College, I can see no reason to voluntarily end my association with the institution.

I will be happy to discuss these matters with you further and/or to utilize the procedures outlined in Section 12.01 et.seq. of the Delaware Technical & Community College "Administrators Personnel Handbook". Of course it is my desire that our effective working relationship for the benefit of this institution continue so that we can maintain excellence while serving our students.

Yours very truly,

Marguerite A. Johnson



# DELAWARE TECH

*Orlando J. George, Jr., President*                    *Dover♦Georgetown♦Stanton♦Wilmington*

## CONFIDENTIAL

## MEMORANDUM

To:        Dr. Marguerite A. Johnson
           Vice President & Campus Director, Terry Campus

From:      Dr. Orlando J. George, Jr.
           President

Date:      January 3, 2005

Re:        NOTICE OF PLACEMENT ON PAID ADMINISTRATIVE LEAVE

This memorandum serves as notice that effective at the end of the day you are placed on paid administrative leave until further notice pending an investigation focusing on allegations concerning your pattern of behavior over at least the past several years. I discussed such allegations with you during our December 9, 2004 meeting.

For the duration of your paid leave you shall not visit any of the college facilities nor participate in any college functions on or off the campus without my permission. Thus, please collect and take with you at the end of the day whatever personal effects you may need from your office. In addition, you are not to discuss the investigation with present or former employees. Further, I expect you to cooperate fully with the investigation.



DEPOSITION
EXHIBIT
#4
11/30/05 ASB

*Delaware Technical & Community College*
Office of the President
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-4053 Fax: (302) 739-6225 E-mail: pres@college.dtcc.edu
*Equal Opportunity/Affirmative Action Institution*
B50

B-50



# Announcement Report

Close

**Message**

Effective January 4, 2005, Dr. Marguerite A. Johnson, Vice President & Campus Director, Terry Campus, is on administrative leave.

As a result, Daniel L. Simpson, Vice President for Academic Affairs, has been appointed Acting Assistant Campus Director and will have full administrative responsibility for the Terry Campus.

In addition, Dr. Cornelia N. Winner, Assistant Campus Director, Stanton/Wilmington Campus, has been appointed Acting Vice President for Academic Affairs and will have full administrative responsibility for the Division of Academic Affairs in the Office of the President.

With the beginning of our spring semester, as always, please know how much I appreciate everything you do to support our students and our College.

Dr. Orlando J. George, Jr.
President

Contact the content administrator for this web page, with comments, changes, or corrections.
Contact us for more information

Accredited by the Commission on Higher Education
Middle States Association of Colleges and Schools
Copyright 1994 - 2005 Delaware Technical & Community College





# EDGE Announcement

Close

**Message**

Effective July 19, 2005 Dr. Marguerite A. Johnson is no longer employed by Delaware Technical & Community College. Mr. Daniel L. Simpson will continue to have full administrative responsibility for the Terry Campus until further notice.

Contact the content administrator for this web page, with comments, changes, or corrections.
Contact us for more information

Accredited by the Commission on Higher Education
Middle States Association of Colleges and Schools
Copyright 1994 - 2005 Delaware Technical & Community College

B52

FRIDAY  Feb. 25, 1994

# The News Journal

© 1994, The News Journal Co.   A Gannett newspaper

The News Journal Co.   115th year, No. 310 • ★ • 35 cents

Wilmington, Del.

## KENT & SUSSEX

# DelTech board blasted for choice to head Terry campus

By LAWRENCE HARDY
Staff reporter

DOVER — In a sharply worded letter, Sen. John C. Still III, R-Dover North, has reproached the board of trustees of Delaware Technical & Community College for choosing a New Castle County resident to head the Terry campus.

Marguerite M. Johnson, executive dean of instruction, was chosen this week over acting Campus Director Wayne N. Dabson, a Kent County resident. Dabson has worked for DelTech for 25 years. Johnson for 23 years.

"We view this action by the board of trustees to be such an egregious slight that, unless reconsidered, will inevitably call into question — and affect our judgment in considering other decisions and actions by the board in the future," Still wrote Wednesday to board chairman Richard F. Stokes.

"The only thing I can say is, he's entitled to his opinion," Johnson said Thursday. "But I am a native Delawarean and I am qualified.

"My father was a native Delawarean. My husband is a native Delawarean," Johnson said.

She said it was "understandable" that there would be concern in Kent County. "People are resistant to change."

Johnson, who took office immediately, said she plans to move to Kent County and become involved in the community.

Johnson serves on the board of the Delaware Mentors' Program for the Women's Correctional Institution and on the National Council on Black American Affairs for the Community College Association. She holds a doctorate from Temple University and is a fellow with the Kellogg Foundation, an educational group.

Others on the Dover campus appeared to agree with Still.

"Disappointment, I think, is a good word," said Connie Welde, an account technician and president of the Terry Campus Senate, which represents faculty and staff. "But we all would like to work for the good of the campus, so there's no one openly rebelling here."

Welde said Johnson doesn't have Dabson's contacts in the community and in the General Assembly.

Counselor Bob Siemanowski, vice president of Terry's Campus Senate, said he supported Dabson but said Johnson is "an excellent choice."

"I think some of [Still's] points are good points," Siemanowski said. "But, on the other hand, it's not giving the person selected the opportunity to grow, and prosper and lead.

"It's no Einstein leap to see that she is capable of doing the same thing here."

A subcommittee interviewed four candidates and chose Dabson and Johnson as the finalists.

On Tuesday, the board chose Johnson, 5-2.

B-53

Page 28A The Dover Post, Wednesday, March 2, 199

# Opinion

## Disturbing decision at Del. Tech

The Terry Campus of Delaware Technical & Community College serves central Delaware well. The college provides a variety of courses at convenient times for adults who want to learn for the sake of their jobs or their private interests. It is also affordable. By its very nature it is close to the community. This post-secondary institution fits well into the mix of educational opportunities offered in this area, filling a role not met by either Delaware State University or Wesley College.

For about the past 14 months the campus has operated under the competent direction of Wayne Dabson, who lives in Kent County and has been with the college for 25 years. He took over when Dr. Linda Jolly left for a higher educational post in New Jersey.

Wayne Dabson applied for the position of full director, different from his acting director capacity. In the process of choosing the new director the president of the college, Dr. Thomas Kubula, recommended Dabson for the post.

Last week the seven-member board of trustees of the college appointed Dr. Marguerite M. Johnson, who lives upstate and has been with the college for 23 years, as the new director. Of the seven trustees, four are from upstate. They all voted for Johnson. The Kent County trustee and a Sussex County trustee voted for Dabson. Richard F. Stokes of Sussex County, chairman of the board of trustees, cast his vote with the upstaters. He has been quoted as saying Johnson is "extremely well-qualified." She has been the executive dean of instruction at the college's Stanton Campus.

When the college president recommends someone who has been performing well and who lives in the community, and when the president has worked with the two contenders for the job, you would think the board would go against such a recommendation only for exceptional reasons. Not to follow the recommendation amounts very nearly to a vote of no confidence in the president, whose term has only a short while to run.

Now that the board has announced its decision, and since the four upstaters are impervious to persuasion from beyond their constituency, the choice will stand. As evidence of the deep feeling of disappointment on the part of local citizens, however, most of the members of the Terry Campus Development Council, including this writer, have resigned. The council is a volunteer fund-raising body.

One can support the aims and scope of Terry Campus and at the same time feel that, under the circumstances, such a public protest is necessary.

J.F.

B54

B55

News Journal, Wed. 3/30/94

# DelTech board weighs possible deficit

## Official: Inaccurate budget projection could be to blame

**By LAWRENCE HARDY**
Staff reporter

DOVER — The board of trustees of Delaware Technical & Community College will meet Monday to discuss a possible deficit in the Terry Campus budget and proposals to deal with it, the college announced.

President Thomas S. Kubala said Tuesday he could not estimate the deficit's size or even confirm that there is one. But he said the problem may have been exaggerated because revenues were underestimated and expenses overestimated.

"We're still in the process of putting a report together," Kubala said.

Kubala called the meeting a "routine" "on of third-

quarter finances for the four campuses and the central office. If a deficit exists at Terry, he said, expenses such as travel may have to be cut.

Marguerite M. Johnson, chosen campus director last month, and Raymond R. Dotts, fiscal coordinator for the entire system, declined to comment.

Johnson, former executive dean of instruction, succeeded Wayne N. Dabson, who had been acting director since January 1993 and

was a finalist for the permanent position. Dabson, now assistant campus director, could not be reached for comment Tuesday.

Johnson's appointment was sharply criticized by Sen. John C. Still III, D-Dover. North, who said a Kent County resident, should have been chosen. Dabson is from Kent. Johnson from New Castle.

Richard F. Stokes, chairman of the trustees, came to Johnson's defense, saying Johnson was well qualified.

www.doverp

# DelTech dismisses chief of Dover's Terry Campus

### Dr. Marguerite A. Johnson fired after six-month investigation

By Jeff Brown
Staff writer

A senior administrator at Delaware Technical & Community College has been fired six months after she was involuntarily placed on administrative leave.

Dr. Marguerite A. Johnson, a DelTech vice president and director of the school's Terry Campus, was let go July 19 with her departure being announced via a message posted to the school's Internet bulletin board. An attorney for the school said he could not discuss why Johnson was suspended from her job or why she was fired, calling it a "personnel matter."

"There are certain things we cannot talk about because the matter is in litigation and we're dealing with the privacy rights of state personnel," said DelTech chief counsel Brian Shirey. Only Johnson could waive those privacy rights, Shirey said.

Johnson, who had worked for DelTech for 35 years, could not be reached for comment.

## Johnson ordered off campus

Shirey confirmed Thursday that Johnson's firing came after a six-month investigation ordered by college president Dr. Orlando J. George Jr. The termination

Johnson started against George and the school two months after she was suspended.

However, the litigation, which Johnson filed March 15 in federal court in Wilmington, appears to provide much of the background material for the situation at DelTech.

According to the lawsuit, George confronted Johnson in December, alleging her conduct during a Nov. 19, 2004, meeting had been "improper" and "antagonistic." Johnson countered, saying her remarks at the meeting, which was held to discuss reorganization of the Terry Campus, were "made in a non-disruptive manner."

On Dec. 9, Johnson claims George told her she could either retire voluntarily or be placed on administrative leave while her colleagues and staff were, according to the lawsuit, "interrogated." Johnson said she asked any disciplinary action against her, if taken, be done in accordance with established DelTech policy.

Instead, Johnson said, George suspended her on Jan. 3, told her to remove her personal belongings from her office and banned her from the DelTech campus. The suspension, however, came with pay, allowing Johnson to draw her $125,022 annual salary until she was formally terminated.

"She was placed on administrative leave so that a fair and open investigation could occur into some allegations," Shirey said. He can't talk to the nature of the allegations or where the investigation went or the

Shirey added that an employee about to be fired normally is entitled to a termination hearing, a process that would give both sides a chance to present evidence and witnesses in front of an impartial hearing officer. However, again explaining such matters were privileged information, Shirey said. He could not confirm if Johnson had been allowed such a hearing.

Despite Johnson's firing, the legal case in George and the school still is ongoing. The process still are in "discovery," said a spokesman for District Court in Wilmington, allowing attorneys the plaintiff and the defendant to exchange documents and evidence. The case has been referred to a magistrate who will try to mediate between the parties.

The next hearing on the case is scheduled for

Calls to Johnson's attorney, Gary Aber of Wilmington's Aber, Goldlust, Baker and Over, were not returned, nor were calls to DelTech's attorneys



Dr. Marguerite A.



B-55

*Nov 16 2006*

# Audit probes fired official

## Charges misuse of funds, personnel by ex-DelTech leader

**By Joe Rogalsky**
Delaware State News

DOVER — A former high-ranking official at Delaware Technical & Community College used state funds for personal expenses and forced school personnel to work on non-college projects, the state auditor's office said in a report issued Thursday.

Dr. Marguerite A. Johnson, a 35-year employee and campus director for DelTech's Terry Campus in Dover, was fired in July and has filed a federal suit against the college and its president.

The auditor's office reports

that she used college materials to make invitations for family reunions and her child's high school graduation ceremony, and that she used a state government credit card to buy personal items and take trips not related to official Del-Tech business.



The report says that DelTech has policies and procedures in place to provide oversight of employees' spending and travel practices, but Dr. Johnson ignored them.

**Marguerite A. Johnson**

The college requested the

See DelTech — Page 13

# DelTech

Continued From Page 1

auditor's office investigate after the private accounting firm SantoraBaffone uncovered the misconduct. The auditor's investigation confirmed SantoraBaffone's findings.

The auditor's office said it has turned over information concerning Dr. Johnson's misuse of funds and personnel to the state Department of Justice. Agency spokeswoman Lori Sitler said investigators are reviewing the information.

In July, Wilmington attorney Vincent A. Bifferato, who presided over Dr. Johnson's termination hearing, ruled that the firing was valid.

DelTech counsel Brian Shirey would not comment Thursday on whether the misconduct contributed to the college's decision to begin termination proceedings against Dr. Johnson.

DelTech's September response to a federal lawsuit filed by Dr. Johnson said the findings of SantoraBaffone were included in the

## What do you think?

Do you have an opinion on this issue? Post comments at http://www.newszapforums.com/category6/ or call Sound Off at 678-8255 in Kent or 629-2050 in Sussex.

to fire her.

DelTech's filing also says that several employees came forward after Dr. Johnson was placed on administrative leave to report her improper use of college personnel and resources for personal reasons.

The filing alleges Dr. Johnson "was inappropriately abusive to many employees under her supervision," which prevented the employees from reporting her misconduct earlier.

The college's response also includes a request for the court to order Dr. Johnson to make reimbursements for improper use of college personnel and resources:

● $23,422 for the time a DelTech employee spent on Dr. Johnson's personal matters during business hours.

● $6,097 "representing a conservative estimate" for college per-

reunion.

● $80 to repay a jewelry purchase Dr. Johnson made using a state-issued credit card.

● $371 to reimburse DelTech for the purchase of antique books paid for using the state credit card.

● $2,851 to repay the college for a three-day trip to North Carolina that Dr. Johnson took for personal reasons but paid for using college funds.

In March, Dr. Johnson filed the suit in U.S. District Court in Wilmington against DelTech and its president Dr. Orlando J. George Jr.

The 12-page suit alleges Dr. George placed Dr. Johnson on administrative leave for making comments during a Nov. 19, 2004, meeting to discuss reorganization of the college's technical network.

The college, in court filings, says Dr. Johnson was placed on leave "pending an investigation involving her pattern of behavior over the past several years."

During that meeting, the college said, "Johnson asked a series of questions in an antagonistic B5tone, raising doubts about Johnson's support of (the reorganization's project leader) and the IT

reorganization."

Gary W. Aber, Dr. Johnson's attorney, did not return a phone message seeking comment Thursday.

DelTech Vice President of Finance Gerard M. McNesby agreed with the auditor's office that appropriate measures were in place to control Dr. Johnson's activity but she did not follow procedures.

To prevent similar situations in the future, he said, the school would increase its enforcement of those policies.

"The college will strengthen its established policies and procedures related to travel and use (of the state credit card) with more scheduled internal unannounced audits at all campuses," Mr. McNesby said in DelTech's response to the investigation.

"These audits will be random, and as noted above, provide additional controls and the necessary checks and balances regarding compliance on an on-going basis."

*Post comments on this issue at newszapforums.com/forum60*
*Staff writer Joe Rogalsky*

B-57

DELAWARE TECHNICAL & COMMUNITY COLLEGE - TERRY CAMPUS

# TRAVEL REQUEST FORM

Name: _Marguerite Johnson_    Date: _11/10/03_

Date of Departure: _12/7/03_    Date of Return: _12/9/03_

Destination: _Phila, PA  Middle States Annual Conference_

Explanation of Travel Request: _MSA/CHE Conference_

_____

**RECEIVED**

**NOV 1 3 2003**

**ACCOUNTS PAYABLE**

Method of Transportation: (Please check)

☐ Bus    ☐ Train    ☐ Plane    ☒ State Car    ☐ Own Car

Estimated Costs:

| | | |
|---|---|---|
| Travel | $ _40.72_ | |
| Meals | _62.00_ | PNC Dec |
| Hotel | _362.96_ | PNC Dec 413.96  inc. 56 Parking |
| Registration Fee | _295.00_ | PNC Nov. |
| Other (specify) | _50.00_ | |
| TOTAL COSTS | $ _817.70_ | |

Funding Source: _3625·8019_    Amount: _817.70_

Approvals:

Dept. Chairman _____    Date: _____

Dean/Director _____    Date: _____

Business Manager _____    Date: _11/13/03_

Campus Director _____    Date: _11-12-03_

**DELAWARE TECH** ◆

B-58

DTCC1224

<u>Initial Round of Folks to Speak with Dave Williams</u>  —  *classroom*

1. Dan Houghtaling  — *wk of 3/25*
2. Connie Spampinato
3. Robert Hearn  *3/31*
4. Charlotte Lister
5. Wilma Mishoe
6. Kathy Powell
7. Cena Sweeney
8. Fred Evins
9. Ron Pleasanton  *3/25, 3/29, 3/30, 3/31 (3hrs)*
10. Kristin Cuthrel
11. Barbara Willey  *3/24, 3/25, 3/30, 4/1*
12. Chris McCoy
13. Prudy Pearson
14. Susan Mulliken
15. Charlie Mundel  *4/11 — 15*
16. Peter Shoudy
17. Jeff Peck
18. John Schaible
19. Pat Callahan  — *out m SL — surgery*
20. Les Link  — *wk of 3/28*
21. Randy Palmeter
22. Janet Edwards
23. Paul Fleming  *3/24*
24. Becky Broomfield  *4/1, 4/4 — 4/8*
25. Nauleen Perry
26. Sandra Sutton
27. Dave Pitts  *3/30; 3/31*
28. Shelby Crawford  *3/24, 3/25 — Chamber of Commerce spring seminar 2001 — Main Chew*
29. Bob Seminowski  *3/28*
30. Department Chairs who attended the meeting where Peter Shoudy was ambushed. *— chairs — see Kahlse*
31. Army Pierce  — GEO  — *wk of 3/28* — GEO funding contradictions;
*addition → 32 Lorie Maher — TRC — now adjunct* — *general "stress response"*

Additional Interviews

1. Wayne Dabson          (Important)
2. Jim Samans
3. Sherry Burke
4. Judy Linn
5. Pam Bailey
6. Jerry McNesby
7. Lori Mahar
8. Stan Slawicki  *Stawikey*
9. Pat Carmine
10. Norm Fields



DTCC 4548

Buckley - wk of 3/18
Sptanklin - 3/30 , 4/1
Cooper - 3/28, 3/29
Link - wk of 3/28
Pleasanton - 3/28, 29, 30, 31 (3/18)
Prouse - 3/29
Yanos - 3/28, 3/31

DTCC 4549

## Dr. Johnson Resources (1)

In 1999 and again in 2001, Dr. Johnson participated in organizing and executing a reunion for the McConnell-McClurkin Families. Campus personnel and resources were used in the preparation of both events. The 1999 event was held in Delaware at the Wyndam Garden Hotel in Wilmington, DE. It was in preparation for this event that the greatest campus resources were expended. Although several items were created and reproduced, samples of all items are not available. Some items are contained in the attached folder.

Interviews with Kathy Powell and Marketing Department staff revealed the following:

- Several items were created and produced in the campus marketing office.
- Some examples of items include post cards, letters, programs, cookbooks, and genealogy reports.
- Items were created by Kathy Powell and staff in Dr. Johnson's office.
- It is conservatively estimated by the participants (Fred Evins, Kathy Powell, Susan Moliken and Prudy Pierson) that 200 personnel hours were spent on the project.
- It is conservatively estimated that a minimum of 20,000 pages were run. Some of the pages were in color.
- Kathy Powell remembers Dr. Johnson instructing her to create an invoice for the color copies at a rate per copy less than the cost. Kathy Powell did so and Kathy recalls Dr. Johnson writing a check for that amount.
- In 2001 the process was repeated to a lesser degree. Fewer personnel hours and materials were expended on the 2001 reunion. The 2001 reunion was not hosted by Dr. Johnson.
- Ron Pleasanton, Department Chair for Visual Communications recalls doing some work for the reunion. Ron received payment for materials from Dr. Johnson and only a minimum amount of time was invested during working hours.



DEPOSITION EXHIBIT
Simpson 2
43-06 CF

## Dr. Johnson Travel (2.)

Terry Campus records indicate Dr. Johnson traveled to Raleigh, NC on October 23, 2002 and returned on October 26, 2002. The total cost of the trip was $1,207.41. The Travel Request Form (not signed by Dr. George) identifies the purpose of the trip as, "To tour and meet administrators for Institutional Advancement/Development and Public Safety/Security from Wake Technical Community College in Raleigh, NC."

On ~~Wednesday~~, March 9, 2005 at 0845 Hrs, I spoke with Carol Himes, Facilities Engineering Officer at Wake College in Raleigh, NC. Ms. Himes confirmed that she had met with Dr. Johnson. Ms. Himes was contacted by Dr. Johnson, who requested the meeting. Ms. Himes did not remember the exact date, but she remembered that the meeting was no more than 90 minutes and probably only an hour. Ms. Himes felt she gained a great deal from the meeting because Dr. Johnson told her about IACLEA. Wake has since contracted for an IACLEA evaluation. Ms. Himes felt the Wake campus security was no better than the DTCC Security so she had little to offer.

On Wednesday, March 10, 2005, I spoke with Jane Rabon, Institutional Advancement Officer for Wake Technical College. Ms. Rabon has never met with Dr. Johnson and was surprised that any one would be interested in Wake's Institutional Advancement office. Ms. Rabon described Wake's institutional advancement practices as, "we are getting there, but we aren't there yet." She also stated that if she had been contacted, she would have referred Dr. Johnson to Valencia or one of the more advanced colleges.

A review of this trip and the circumstances surrounding it revealed the following:
- In October of 2002, Dr. Johnson spent three days in Raleigh, NC
- The purpose of the trip was to learn about campus security and institutional advancement at Wake Technical College.
- Dr. Johnson had a 60 to 90 minute meeting with Carol Himes and discussed public safety.
- Dr. Johnson did not meet with Jane Rabon, the Wake I.A. Officer.
- Prior to Dr. Johnson's departure, Kathy Powell faxed Dr. Johnson's itinerary to Harris Smith, Dr. Johnson's cousin who lives in Raleigh, NC
- Dr. Johnson's cell phone bill for this period shows one telephone call on 10-24 to Wake College. The number belongs to Carol Himes. The bill shows one phone call on 10-16-02 to the home of Harris Smith and four calls over the three day period to Mr. Smith's, K&S cafeteria business.
- From 9-23-02 to 10-23-02, Dr. Johnson made eight cell calls from Delaware to her cousin's business in Raleigh.

B62

DTCC0012

### Dr. Johnson's Travel (1.)

1. College and campus travel policies require prior approval for all travel. More than two dozen trips over a two year period were reviewed. There is no indication of any prior approval by Dr. George for any of these trips. One travel request for a trip to Sedona, AZ was sent to Dr. George in December, 2004 for approval. Unlike the other Travel Request Forms, this form has a signature line for Dr. George. According to Kathy Powell, Dr. Johnson directed Ms. Powell to add the line and send the form to Dr. George for approval. Ms. Powell did so and Dr. George denied the trip by writing, "Not Approved" across the middle of the form. Dr. George signed the notation and dated it 12-16-04. A close review of the documents contained in the Sedona folder revealed the following:

   a. On October 27, 2004 Dr. Johnson faxed the information about the Sedona conference to Dr. Ileana Smith with a note that says," FYI, I will be attending."

   b. Dr. Johnson received an email on December 3, 2004 from NILD confirming her registration at the conference.

   c. Dr. Johnson received a Fax on December 3, 2004 confirming her registration.

   d. On Thursday, December 16, 2004, Dr. Johnson sent an Email to NILD stating, "Due to Illness, I will be unable to attend the subject forum/retreat. Please cancel my registration and send confirmation that it has been canceled. Thank you."

   e. There is no indication that the cancellation was processed by the conference sponsor. The conference rules established by the sponsor, National Institute for Leadership Development, state the submission of the registration form is a commitment to attend and cancellations received before December 20, 2004 will be granted credit toward another NILD conference. The NILD Invoice indicates payment following registration was expected, but we have no records that payment was made.

2. The records in the Sedona folder confirm Dr. Johnson's commitment to attend the conference prior to approval by Dr. George. Registration into the conference was completed before the Travel Request Form was sent to Dr. George.

## Doctor Johnson Purchases (1)

A review of Dr. Johnson's credit card activities and purchases with college funds revealed the following:

- In October 2002, Dr. Johnson purchased three books and two pieces of jewelry at the Three Castles Antique Store in Davis, WV. These items were charged to the PNC Credit Card assigned to Dr. Johnson. These items are not at the college. The value of these items is recorded as $451.00

- Dr. Johnson purchased season tickets to the Schwartz Center (Capital Theater) for 2002 valued at $700.00 The tickets were not used by the college.

- In August 2002, Dr. Johnson purchased a leather brief case. This special order item from Bag n' Baggage cost $435.00

- Several other purchases of items not in the campus inventory are noted on the PNC Credit Card register.

B64

DTCC0371

**PRINT BOLDED – CONFERENCE**
**Areas shaded – Leave Form on File**

<u>January 2002</u>                    (Note: Kathy Powell, Maternity Leave 1/7 – 3/1)

Wed. 9, Thurs. 10 and 3 hours on Fri. 11 – Sick Leave Form on File
Wed. 23 – 3:00, Dr. Ramani
Thurs. 24 – 2:30, Dr. Lucas
Tues. 29 – 11:30, Women's Wellness Ctr.
Wed. 30 – 12:45, Hair Appt.
Thurs. 31 – Do not schedule

<u>February 2002</u>

Thurs. 7 and Fri. 8 – (Do not schedule)
Fri. 15 – 3:00, Dr. Ramani
Mon. 18 – 8:15, Dr. Lucas

<u>March 2002</u>

Fri. 1 – 12:45, Hair Appt.
Mon. 18 – 11:45, Appt. in Lewes

<u>April 2002</u>

Wed. 10 – 12:15, Hair Appt.
Tues. 23 through Fri. 26 – Sick Leave Form on File

<u>May 2002</u>

Mon. 6 – Sick Leave Form on File (7th on report)
Fri. 10 – 4 hours Sick Leave Form on File
Fri. 17 – 11:30, Hair Appt.
Fri. 24 – 8:15, Dr. Isiochia

<u>June 2002</u>

Mon. 3 – Fri. 14 – Jury Duty
Tues. 18 – ALL DAY
Fri. 21 – 3:30, Dr. Kahn
Thurs. 27 – 3:00, Dr. Kahn
Fri. 28 – 11:00 Hair Appt.



DEPOSITION
EXHIBIT
Powell 11
3-74-06    PS
PENGAD 800-631-6989

**July 2002**

Mon. 1, 2, 3, 5, 8 – Annual Leave Form on File
Wed. 10 – Funeral, Georgetown, Jack Owens
Wed. 17 – 11:00, Stephen, Dentist
Fri. 19 – 8:45, Dr. Isiocha
Fri. 26 – Kent County Tourism, Chicken Fest?

**August 2002**

Thurs. 8 - 2:00, Dr. Lucas
Wed. 14 – Stephen Moving
Wed. 21 – ALL DAY (Do not schedule)

**September 2002**

Thurs. 19, 4 hours, Fri. 20 – Annual Leave Form on File
Wed. 25 – Sick Leave Form on File
Thurs. 26 – 4 hours pm – Annual Leave Form on File
Fri. 27 – Annual Leave Form on File

**October 2002**

Wed. 2 – 10:30, Stress Test
Thurs. 3 – 11:45, Dr. Kahn
Fri. 4 – ALL DAY, W. VA
**Wed. 15 through Fri. 18 – Conference NCBAA Leadership Development for African Americans, Baton Rouge, LA**
**Wed. 23 Through Sat. 27 – Wake Tech, Raleigh, NC**
Tues. 29 – Hair Appt.
Wed. 30 – 9:00, Healthcore Study, Wilmington, 4:30, Dr. Kahn

**November 2002**

Fri. 1 – ALL DAY, Husband medical procedure
Mon. 4 – After Rotary, home refrig. repairman
**Tues. 5 through Thurs. 7 – Conference, AACC Commission, Washington DC**
Fri. 8 – ALL DAY, medical appointments
**Thurs. 14 – Conference, College Board, Atlantic City, NJ**
Thurs. 21 – ALL DAY
Fri. 22 – 10:00, Healthcore Study, Wilmington
Tues. 26 – 11:00, Hair Appt., Did not return
Wed. 27 – Annual Leave Form on File

**December 2002**

Tues. 3 – Leave early, 4:00, Healthcore Study, Wilmington
Mon. 9 – 9:00, Dentist

**Mon. 16, Tues. 17 – MSA/CHE Conference, Washington DC**
Fri. 20 – 10:00 Hair Appt.

# DELAWARE TECH ◆

*Orlando J. George, Jr., President*                              *Dover ◆ Georgetown ◆ Stanton ◆ Wilmington*

March 23, 2005

Dear Delaware Tech Employee:

The College has retained the law firm of Morris, James, Hitchens & Williams to conduct an investigation related to the behavior and activities of Terry Campus Vice President and Campus Director Dr. Marguerite M. Johnson. David H. Williams, Esq., will be the attorney conducting interviews in connection with this investigation.

We have reason to believe you may have information relevant to the investigation. As President, I am asking for your help. I need you to cooperate fully with Mr. Williams by providing complete and accurate responses to any questions he may ask of you.

While I am fully aware that this is a difficult and unfortunate situation, I want you to know that you have my complete assurance that your conduct is not at issue and you will not be subjected to retaliation in any way for cooperating with this investigation.

Sincerely,

Orlando J. George, Jr.
President

DEPOSITION
EXHIBIT
#8
11/30/05 ASB

*Delaware Technical & Community College*
Office of the President
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-4053 Fax: (302) 739-6225 E-mail: pres@college.dtcc.edu
*Equal Opportunity/Affirmative Action Institution*

B68

DTCC000



**DELAWARE TECH**

*Dover ✧ Georgetown ✧ Stanton ✧ Wilmington*

Peg
This is a moot issue. These individuals now work for Peter & will be paid from the respective campus & P.O. budget. See my email of 4/12/04

Tom

*Delaware Technical & Community College*
**www.dtcc.edu**

Delaware Tech offers a wide variety of relevant, high quality programs in a friendly and nurturing environment. Innovative instruction is provided conveniently and affordably to meet the varied educational needs of motivated, career-oriented people seeking pathways for success.

B69

CONFIDENTIAL   DTCC2998



# DELAWARE TECH

| | |
|---|---|
| **TO:** | Gerard M. McNesby |
| **FROM:** | Marguerite A. Johnson |
| **RE:** | Terry Campus Positions |
| **DATE:** | April 15, 2004 |

As we have discussed before, I am very concerned about the length of temporary assignments for two Terry Campus employees who are currently performing tasks on behalf of the Office of the President.

In May 2000, Jerry Pearson was hired in a then newly authorized, general funded, Terry Campus position as a Media Production Specialist. At Dr. Bailey's request, his initial assignment was to provide some technical assistance to Art Edmonds in the Educational Technology Center. Four years later, he has not yet migrated to campus – focused duties.

In October 2002, Michael Cox, Information System Specialist, was temporarily assigned to the Office of the President to assist with the installation of PIPELINE. The assignment then shifted to ORACLE and has now transitioned to something else. There does not seem to be an end to this temporary assignment. Mr. Cox also occupies a general funded, Terry Campus position.

The negative financial impact to the campus is the value of these individuals' salaries – approximately $133, 611 (wages only) for the time period that we have lost their services.

If the skills provided by these individuals are still needed for Office of the President initiatives, you are welcome to retain their services by shifting them into other positions available to you. At issue here is the need to return these positions to campus use to meet critical needs here. The return of at least one position is time sensitive for the next academic year; I need to seek a reclassification to an instructional position (science) to meet developing requirements in the nursing department.

I will be happy to work with you to identify a timeframe as to when these positions can be returned on a timely basis. Please let me know if there is anything else that I need to do.

Thank you for your assistance.

c: Bob Hearn

CONFIDENTIAL    DTCC2999

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

(302) 472-4900
TELECOPIER (302) 472-4920

January 4, 2005

HAND DELIVERY
PERSONAL AND CONFIDENTIAL
Dr. Orlando George, Jr., PhD, President
Delaware Technical & Community College
Office of the President
P.O. Box 897
Dover, DE 19903

RE: Marguerite Johnson

Dear Dr. George:

I have been consulted and retained by Dr. Marguerite A. Johnson in connection with the apparent disciplinary administrative leave which would have placed her on as of January 3, 2005.

I have reviewed Dr. Johnson's present situation with her, as well as your letter of December 8, 2004 and her response to you dated January 3, 2005. A review of your letter of December 8, 2004 seems to make it clear that Dr. Johnson is being placed on administrative leave as a direct consequence of statements attributed to her during an informational meeting held at the Terry Campus, between her staff and Peter Shoudy, CTO. My review of the statements at that meeting indicates that they were statements made concerning the proper organization and administration of Terry Campus and were matters that were of concern not only to the administration and staff at the Terry Campus but to the general Delaware public at large.

In promoting the public services provided by Delaware Technical & Community College, the information provided to me indicates that comments made by Dr. Johnson were made in a non disruptive and appropriate manner. As such her statement are protected by the "Free Speech" provision of the First Amendment of the United States Constitution. Your instructions to Dr. Johnson that she is not to discuss your actions not only with present, but with former employees is further indication of a lack of recognition of the protections afforded to Dr. Johnson by the United States Constitution.

Equally troubling to Dr. Johnson, and myself is the fact that your memo of January 3, 2005 appears to be, without the requisite formality, the beginning of a termination of

B71

DEPOSITION
EXHIBIT
#7

Page 2
Dr. Orlando George, Jr., PhD, President
January 4, 2005

employment process.  You instruction to remove her personal belongings seems to indicate a
"fait accompli", and a predetermination to end Dr. Johnson's long and valued services to the
College.    If so, then your actions are damaging to Dr. Johnson in her personal and professional
reputation by damaging her in a the property interest which she possesses in her professional
reputation and employment.  To the extent that is the purpose of your letter then on behalf of Dr.
Johnson it is appropriate that the provisions of §12.02 of the "Delaware Technical & Community
College.  Administrator's Handbook be implemented.  To the extent that the actions taken by
you in your January 3, 2005 are not meant for purpose of being preliminary to Dr. Johnson's
termination, but are merely disciplinary in nature, then please provided me with the information
and documents necessary to commence a grievance procedure under § 13.02 of the "Delaware
Technical & Community College Administrator's Handbook.

        It is my hope that these matters can be resolved as quickly and as animally as possible so
that the valued services of Delaware Technical & Community College can continue to be
provided to the Community in as an efficient and uninterrupted manner as possible.

                                        Yours very truly,

                                        Gary W. Aber

GWA/ldm
cc:     Dr. Marguserite A. Johnson
        Brian Shirey, Esquire (by US mail)
        Ms. Hope Muray (by US mail)

FEB 1 5 2006

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

February 15, 2006

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE 19899-1675

      RE:    <u>Marguerite Johnson v. Delaware Technical & Community College, et al.</u>

Dear Gary:

      This is in response to your February 13, 2006 letter. You accurately state that during Hope Murray's deposition I informed you that there was no investigation prior to the time the allegations surfaced concerning the financial improprieties. This statement is correct.

      The chronology is as follows:

      1.    My March 7, 2005 letter to you informs you that allegations surfaced concerning the financial improprieties. I indicated that, pending an investigation of the financial improprieties, I would not initiate an investigation of the behavioral issues which led to the placement of Dr. Johnson on paid leave.

      2.    The College retained SantoraBaffone to conduct an audit of the financial improprieties. I had no contact with any representative of SantoraBaffone until after the issuance of SantoraBaffone's April 12, 2005 report.

      3.    My letter to you of March 16, 2005 broadly outlined my understanding of the report of financial improprieties.

      4.    Attached to my letter to you of June 17, 2005 is a privilege log which reveals a series of interviews I conducted in March, 2005, all of which were subsequent to March 7, 2005. Many of the employees I interviewed were previously interviewed by SantoraBaffone. At that time I was attempting to secure information which would enable me to make an independent assessment as to whether there appeared to be cause to move forward with the termination of Dr. Johnson for the financial improprieties. Questions included whether the

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

February 15, 2006
Page 2

employees interviewed observed Dr. Johnson engaging in intimidating and abusive behavior. As we stated before, during, and after the pretermination hearing, such evidence was offered for the limited purpose of explaining why employees did what they were told by Dr. Johnson despite the fact that they knew it was wrong. Most of the employees I interviewed in March, 2005 did not attend the November 19, 2004 meeting. If, however, an employee such as Connie Spampinato did attend the November 19, 2004, questions about whether such an employee experienced or observed intimidating and abusive behavior on the part of Dr. Johnson included whether they observed such behavior on November 19, 2004. My somewhat limited understanding of what occurred at the November 19, 2004 meeting is that Dr. Johnson's conduct was antagonistic, inconsistent with the President's expectation that members of the President's Council, who unanimously approved the IT reorganization, would support the IT reorganization rather than attempt to undermine it. While such behavior would be relevant if the College proceeded with an investigation focusing on Dr. Johnson's pattern of behavior over the past several years, the focus was on the financial improprieties.

Moreover, no evidence was offered at the pretermination hearing concerning what occurred on November 19, 2004 because there was no effort to interview all individuals in attendance for the purpose of reaching conclusions about what occurred at the meeting. Such an effort would have served no productive purpose given the decision to rely upon the financial improprieties as the basis for termination. Stated differently, the financial improprieties would have resulted in termination irrespective of what conclusions were reached concerning the November 19, 2004 meeting.

Thus, at the pretermination hearing the College limited its case to those witnesses who had some knowledge of the financial improprieties. Testimony was offered from such witnesses concerning Dr. Johnson's intimidating and abusive behavior. Therefore, for example, Connie Spampinato, who worked closely with Dr. Johnson and had knowledge of Dr. Johnson's behavior, was not offered at the pretermination hearing because Spampinato had no knowledge of the financial improprieties.

Sincerely,

David H. Williams

DHW/jam
cc:    Brian Shirey, Esquire
       Dr. Hope W. Murray

B74

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**

February 16, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899

RE: Marguerite M. Johnson

Dear David:

I received your letter of February 16, 2005. It was my hope that we could resolve this matter prior to any further actions being taken pursuant to President George's actions towards Dr. Johnson. As I have indicated to you in the past, I think that the suspension of her, and the public announcement of the suspension all have caused great injury to her public and professional reputation. The conducting of the investigation I think only exacerbates the problem.

Although I have explained to you on several occasions my belief that there has been a violation of Dr. Johnson's rights, I have withheld taking any action pending our attempts to resolve it. Since you are beginning to move forward with the investigation, it appears that the hope of resolving this matter is fading.

I am enclosing with this letter a draft of a complaint, which I am prepared to file by noon on Friday, February 18, 2005. I will file the complaint, unless I perceive that there is genuine negotiating progress to resolve this matter occurring. I do not wish this to create anymore pressure than what otherwise already exits. However, since you are proceeding with the investigation, it seems that this is the next appropriate step.

If you wish to discuss this matter further, I am of course willing to do so at your convenience.

Yours very truly,

Gary W. Aber

DEPOSITION
EXHIBIT
#9
11/30/05 ASR

GWA/mac
cc:    Dr. Marguerite Johnson

B75

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

February 16, 2005

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899-1675

RE:   Delaware Technical & Community College/Marguerite Johnson

Dear Gary:

As you know, we agreed to defer the initiation of the investigation pending an effort to resolve this matter in a manner which avoided the necessity of an investigation. This letter is provided as a courtesy to inform you that, given our inability to resolve the matter thus far, we are proceeding with the investigation. In doing so, we remain willing to continue exploring ways in which this matter may be resolved.

Attached is the letter the College will provide to individuals we interview in conducting the investigation.

Sincerely,

David H. Williams   (jam)

David H. Williams

DHW/jam
Enclosure
cc:  Dr. Orlando J. George, Jr.
      Ms. Hope Murray



DEPOSITION
EXHIBIT
#6
11/30/05 ASB

DRAFT

[date]

The College retained Morris, James, Hitchens & Williams LLP ("Morris, James") to conduct an investigation. We have reason to believe you may have information relevant to the investigation. Please cooperate with Morris, James. My only expectation is that you provide complete and accurate responses to any questions. You have my assurance that you will not be subjected to retaliation for cooperating with this investigation.

Sincerely,

Orlando George, Jr., Ph.D.

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**

February 18, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899

RE: <u>Marguerite M. Johnson</u>

Dear Mr. Williams:

I received your letter of February 18, 2005.  I appreciate your agreement not to proceed with any investigation until we have had an opportunity to hear your counter-proposal during the week of February 28, 2005.

With regards to your statement that there has been no "public announcement of the suspension" but that Dr. Johnson has only been placed on paid administrative leave, I believe that is a difference without any substance.  A public announcement was made that Dr. Johnson was being placed on paid administrative leave.  Calling it a paid administrative leave rather than a suspension does not change the nature of what is happening, a horse by any other name is still a horse. It is clear that Dr. Johnson was involuntarily removed from her office, stripped of her job duties, and this fact was announced generally to the public.  I believe that these actions bring the proposed defendants within the claims made within the complaint that I have drafted.

Nonetheless, I look forward to discussing this matter with your further in a week.

Yours very truly,

Gary W. Aber

GWA/mac
cc:   Dr. Marguerite Johnson

B78

FEB 1 8 2005

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

February 18, 2005

**BY FAX AND HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899-1675

RE:     Delaware Technical & Community College/Marguerite Johnson

Dear Gary:

In response to your February 17, 2005 letter, the College is willing to continue exploring a resolution. As you know, the College agreed to delay the investigation in order to give the parties time to discuss a resolution. I will be out of the office today and next week. Thus, the investigation will not start until after I return. In any event, if your client is willing to compromise, we may be able to reach agreement. The week of February 28, 2005 we will make a counter proposal.

Finally, your letter refers to "the public announcement of the suspension." As you know, she was not suspended, and there was no such announcement. Dr. Johnson was placed on paid administrative leave, and the College community received an announcement she is on paid administrative leave.

Sincerely,

*David H. Williams (jam)*

David H. Williams

DHW/jam
cc:   Ms. Hope Murray

Dictated but not read by Mr. Williams due to his absence from the office.

DHW/007409-0131/1087674/1

B79

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

March 7, 2005

**VIA FAX AND HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899-1675



RE:    Delaware Technical & Community College/Marguerite Johnson

Dear Gary:

      On Friday, March 4, 2005, I met with a College official for the purpose of discussing the formulation of a counter proposal to resolve this matter.

      During my absence on vacation, and in the absence of Dr. Johnson, information surfaced concerning questionable expenditures by Dr. Johnson. Before the College makes a counter proposal, it will discreetly take a closer look at these questionable expenditures, and quietly and quickly review internal records for the purpose of determining whether there may be additional, inappropriate expenditures or expense reimbursements initiated by Dr. Johnson.

      It is anticipated that such a review will be completed within one week. At that point, the College will determine whether an independent audit is necessary and appropriate. If not, the College will make a counter proposal.

      In the meantime, I will not initiate an investigation of the matters which led to the placement of Dr. Johnson on paid administrative leave.

      Finally, I am not responding to the second paragraph of your February 18, 2005 letter. It seems to me no constructive purpose will be served by continuing to state and re-state our respective views concerning the placement of Dr. Johnson on paid administrative leave. In addition to the reasons set forth in the second paragraph of my January 7, 2005 letter to you, it is

B80

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

March 7, 2005
Page 2

unlikely information concerning what appear to be inappropriate expenditures would have surfaced but for Dr. Johnson's absence.

Sincerely,

David H. Williams

DHW/jam
cc:   Ms. Hope Murray

MAR 1 6 2005

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

March 16, 2005

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899-1675


DEPOSITION
EXHIBIT
#11
11/30/05 ASB

RE:    Delaware Technical & Community College/Marguerite Johnson

Dear Gary:

This is in response to your demand for details concerning Dr. Johnson's questionable expenditures and use of College resources.

To begin with, in Dr. Johnson's absence, College employees disclosed information about Dr. Johnson's expenditures and use of resources. Such information did not surface when Dr. Johnson was present and in charge at the Terry Campus because she bullied and intimidated employees, including frequent threats of termination.

While the reports of misconduct are still being reviewed, it appears that the most egregious appropriation of College resources occurred surrounding a large family reunion Dr. Johnson hosted in 1999. Dr. Johnson directed her clerical staff, marketing department personnel, and graphic arts personnel to devote at least 200 hours to the creation and production of at least 20,000 pages of material including announcements, letters, postcards, a cookbook, and a family genealogy. Dr. Johnson directed her clerical staff to falsify business records by creating a fictitious invoice thereby enabling Dr. Johnson to reimburse the College for color copies at a rate substantially lower than the actual cost of reproduction. The 1999 misconduct was compounded in 2001 when, to a lesser extent, Dr. Johnson appropriated College resources to prepare for her 2001 family reunion.

With respect to questionable purchases using a State of Delaware Supercard, the College is still reviewing Supercard purchases based upon what has surfaced thus far. One

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

March 16, 2005
Page 2

example is the purchase of 2 items of jewelry in an antique store in West Virginia in October, 2002.

Finally, information emerged as to whether some of Dr. Johnson's travel at College expense was for a legitimate business purpose. For example, in October, 2002, the College paid for Dr. Johnson's 3 day trip to Raleigh, North Carolina. As far as the College is able to determine, during the 3 day trip Dr. Johnson spent approximately one hour meeting with a public safety officer at Wake Community College. While Wake Community College may have benefited from this meeting (as we understand it, Delaware Tech was far more advanced in the area of public safety than was Wake Community College), the fact remains there is no apparent explanation as to why this meeting justified a 3 day trip. What College officials do know is that one of Dr. Johnson's relatives lives in the Raleigh, North Carolina area. The College has reason to believe Dr. Johnson and this relative worked together on planning the 2003 family reunion.

Within the next two weeks, the College will make every effort to conclude its review of the matters surfaced by employees, and make a determination as to what action is necessary and appropriate.

Sincerely,

David H. Williams

DHW/jam
cc: Ms. Hope Murray

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

APR 2 8 2005

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

April 27, 2005

**HAND DELIVERY**



Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE 19899-1675

RE:   <u>Marguerite Johnson v. Delaware Technical & Community College</u>

Dear Gary:

As you know, Delaware Technical and Community College ("the College") retained me to conduct an independent investigation of Dr. Marguerite M. Johnon ("Johnson"). Based upon my investigation, as well as the parallel investigation conducted by Santora Baffone, I recommended the President authorize the initiation of termination proceedings. The President accepted my recommendation. This will serve as the College's notice of intent to terminate the employment of Johnson. The reason is a course of conduct which constitutes a hazard to the health, safety and well-being of the college and its employees and students. More specifically, the reasons are set forth in Santora Baffone's April 12, 2005 Report, a copy of which was provided to you on April 15, 2005. The evidence offered will include proof of Johnson's administration by fear and intimidation resulting in employees doing what they were told to do despite knowing it was wrong, and refraining from reporting Johnson's misconduct.

Attached are the Rules and Procedures for the Conduct of Termination Proceedings Involving a Vice President and Campus Director. These Rules were adopted by the College's Board of Trustees on April 26, 2005.

You may request a hearing. Such a request must be in writing and received by me within 10 days of your receipt of this notice. If you fail to submit a timely, written request for a

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

April 27, 2005
Page 2

hearing, this notice shall constitute the final notice of termination effective 60 days after receipt of this notice.

Sincerely,

David H. Williams

DHW/jam
Enclosure: Rules of Procedure for the Conduct of Termination Proceedings Involving a
              Vice President and Campus Director
cc: Ms. Hope Murray

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

May 5, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

**HAND DELIVER**
David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899

RE: Marguerite M. Johnson

Dear Mr. Williams:

I am responding to your letter of April 27, 2005. This letter is written pursuant to the instructions contained in that letter. This is the formal notice by Marguerite Johnson that she requests a pre-termination hearing.

I note, in reviewing the "Administrator's Personnel Handbook" issued by Del Tech to Marguerite Johnson, that the procedures for requesting a hearing set forth in your letter of April 27, 2005 are at variance with the procedures outlined in §12.02 of the manual. Please let me know whether this letter is a satisfactory notice, or whether I should follow the procedure set forth in §12.02.

Reviewing the rules and procedures, which were enclosed in your letter, please let me know the means by which the "impartial hearing officer" will be designated. I think it would be fair that we consult on that selection.

Regarding the rules you forwarded to me, you state that the reasons for the termination have to be set out. While the reasons for termination contained in the "Forensic Audit" report adequately detail the nature of the reasons contained in that report, your letter of April 27, 2005 also states that the reason for termination will be "...a course of conduct which constitutes a hazard to the health, safety and well being of the college and its employees and students." You go on to state that there will evidence offered to include "...proof of Johnson's administration by fear and intimidation...". If the purpose of giving the reasons for termination is to provide fair notice of the nature and extent of the charges, your description as to the later reasons is insufficient to provide any notice of the nature of the charges. It speaks in vague generalities without any specifics. Let this letter serve as a formal request for a specific

David H. Williams, Esquire
May 5, 2005
Page Two

description of the charges that will be presented. Without this information, there can be no ability to prepare a response to the charges unless the nature of the charges and the evidence to be presented is provided prior to the hearing.

Finally, I note that there are several provisions in the rules and procedures, which you enclosed with your letter for this hearing, and the rules and procedure for termination of employees as outlined in the "Administrator's Personnel Handbook", specifically Section 12.02. I believe that Dr. Johnson has a property right and a reasonable expectation in those procedures. It might be helpful if we could discuss the differences between the procedures in the handbook, and the procedures in the rules you enclose, and the reasons for any changes in the rules.

Thank you for your consideration and cooperation.

Yours very truly,

Gary W. Aber

GWA/mac
cc:     Dr. Marguerite Johnson

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

MAY - 9 2005

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

May 6, 2005

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE 19899-1675

RE:    Marguerite Johnson v. Delaware Technical & Community College

Dear Gary:

The following is in response to your letter of May 5, 2005:

1.    Your May 5, 2005 letter is satisfactory notice.

2.    The Chief Legal Counsel of the College contacted Vincent A. Bifferato, Sr. who has agreed to serve as the hearing officer.

3.    The phrase "Any act or course of conduct which, in the judgment of the Employer constitutes a reasonable hazard to the health, safety and well being of Employer, its agents, servants and employees or students" is a phrase found in paragraph 3(d) of Dr. Johnson's employment agreement.  The conduct described in the Forensic Audit is a course of conduct which constitutes a hazard to the health, safety and well being of the College and its employees and students.

4.    Dr. Johnson's administration by fear and intimidation included privately and publicly humiliating numerous College employers in a loud and abusive manner, including frequently accusing employees of being incompetent and threatening to fire employees.  Well in advance of the hearing, we will provide you with the names of prospective witnesses who will offer testimony on this issue, and provide additional details concerning the anticipated nature of such testimony.

5.    The Board of Trustees adopted the Rules of Procedure attached to my letter of April 27, 2005 due to concerns that the procedure for termination of employees outlined

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

May 6, 2005
Page 2

in Section 12.02 of the Administrator's Personnel Handbook simply do not work in the case of the termination of a Vice President and Campus Director.   To begin with, Section 12.02 contemplates that the Vice President and Campus Director will make the termination decision. Moreover, the Rules of Procedure recently adopted by the Trustees provide Dr. Johnson far greater due process than is the case with Section 12.02.  For example, Section 12.02 provides that neither the employee nor the administration is obligated to produce witnesses or be subject to cross examination.    The Chief Legal Counsel determines whether other employee representatives or witnesses may attend the hearing.  In sharp contrast to Section 12.02, the Rules of Procedure adopted by the Trustees for this hearing provide for an independent, impartial hearing officer, representation by counsel, the right to present and cross-examine witnesses, the creation of a verbatim transcript, and an impartial hearing officer.  Moreover, the Rules of Procedure indicate that the Trustees delegate to the independent hearing officer the power to make the final termination decision.  In short, the Rules of Procedure applicable here provide Dr. Johnson far greater protections and rights than Section 12.02.

Sincerely,

David H. Williams

DHW/jam
cc:  Mrs. Hope W. Murray

DHW/007409-0131/1167823/1

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

June 8, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

**HAND DELIVER**
David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899

RE: Marguerite M. Johnson

DEPOSITION
EXHIBIT
#18
11/30/05RR

Dear Mr. Williams:

There are certain housekeeping matters, which I think have to be resolved concerning the upcoming personnel hearing. Obviously, Dr. Johnson will want numerous present employees of the college to testify. However, since this is an informal proceeding, I am not sure I have subpoena power. I would like your agreement that if I designate individuals, they will be notified that they are expected to attend the hearing as if they were under subpoena. Please let me know if this presents any problems.

In the same vein, in preparing for this hearing, I am fully aware that you have conducted an investigation at Del Tech on behalf of the administration into Dr. Johnson's past conduct. I have submitted to you discovery documents concerning that investigation. However, in preparation for this hearing, it is also my understanding that numerous present employees have been told by college administrators that their testimony was either not essential, or superfluous, because based upon the audit and other findings it was a foregone conclusion that Dr. Johnson was going to be terminated. Thus, it is their understanding that their testimony is no longer essential. In fact, it has been reported that when persons called Dr. Johnson's office, they are being told that she "no longer works here". Thus, the assumption has arisen at the school, that she has already been terminated.

I think it would be appropriate if a public announcement were made, that no decision has been made with regards to Dr. Johnson's future and that decision will be made after the outcome of a due process hearing. Further, present employees should be instructed that they are to cooperate fully in the conduct of that hearing, and that they

David H. Williams, Esquire
June 8, 2005
Page Two

should have no fear whatsoever of retaliation.  That later comment should also be part of the public announcement.

Please let me know how we can address these concerns.

Yours very truly,

Gary W. Aber

GWA/mac

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

June 10, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

**HAND DELIVER**
David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899

RE: <u>Marguerite M. Johnson</u>

Dear David:

I received your letter of June 8, 2005. This letter is being prepared during my absence from the office, since I am not in the office at this time.

However, before I can agree to any schedule, I must have a favorable and positive response to the requests that I made in my letter of June 8, 2005. My client has grave concerns about the ability to have present employees of Del Tech testify, since this is an informal hearing and she does not have the power to compel their attendance. More importantly, it has been expressed by numerous people that there is a general fear of retaliation by the administration if anybody testifies on behalf of Dr. Johnson. Steps have to be taken to assure witnesses that this will not happen. This would require some kind of public statement. Absent such assurances in these two areas, I do not believe Dr. Johnson will get a full and fair hearing in this matter.

I look forward to an opportunity to discuss these concerns with you.

Yours very truly,

Gary W. Aber/mac

Gary W. Aber

GWA/mac
cc:   Dr. Marguerite Johnson

**DICTATED BUT NOT READ
DUE TO ABSENCE**

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

June 14, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

**HAND DELIVER**
David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899

RE: <u>Marguerite M. Johnson</u>

Dear Mr. Williams:

You should be receiving about the same time you receive this letter, my correspondence, with comments concerning your answers to discovery. The answers to the interrogatories that you made crystalizes the problems that I am having preparing for the pre-termination hearing. Interrogatories 9, 15, and especially 16 refer indirectly to improper conduct by Dr. Johnson. However, the answers to those interrogatories do not provide any specifics.

At the time Dr. Johnson was suspended, she had a reasonable expectation that any termination procedure that would be used in her case, would be pursuant to Section 12.02 of the "Delaware Technical & Community College Administrator's Personnel Handbook". That section states in pertinent part:

"The employee must be notified in writing that termination of employment is being considered and the **reasons (incidents and/or conditions)** that led to the performance action...".
(Emphasis Added).

In addition, the rules adopted specifically adopted for Dr. Johnson's hearing state under Rule 2(a), that the reasons for the termination must be given.

The statement that Dr. Johnson is guilty of abusive and other inappropriate behavior, without giving the specific instances of such conduct, the names of the persons who will testify, and a description of what they will testify to, prevents any means of preparing for this hearing. In essence, what will happen is Dr. Johnson and I

B93 .

DEPOSITION
EXHIBIT
#17

David H. Williams, Esquire
June 14, 2005
Page Two

will be appearing at a hearing knowing that there will be some type of testimony concerning abusive behavior, but have not idea of the nature of such testimony, the incidents that will be testified to, or who will testify as to what incidents.   Again, the result will be a "trial by ambush".

Accordingly, I believe I am entitled to the specific instances of abusive conduct, which you rely on in moving to terminate Dr. Johnson's employment.   You should provide me the names of any witnesses, the specific incident they will testify to, and provide me any documents, which relate to those incidents.

If you do not believe that you can comply with this request, please let me know promptly, so we can bring this matter before Judge Bifferato.

Yours very truly,

Gary W. Aber

GWA/mac
cc:    Dr. Marguerite Johnson

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

June 20, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

* ALSO ADMITTED IN NEW YORK
** ALSO ADMITTED IN PENNSYLVANIA

HAND DELIVER
David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899

RE: <u>Marguerite M. Johnson</u>

Dear David:

In reviewing the documents that you submitted, I came across Dr. Johnson's original employment contract, which appears at DTCC0379-382. That contract provides that the employment will continue from year to year, after the expiration of its initial term, unless terminated as provided by the contract (¶7).

The contract also provides the means by which Dr. Johnson's employment can be terminated. Under ¶3(c)(ii) now that Dr. Johnson has completed her initial probationary period, she can be terminated only for cause. Such a termination procedure requires that she be given a notice of termination. The notice of termination has several requirements. Namely, the notice of termination must "fully set forth" the cause for termination. I am not sure that has been done in this instance. More importantly, the notice of termination "...shall be supported by affidavits of person(s) having knowledge of such cause...". Of course, to be meaningful they must be supplied adequately prior to any termination hearing. The purpose of this letter is to make a formal demand for the affidavits of all persons having knowledge of the reasons for her discharge. I would interpret this to mean that any person you are going to have testify in the hearing of this matter must provide me an affidavit in order to comply with the requirements under the contract. In addition, any other evidence which is going to be offered is, by the contract, required to be provided.

I make this request because Dr. Johnson has a reasonable expectancy in the compliance with these contract provisions. The failure to comply with these contract provisions, might well constitute a violation of the Constitutionally protected property interest that Dr. Johnson has in the rights provided by that contract.