David H. Williams, Esquire
June 20, 2005
Page Two

Thank you for your assistance and cooperation in this matter.

Yours very truly,

Gary W. Aber

GWA/mac
cc:    Dr. Marguerite Johnson

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

June 17, 2005

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE  19899-1675

RE:   <u>Marguerite Johnson v. Delaware Technical & Community College</u>

Dear Gary:

In response to the last paragraph of your June 15, 2005 letter, identify the employees you have attempted to communicate with.  Each such employee will receive a letter from the College President providing assurances there will be no retaliation for cooperating with Dr. Johnson's counsel, or testifying at the pre-termination hearing.

Staff at the Terry Campus have been directed to respond to communications directed to Dr. Johnson by indicating Dr. Johnson is on paid administrative leave.

Sincerely,

David H. Williams

DHW/jam
cc:   Dr. Hope Murray
        Brian Shirey, Esquire

DHW/007409-0131/1222869/1

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*          June 20, 2005          (302) 472-4900
DARRELL J. BAKER, P.A.                                   TELECOPIER (302) 472-4920
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

**HAND DELIVER**
David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899

RE: Marguerite M. Johnson

Dear David:

Thank you for your two letters of June 17, 2005.  With regards to the letter concerning the individualized notice to each witness that there will be no retaliation, I believe that that type of notice might do more harm than good.  That procedure requires that I notify Dr. George of every individual who I intend to speak with, or wish to call as a witness.  Dr. George will then contact each witness to assure them that he will take no negative action towards them.

In discussing this matter with certain witnesses, this very type of highlighted tension/notice from the college, would tend to emphasize the involvement of these individuals and provide a list to the school for later negative actions at some future date. The witnesses are afraid of such individualized pre-hearing notice.  Thus, I again asked for a generalized public notice to all faculty and staff members that there will be no retaliation for cooperating in this matter.  I can see no harm from such a procedure, and only a benefit from the fairness to this hearing if that procedure is used, rather than the individualized pointed communication between Dr. George and each potential witness. If you can provide me some reason why such a generalized notice would be inappropriate, I would welcome an explanation.

David H. Williams, Esquire
June 20, 2005
Page Two

     Thank you for your consideration.

Yours very truly,

Gary W. Aber

GWA/mac
cc:    Dr. Marguerite Johnson

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP JUN 2 3 2005

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

June 22, 2005

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE 19899-1675

RE:    Marguerite Johnson v. Delaware Technical & Community College

Dear Gary:

Assurance of no retaliation will be provided upon request to the individuals you identify. Your preference for a public statement is unacceptable because such a statement communicates the fact there is a confidential termination hearing to the entire College community most of whom no have role in or need to know of the hearing. Furthermore, such a statement implies there have been threats of retaliation, or at least reason to be concerned about retaliation. The fact is we do not believe such threats have occurred, nor do we believe there is a reasonable basis for being concerned about retaliation.

Your suggestion individualized letters from Dr. George will result in a hit list of retaliation victims insults Dr. George's integrity. Moreover, your insistence that a public statement avoids the possibility of a hit list is illogical. In all events the College will know who testifies.

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

June 23, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899

RE: Marguerite M. Johnson

Dear David:

In reviewing several of the materials that you have produced to me, it is clear that from those materials (DTCC2061) that representatives on behalf of Del Tech have had a chance to interview Carol Hines, the representative of the North Carolina College involved in the accusations against Dr. Johnson.

I have been unable to locate Dr. Hines and have been attempt for approximately a week to reach her.  Friday afternoon, I received a return call from an attorney in North Carolina who represents Wake Community College.  He informs me that he had spoken with you earlier that week, and he was not going to let me talk or discuss the matter with Ms. Hines prior to the deposition.

It is clear that Del Tech has had an opportunity to prepare itself by interviewing her to understand the nature and extent of any testimony it wants to obtain from her, while I have been denied that same opportunity.  I will treat the deposition that you have scheduled as one of discovery, but will object to any substantive use of it in any future proceeding.

Yours very truly,

Gary W. Aber

GWA/mac
cc:    Dr. Marguerite Johnson

LAW OFFICES

# ABER, GOLDLUST, BAKER & OVER

(AN ASSOCIATION OF LAW PRACTICES)
702 KING STREET, SUITE 600
P.O. BOX 1675
WILMINGTON, DELAWARE 19899-1675

GARY W. ABER, P.C.
PERRY F. GOLDLUST, P.A.*
DARRELL J. BAKER, P.A.
SUSAN C. OVER, P.C.
JOANNE A. SHALLCROSS**
SHAUNA T. HAGAN

June 23, 2005

(302) 472-4900
TELECOPIER (302) 472-4920

*ALSO ADMITTED IN NEW YORK
**ALSO ADMITTED IN PENNSYLVANIA

David H. Williams, Esquire
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899

RE: Marguerite M. Johnson

Dear David:

Just so we are sure of the ground work, I am writing to confirm our various conversations.

You have informed me that the topic of the upcoming termination hearing for Dr. Johnson is limited to your termination letter. If it is not mentioned in your termination letter, then it is not going to serve as grounds for seeking her termination. In that regard, there is no mention in your letter of the events of the November 19, 2004 meeting, which led to Dr. Johnson's leave of absence thus, I will not be prepared to discuss, except in generalities, and background, those events.

Secondly, I had asked for specifics concerning allegations of abusive conduct. You stated that since your witnesses could not provide any specific incidences, such a generalized statement would not serve as a basis for seeking Dr. Johnson's termination. While your letter of April 27, 2005 does state that the evidence offered will include proof of administration by fear and intimidation, I have, pursuant to both the Delaware Technical & Community College original Personnel Administrator's Manual, your revised rules, and Dr. Johnson's contract asked for the specific allegations. To date, you have been unable or unwilling to provide me with any specific allegations that would support that statement concerning administration by fear and intimidation. Thus, your statement has been made that there will be no evidence in that regard, since you have not provided me any notice of the evidence in advance.

Accordingly, as stated above, it is my understanding based upon your representation that if the matter is not mentioned **specifically** in your termination letter or with specificity in the audit report, it is not going to serve as the basis for her termination. Dr. Johnson would have been denied notice and a fair hearing.

B102

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

June 22, 2005
Page 2


    There will be no retaliation. Perhaps employees do want to get involved because they have no relevant information, or have nothing favorable to say about Dr. Johnson.

       Sincerely,

       David H. Williams

DHW/jam
cc: Dr. Hope W. Murray
   Brian Shirey, Esquire

Dictated but not read by Mr. Williams due to his absence from the office.

David H. Williams, Esquire
June 24, 2005
Page Two

       Thank you for helping us narrow these issues.

                         Yours very truly,

                         Gary W. Aber

GWA/mac
cc:    Dr. Marguerite Johnson

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

June 27, 2005

**HAND DELIVERY**

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE 19899-1675

RE:    Marguerite Johnson v. Delaware Technical & Community College

Dear Gary:

This is in response to your June 23, 2005 letter which purposes to confirm various conversations.

I did inform you that the termination hearing for Dr. Johnson is limited to the scope of the termination letter.  The termination letter incorporates by reference the SantoraBaffone report.  I do not intend to offer testimony concerning the events of the November 19, 2004 meeting.

In response to your request for specifics concerning allegations of abusive conduct, I indicated that the College's witnesses will generally state that Dr. Johnson was frequently loud and abusive in reprimanding employees, and that Dr. Johnson threatened to terminate employees on several occasions.  I also indicated that because such conduct on the part of Dr. Johnson occurred over a number of years, was frequent, and employees that witnessed such conduct did not maintain diaries or logs, we cannot, for the most part, provide specifics concerning such a course of conduct.  Later today, or tomorrow morning, you will be receiving the affidavits you requested which will provide somewhat more detail.

I did not at any point state that there will be no evidence in regard to Dr. Johnson's threatening, intimidating and abusive behavior.  What I did say is that testimony with respect to such behavior will not be offered as a grounds for termination.  Rather, consistent with

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

June 27, 2005
Page 2

the notice of intent to terminate, such evidence will be offered as an explanation as to why employees did what they were told by Dr. Johnson despite their belief that what they were being asked to do was wrong.

Sincerely,

David H. Williams

DHW/jam
cc:   Dr. Hope W. Murray
      Brian Shirey, Esquire

DHW/007409-0131/1242705/1

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

David H. Williams
(302) 888-6900
dwilliams@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

June 28, 2005

## HAND DELIVERY

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
Wilmington, DE 19899-1675

RE:    <u>Marguerite Johnson v. Delaware Technical & Community College</u>

Dear Gary:

This will confirm that the most recent Employment Agreement signed by Dr. Johnson is dated July 25, 1974.

Attached are the affidavits you requested.

Also attached are letters from Dr. George which you are authorized to provide to prospective witnesses.

Sincerely,

David H. Williams

DHW/jam
Enclosures
cc:   Dr. Hope W. Murray
      Brian Shirey, Esquire

**Bifferato Gentilotti Biden**

Vincent A. Bifferato, Jr.
Ian Connor Bifferato
Jeffrey M. Gentilotti
Joseph R. Biden, III
David A. Denham
Veronica O. Faust
Catherine Zwolak Killian
Joseph K. Koury
George T. Lees, III
Garvan F. McDaniel

Alternative Dispute Resolution
—
Vincent A. Bifferato
William Swain Lee
Carl Schnee
—

Writer's Email:  VAB@bgbde.com
Reply to Wilmington

July 19, 2005

Gary W. Aber, Esquire
Aber, Goldlust, Baker & Over
Suite 600, 702 King Street
P. O. Box 1675
Wilmington, DE   19899-1675

David H. Williams, Esquire
Morris, James, Hitchens & Williams
10th Floor, 222 Delaware Avenue
P. O. Box 2306
Wilmington, DE   19899-2306

Re:    **Marguerite Johnson**

Counsel:

On January 3, 2005, Dr. Marguerite A. Johnson, Vice President and Director of the Dover campus of Delaware Technical & Community College was placed on administrative leave pending an investigation involving her pattern of behavior over the past several years.  On April 27, 2005, Marguerite Johnson through her attorney, Gary Aber, was given notice of intent to terminate her employment based upon a study conducted by Santora Baffone CPA Group dated April 12, 2005, which constituted a course of conduct which was a hazard to the health, safety and well-being of the College, its employees and students.  On May 11, 2005, I was appointed as hearing officer in this matter.  The hearings were held on June 29 and July 1, 2005 at the campus of Delaware State University.  After reviewing all of the evidence presented at the hearing including exhibits, I find the pertinent facts to be as follows.

**Bifferato, Gentilotti & Biden, P.A.**
www.bgbde.com
—

200 Biddle Avenue
Suite 203
Newark, DE 19702
Phone: 302 - 429 - 1900
Fax: 302 - 832 - 7540

1308 Delaware Avenue
Wilmington, DE 19806
P.O. Box 2165
Wilmington, DE 19899 - 2165
Phone: 302 - 429 - 1900
Fax: 302 - 429 - 8600

B-106

701 Rehoboth Avenue
Rehoboth Beach, DE 19971
Phone: 302 - 227 - 6600
Toll Free: 866 - 618 - 2433
Fax: 302 - 227 - 6778

Gary W. Aber, Esquire
David H. Williams, Esquire

Page 2
July 19, 2005

Dr. Marguerite A. Johnson was hired as a full-time employee of Delaware Technical & Community College in 1974. Through various appointments, she eventually became a Vice President and Director of the Dover campus of the Delaware Technical & Community College. Dr. Johnson's conduct in running the Dover campus came into question the latter part of 2004. After a meeting with the President of the College, Dr. Johnson was placed on paid administrative leave in January, 2005. An investigation was then undertaken by David Williams, Esquire, an attorney for the Delaware Technical & Community College, and an accountant employed by Santora Baffone CPA Group. As a result of these investigations, it was determined that Dr. Johnson abused her position at the Dover campus by using personnel and material for personal purposes, abuse of a college credit card, and abusive behavior towards employees.

Some time in 1999, Dr. Johnson was planning a family reunion. She was in charge of this particular event and used staff at the Dover campus for purposes of preparing a cookbook, genealogy book, programs, invitations, and flyers. According to the CPA report, thousands of dollars of personnel time and material of the College was spent on this purpose. Although Dr. Johnson claims she paid monies back to the College, it is apparent that she did not fully reimburse the College for the personnel time and materials.

It was also demonstrated that Dr. Johnson, being in possession of a college credit card, used the credit card on many trips not only for school purposes but for personal purposes, most of which she repaid the College once so informed. However, she did purchase several items, a briefcase, several antique books and jewelry for personal use, where there was no reimbursement.

It is also a contention of the College that Dr. Johnson was inappropriately abusive to many of its employees. After reviewing all of the evidence and the exhibits, the hearing officer finds that the College has met its burden of proof by a preponderance of the evidence that Dr. Johnson inappropriately used College personnel and materials for personal matters. It has also been established by a preponderance of the evidence that Dr. Johnson did not fully and equitably replay the College for such labor and materials. Dr. Johnson defends these allegations by claiming that many employees in a position of authority also have staff do personal errands and favors for their

Gary W. Aber, Esquire
David H. Williams, Esquire

Page 3
July 19, 2005

bosses.  However, the magnitude of this undertaking for the 1999 reunion was a gross deviation from any accepted practice for the secretary at times performing a minor personal errand for their supervisor.  It is clear that Dr. Johnson was in a position of authority.  She should have known that use of College personnel for private matters was inappropriate and set a bad example for all of those who worked on the project.  Although it is clear that Dr. Johnson did not tell any of the employees to keep the matter private, it is also clear that Dr. Johnson took advantage of these employees and their knowledge of her treatment of other employees that this was a personal matter.  Dr. Johnson inappropriately used her position as Vice President and Director of the Dover campus to have the employees do her personal work at great expense to the College.  It is also evident that her manner in dealing with other employees suggested to these employees that the matter be kept private.

Dr. Johnson also had a pattern of abuse in the use of the College credit card.  In February, 2002, a super card issued by PNC Bank was given to Dr. Johnson for use in travel and other necessities as her responsibilities dictated.  However, the use of this card was strictly limited to College expenses.  Dr. Johnson on many occasions used this credit card for personal items.  Dr. Johnson through her attorney has offered into evidence many checks written to the School that clearly indicates that she used the credit card and reimbursed the School.  This was in direct violation of the guidelines set forth in the use of this credit card.  The evidence also shows by a preponderance that she used this credit card on many occasions and had to be reminded to repay the School instead of initiating repayment on her own.  The evidence also shows that on at least three occasions the use of this credit card was for items that were personal in nature and not repaid to the School.

Dr. Johnson was well aware that her treatment of employees by abusive conversation thwarted any attempts of suggestions that employees under her would advise her or inform her that certain monies were owed by her to the College for unapproved use of this credit card.

The pattern and behavior of Dr. Johnson in the two items above clearly indicate that these activities constituted a hazard to the health, safety and well being of the College and its employees.  Dr. Johnson's use of employees and materials amounted to thousands of dollars.

Gary W. Aber, Esquire
David H. Williams, Esquire

Page 4
July 19, 2005


     Dr. Johnson's actions as explained above clearly meet the requirements in Paragraph 3(d) of her employment contract signed by the College and Dr. Johnson on July 25, 1974. In the judgment of the employer, any act that constitutes a reasonable hazard to the health, safety and well being of employer's agents, servants, employees or students is ground for termination for cause. The College has met that burden. It is the decision of the hearing officer that Dr. Johnson be terminated for cause.

     Very truly yours,

     Vincent A. Bifferato

/mem

# PERSONNEL

# POLICY

# MANUAL

# DELAWARE TECHNICAL & COMMUNITY COLLEGE

# SECTION III
(As Amended November 17, 1998)

## EMPLOYMENT PROCEDURES AND TERMS OF EMPLOYMENT

Employment at the campus level is the responsibility of the Vice President and Campus Director with the exception of Salary Plan D (Administrative Pay Plan) positions which require approval by the President. Employment within the Office of the President is the responsibility of the College President. Employment in the position of Vice President and Campus Director requires the approval by the Board of Trustees.

No commitments with respect to hiring and promotions may be made by anyone other than the respective Vice President and Campus Director, the College President, or the Board of Trustees, except in cases where the specific authority to do so has been appropriately delegated through written notice.

## 3.01 POSITIONS IN SALARY PLANS A AND B

Regular, full-time position vacancies shall be posted for a minimum of fifteen (15) calendar days with the following exceptions:

1. Positions temporarily filled on an acting basis need not be posted. Individuals may be named to such acting positions by the Vice President and Campus Director for a period not to exceed twelve (12) months. Where unusual circumstances necessitate a longer period of time, such extended periods shall be approved by the Vice President and Campus Director with approval subject to confirmation by the President. The President may make such appointments for positions in the Office of the President.

2. When a position which has been posted and filled becomes vacant for any reason within six (6) months of the employment date, it may be filled by another qualified candidate from the original pool of applicants.

3. When a position is posted internally for regular, full-time and regular, part-time Delaware Technical & Community College employees, it shall be posted for a minimum of ten (10) calendar days.

III.1

**SECTION VI**
(As Amended April 17, 2000)

**WORKING HOURS**

**6.01 REGULAR HOURS**

The College will be open for classes from 8:00 a.m. to 10:30 p.m., Mondays through Thursdays; 8:00 a.m. to 4:30 p.m. on Fridays. Campuses may schedule additional classes Friday evenings and Saturdays.

The normal workweek for full-time College employees is 37-1/2 hours (7-1/2 hours per day) excluding lunchtime. The College President, and as to the various campuses, the Vice President and Campus Director in charge of the campus, is authorized to establish working periods and to designate work assignments in the best interests of the College.

Faculty members are expected to designate a minimum of six hours each week for conferences with students. These hours should be distributed over different days and should be posted on or near office doors. Office hours are to be kept as carefully as class instruction hours. These scheduled office hours will be filed with the Department Chairperson and with the Dean of Instruction.

In addition to teaching assignments and designated office hours, faculty members may be required to serve on various campus and College-wide committees, attend meetings essential to the effective operation of the College, assist in orientation and registration of students, and perform other appropriate assignments.

**6.02 OVERTIME**

    1.    <u>Individuals in Fair Labor Standards Act (FLSA) Covered Salary Plan B Positions</u>

        The College will compensate individuals in FLSA covered Salary Plan B positions as follows:

        a.    Overtime is time worked in excess of 37-1/2 hours within a workweek. For purposes of computing overtime, a workweek is defined as a period of seven consecutive days, commencing at 12:01 a.m. on Sunday.

        b.    All overtime work must be authorized in advance, in writing, by the immediate supervisor.

Presidents and Campus Directors for the campuses. Additional information is contained in the Fiscal Guidelines of the Manual of Procedural Guidelines.

## 11.11 OUTSIDE EMPLOYMENT

The first duty and responsibility of the full-time employee is to render to the College the most effective service possible. No outside service or enterprise, professional or other, should be undertaken that might interfere with the discharge of this prime responsibility or bring the employee, as an expert or in any other capacity, into conflict with the interests of the College.

At the same time, consultation and other activities of a highly professional nature are looked upon favorably and encouraged where these activities make a positive contribution to the professional development of the employee and bring favorable recognition to the College.

The College can assume no responsibility for the private services rendered by members of its staff. The staff member should make it clear to those by whom he/she is employed that such services have no official connection with the College. Additionally, Delaware Tech employees are not to use the Delaware Technical & Community College name in conjunction with his/her name when teaching for another educational institution or any other outside employer. In the interest of sound administrative practice, supervisors should be aware of the professional activities of their staff.

## 11.12 EVALUATIONS

All employees shall have their performance observed and evaluated by department chairpersons, supervisors and/or administrators. The purpose of the evaluation is to determine performance. A written evaluation, based upon performance criteria, shall be completed semi-annually during the first year of employment and during the first year in a position to which the employee has been promoted or transferred, and annually in each subsequent year. The annual performance appraisal period shall be between July 1 and September 30 of each fiscal year. The designated supervisor shall discuss, in conference, with the individual the written evaluation which shall be signed by both the employee and the supervisor. The employee shall be given a copy, and a copy shall be submitted to the appropriate administrator. The original copy shall be filed at the campus in the employee's personnel file.

If the employee disagrees with the evaluation, such disagreement should be noted by the employee at the time he/she signs the evaluation. The employee should express to the supervisor and the Vice President and Campus Director, in writing, the reasons for the disagreement.

Inasmuch as evaluations are intended to commend good performance and/or note performance deficiencies, those preparing evaluations should always attempt to be objective, candid, and fair in their appraisal of a subordinate's performance.

## SECTION XII
### (As Amended November 17, 1998)

## CONDUCT AND CORRECTIVE OR DISCIPLINARY ACTION POLICY

### 12.01 CONDUCT AND CORRECTIVE OR DISCIPLINARY ACTIONS

The conduct of every employee plays an important part in maintaining the well-being of, and continuing respect for, the College. Each employee is expected to act in a professional manner when dealing with his/her supervisor, staff, the public, students, and other personnel. It is also important that employees present an appearance consistent with the nature of the work they are required to do. Employees are expected to avoid all unnecessary risks to the safety and/or well-being of students, themselves, or others and to exercise good judgment in caring for property of the College.

No attempt is made here to specify all the possible reasons for corrective or disciplinary action. In general, however, corrective or disciplinary action may be taken whenever an employee conducts himself or herself in a manner that is not consistent with the best interests of the College, its students, and its staff. This corrective or disciplinary action may be initiated by the immediate supervisor with the knowledge of the appropriate College administrator, or in special cases by the appropriate Dean, Director, Business Manager, Assistant Campus Director, or Vice President and Campus Director with the knowledge of the immediate supervisor. The corrective or disciplinary action may be a verbal warning, written reprimand, suspension with or without pay, demotion, reassignment, or termination of employment. Corrective or disciplinary action other than a verbal warning or written reprimand may be implemented only with the written approval of the Vice President and Campus Director.

In the event the College determines, in its discretion, that corrective or disciplinary action is warranted, the following rules shall apply:

1. The employee shall be notified in writing within a reasonable period of time that corrective or disciplinary action, other than a verbal warning, is being imposed. In the case of termination of employment, the employee shall receive 60 days written notice of the College's intent to terminate such employment.

2. If the employee disagrees with a verbal warning or written reprimand, he/she may state the reasons in writing to his/her supervisor and to the Vice President and Campus Director.

B-XII.1

B-116



DEPOSITION
EXHIBIT
Lister 1
5-10-06  PS
PENGAD 800-631-6989

3. If the employee disagrees with a suspension with or without pay, demotion, reassignment, or termination of employment, he/she may, within twenty (20) working days of notice of the action, file a disciplinary grievance in accordance with Section XIII of this Manual.

4. All documents relating to any corrective or disciplinary action, including documentation of verbal warning, shall be placed in the employee's official personnel file with copies forwarded to the Human Resources and Legal Affairs Department.

(Amended Board of Trustees, 11/17/1998)

## 12.02 PRE-TERMINATION OF EMPLOYMENT PROCEDURES

When dismissal of an employee is being considered, the following procedures should be followed. As a part of this process, a pre-termination hearing is to be offered the employee. This hearing is informal and is not intended to be a trial. Rather, it is an opportunity for an employee who requests a hearing to respond to the charges against him or her.

1. Administration is to conduct an objective, thorough investigation of the matter in question.

2. The employee must be notified in writing that termination of employment is being considered and the reasons (incidents and/or conditions) that led to the proposed action, and be offered the opportunity to request a pre-termination hearing. The employee should make any request for a pre-termination hearing in writing and should submit it to the Vice President and Campus Director with a copy to the Chief Legal Counsel and Associate Vice President for Human Resources, Office of the President.

3. The Chief Legal Counsel and Associate Vice President for Human Resources or his or her designee, shall preside over such hearing, and will accept and consider any information or evidence offered by the employee and the administration.

4. At the hearing, the following guidelines shall apply:

   • Administration should be prepared to present and review the evidence used as a basis for the charges. However, neither the employee nor the administration is obligated to produce witnesses or be subject to cross examination.

   • Employee may be accompanied by a representative if he/she chooses. The Chief Legal Counsel and Associate Vice President for Human Resources, or

B XII.2

ß -117

his/her designee, will determine whether other employee representatives or witnesses may attend the hearing.

- Chief Legal Counsel and Associate Vice President for Human Resources, or his/her designee, is to determine if the employee understands the charges, and explain them if necessary.

- Chief Legal Counsel and Associate Vice President for Human Resources, or his/her designee, is to invite the employee to respond to the charges and provide any reason(s) why in his/her opinion termination of employment may be not be warranted.

- Chief Legal Counsel and Associate Vice President for Human Resources, or his/her designee, is to identify any factual disagreements which may give rise to further investigation.

- Chief Legal Counsel and Associate Vice President for Human Resources, or his/her designee, is to accept and consider any information or evidence offered by the employee and the administration. Neither the employee nor the administration is obligated to produce witnesses or be subject to cross examination.

- Chief Legal Counsel and Associate Vice President for Human Resources, or his/her designee, is to allow for reasonable discussion and questions.

5. Subsequent to the hearing, the Chief Legal Counsel and Associate Vice President for Human Resources, or his/her designee, shall submit his/her recommendation to the applicable Vice President and Campus Director for consideration and final determination.

6. The final decision as to whether to terminate the employee's employment is to be made by the Vice President and Campus Director and is to be based on the entire case record, including consideration of the pre-termination hearing recommendation, results of investigation, and any other relevant information.

## RULES OF PROCEDURE FOR THE
## CONDUCT OF TERMINATION PROCEEDINGS
## INVOLVING A VICE PRESIDENT AND CAMPUS DIRECTOR

1.    **APPLICATION OF THE RULES**

These rules apply in the event a pre-termination hearing is conducted for a Vice-President and Campus Director. Delaware Technical and Community College's ("the College") existing pre-termination and grievance procedures are not appropriate in the case of such a pre-termination hearing because the pre-termination procedures state that the final decision to terminate is to be made by the Vice President and Campus Director. The procedures set forth below assure a Vice-President and Campus Director (hereinafter referred to as "employee") receive a hearing before an independent, impartial decision maker which complies with the requirements of the Due Process Clause of the United States Constitution.

2.    **NOTICE OF TERMINATION**

The notice of intention to terminate a Vice President and Campus Director shall be initiated by the President. Notice of intention to terminate shall be in writing and shall:

A.    state the reason(s) for the termination;

B.    be sent to the employee's counsel;

C.    specify the address to which any request for a hearing shall be sent; and

D.    be accompanied by a copy of these Rules of Procedure.

3.    **REQUEST FOR A HEARING**

A.    Within 10 days after receipt of the written notice of intention to terminate services, the notified employee may request an opportunity to be heard. Such a request must be in writing and received by the College, or the College's counsel,

within 10 days after receipt of the written notice of intention to terminate. If the employee fails to submit a timely, written request for a hearing, the notice of intention to terminate shall constitute the final notice of termination effective 60 days after receipt of the notice.

B.    A date shall be set for such hearing. The hearing shall be held with 60 days notice unless the employee and the College agree to an earlier hearing date.

## 4.    CONDUCT OF HEARING

A.    The hearing of oral testimony and receipt of other evidence shall be conducted by an independent, impartial Hearing Officer designated by Chief Legal Counsel.

B.    The Hearing Officer shall have full authority to control the conduct of the hearing, including authority to admit or exclude evidence, and rule upon motions and objections.

C.    The hearing and testimony shall be limited to the reason(s) set forth in the notice of intention to terminate.

D.    The Parties may be represented by counsel.

E.    Counsel designated by the College shall first submit any evidence, followed by the response of the employee, if any. Further rebuttal evidence by either party may be permitted, if the Hearing Officer believes such evidence is necessary.

F.    The Hearing Officer in conducting the hearing shall accept and consider any relevant information or evidence offered by the employee or the College and shall not be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure. The Hearing Officer may exclude plainly irrelevant

evidence. Unduly repetitive proof, rebuttal and cross examination may be excluded. Hearsay evidence shall be admissible.

G.    The testimony of witnesses shall be under oath. The witnesses shall be sworn by the Hearing Officer or the court stenographer.

H.    The parties and their counsel may examine and cross examine witnesses.

I.    A stenographic record of the hearing shall be taken and prepared by a qualified court stenographer and paid for by the College.

J.    Grounds for termination have not been established unless one or more of the reasons set forth in the Notice of Intention to Terminate is established by a preponderance of the evidence.

5.    **HEARING OFFICER'S DECISION**

A.    Within 20 days from the conclusion of the hearing, the Hearing Officer shall prepare a written decision. The Report shall state findings of fact, conclusions of law and a determination whether to terminate.

B.    The decision of the Hearing Officer shall be final and binding upon the College.

6.    **CALCULATIONS OF TIME**

In calculating periods of time provided for in the Rules of Procedure, intervening Saturdays, Sundays and legal holidays shall be included, unless the final day of the period falls on either a Saturday, Sunday or legal holiday, and in that case the final day shall be the next day which is not a Saturday, Sunday or legal holiday.

April 8, 2005

Edward Reed
2402 Bowers Street
Wilmington, DE 19802

Dear Mr. Reed:

On Tuesday, April 5, 2005 at 1400 Hours the Grievance Review Committee met to review the two grievances you filed. The Grievance Committee members were Daniel Simpson, Assistant Campus Director (acting) at the Terry Campus and Committee Chair, Byroune Miles, DIET Stanton/Wilmington Campus and Dora George, Teaching Resource Center Director at the Owens Campus.

A review of your grievances revealed the following:

1. In the grievance filed on January 26, 2005, you are grieving the one day suspension you received for allegedly threatening your supervisor because you feel it is unfair and based on an incident that occurred in November 2003.
2. In the grievance filed on February 20, 2005, you dispute the reprimand dated November 24, 2003 in which it is alleged that you threatened your supervisor with bodily harm.

The committee reviewed the information related to the January 26, 2005 grievance concerning the one day suspension for threatening Catherine Hammond. The facts related to this incident indicate that the original decision to impose a three day suspension, based in part on the previous incident of November 24, 2003, was changed when it was learned that you had not received a copy of the reprimand that was placed in your personnel file. Mr. John Fogelgren, Director of Administrative Services, imposed a one day suspension for allegedly threatening your supervisor. It is the decision of the Grievance Committee that this penalty is not based on any previous conduct and the one day suspension is entirely fair. It is, therefore, our decision to affirm the one day suspension.

The committee was unable to consider the letter of reprimand issued in November 2003 because the college Personnel Policy Manual does not provide a grievance process for

reprimands. Therefore, we have no ruling related to this grievance. We are, however, suggesting that you be given the opportunity to comment on the reprimand, sign it and be given a copy.

Sincerely,


Grievance Committee Chair

cc:    Dr Orlando J. George, Jr., President
        Brian D. Shirey, Esq. Chief Legal Counsel
        Lawrence H. Miller, S/W Vice President Campus Director
        John Fogelgren, S/W Director of Administrative Services
        Jacqueline Jenkins, S/W Director, Human Resources

# DTCC TERRY CAMPUS TRAVEL POLICY

When traveling on college business the following procedures should be followed:

1. A travel request must be completed by the employee and approved by the employee's supervisor, Dean/Director, and the Vice President and Campus Director prior to the trip.

2. Upon approval of the travel request, the employee can make the following travel arrangements:
   a. Travel arrangements are not permitted using personal credit cards. All travel related expenditures, regardless of the provider, **must** be made through use of the PNC Supercard. When accepted, use PNC Supercard for; transportation, hotel, and conference registration fees. If PNC Supercard is not accepted for conference registrations, the completed registration form should be forwarded to the Accounting Office for processing and payment.
   b. Effective July 1, 2002, the State of Delaware will not permit any travel advances to State employees.

3. Upon return from trip, the following review and approval procedures will be performed:
   a. The travel reconciliation form should be completed by employee and submitted to the Accounting Office within 10 working days of employee's return. Accounting Office will review expense statement and supporting documentation and notify employee if additional information is required. After review, the statement will be forwarded to the appropriate Dean/Director, the Vice President and Campus Director and the Business Manager for approvals.
   b. After approvals have been obtained, the Accounting Office will process personal reimbursements for any out-of-pocket business-related expenses.

4. Meal allowances: includes meal, taxes and tip (not to exceed 20%), alcoholic beverages are prohibited. When accepted by the vendor, the PNC Supercard **must** be used for meals. If the PNC Supercard is not accepted by the vendor, then the College will reimburse employee for allowable out-of-pocket meal charges. The College will pay the necessary and reasonable cost of meals through the use of the following two plans:
   - Meal Plan B: $45 per day with all _itemized_ receipts required
     Breakfast $8     Lunch $12     Dinner $25
   - Premium City Cost Adjustment: $60 per day with all _itemized_ receipts required
     Breakfast $15     Lunch $20     Dinner $25
     The following are considered "premium cities": Atlanta, Boston, Chicago, Los Angeles, New Orleans, New York, San Francisco, State of Alaska, State of Hawaii, Washington, DC

   *If employee does not have all receipts, a notarized statement is allowed as a substitute only once. If this occurs a second time, the employee will not be reimbursed if paid by cash or will owe the college if the PNC Supercard was used.*

The following guidelines shall be used to determine which meals are reimbursable:
   - Departure means leaving home or normal work location, and return means arriving back to home or normal work location. Time of departure and return needs to be listed on travel expense statement.
   - If the time of departure is after 6:00 a.m., the employee is entitled to lunch and dinner.
   - If the time of departure is after 2:00 p.m., the employee is entitled to dinner.
   - If the time of return is prior to 10:00 a.m., the employee is entitled to breakfast.
   - If the time of return is prior to 7:00 p.m., the employee is entitled to breakfast and lunch.
   - If the departure time is before 6:00 a.m. or the return time is after 7:00 p.m., the full daily allowance will apply.

DEPOSITION EXHIBIT
McNesby 9
4-13-06 B
PENGAD 800-631-6989

5. Phone Calls
   a. Extended travel: 3 nights or less: $10 allowance for personal calls    4 nights or more: $20 allowance in personal calls
   b. All business calls are reimbursable.

6. Transportation
   If a State fleet vehicle is available and the employee elects not to utilize this vehicle, then mileage reimbursement will be limited to the lesser of the daily fleet rate ($20.36/day plus mileage over 100 miles per day at a rate of .20/mile) or the current standard mileage rate established by the State (.31/mile). If a State fleet vehicle is unavailable, then mileage reimbursement will be made at the current standard mileage rate.

7. Miscellaneous Expenses
   These expenses include, but are not limited to tips, tolls and parking. Receipts for parking are required. Receipts for other miscellaneous expenses are not required, but if applicable, are encouraged. Out-of-pocket costs for incidental items such as baggage handling and maid service are reimbursable expenses not to exceed $5 per day.

8. If personal travel expenses are billed at the same time as business-related travel expenses, the employee will use the PNC Supercard to pay the total charges and will reimburse the College for the personal portion of the expenses within 10 working days of employee's return.

DTCC2201

## DELAWARE TECHNICAL AND COMMUNITY COLLEGE
## SUPERCARD EMPLOYEE DISCLOSURE STATEMENT
## AND GUIDELINES

### I.  OVERVIEW

As part of an effort to streamline the procurement processes involved with travel and certain operating expenses, the State of Delaware has entered into an agreement with PNC Bank for the use of a SUPERCARD. While the use of this card can result in a more efficient way of doing business for the College, the internal controls associated with prior approvals, expense reporting and allowable use can not be compromised. It is the employee's responsibility to adhere to the general guidelines outlined below and those issued by his/her respective business manager, without exception.

### II.  APPROVAL AND REPORTING PROCESS

#### A)  Designated Users

Staff authorized for participation in the SUPERCARD program are required to sign both the PNC bank agreement authorization form and this Employee Disclosure Statement with the prior written approval(s) as noted on page 3. Authorized personnel are solely responsible and personally liable for all charges made to their assigned SUPERCARD and the reporting requirements outlined below.

#### B)  Purchasing Card Approval

All purchases are subject to State of Delaware purchasing, bid, and travel laws and guidelines. All SUPERCARD purchases are subject to <u>prior written</u> approval by the cardholder's supervisor and/or dean, director, or business manager. Once the cardholder has received the prior written approval, then calling, faxing, or mailing the order can be done. If the cardholder incurs expenses that are subsequently disallowed, then the cardholder must submit a personal check to the business office within 24 hours.

#### C)  Purchasing Card Reporting

Each cardholder is responsible and personally liable for all charges made to their card and for maintaining an activity log of all card purchases with supporting documentation. Monthly invoices will be mailed directly from PNC to the Campus Business Manager (Fiscal Services Manager at President's Office) who will then forward to the cardholder for review. The cardholder's SUPERCARD invoice reconciliation (log with receipts attached) must be returned to the business office within (3) working days after receipt from the Business Manager. Failure to file the reconciliation in a timely manner will result in revocation of the SUPERCARD.



DEPOSITION
EXHIBIT
Mc Nesby 10
4-13-06    PS
PENGAD 800-631-6989



DTCC2136

Page 2

### D)    Travel Card Approval

The SUPERCARD can be used for all pre-approved allowable travel expenses related to Delaware Tech business for the cardholder and/or other Delaware Tech employees <u>only</u>.    Under no circumstances should this card be used for personal or unauthorized purchases.  In the event, the cardholder incurs expenses that are subsequently disallowed by the business or fiscal office, then the cardholder must submit a check reimbursing the College for that amount within 24 hours.  The use of the SUPERCARD for the purpose of alcohol or personal items is strictly prohibited.  Any misuse of the SUPERCARD will be grounds for discipline up to and including termination of employment.

### E)    Travel Card Reporting

For employees using the SUPERCARD for travel expenses, those charges should appear on the Cardholder's log sheet (with receipts) and as a disclosure item on their personal expense reimbursement form (State form PE-1).  Once again, the use of the SUPERCARD is for pre-approved travel expenses for Delaware Tech employees only.

### III.   <u>ALLOWABLE EXPENSES</u>

<u>TRAVEL</u>
Airlines; Rail
Vehicle Rentals
Hotels and Motels
Restaurants

<u>PURCHASES</u>
Advertising
Automobile Service and Supplies
Books and Office Supplies
Caterers
Equipment and Furniture
Facilities: Repair Services/Supplies
Food Stores
Freight
Printing

DTCC2137

*Dr. M. Johnson*

Page 3

## IV.    REPORTING LOST/STOLEN CARDS

It is the cardholder's responsibility to report all stolen or lost cards immediately to 1-800-685-4039.  The customer service number is available 24 hours a day, 7 days a week.  The cardholder must also immediately notify their Agency Coordinator at each location.

| | | |
|---|---|---|
| Office of the President | Bob Hearn | 739-3258 |
| Owens Campus | Barbara Ridgely | 855-1684 |
| Wilm/Stanton Campus | Cliff Farmer | 454-3935 |
| Terry Campus | Linda Tetrick | 741-2701 |

Upon termination of employment with the College, it is the cardholder's responsibility to return the SUPERCARD to their immediate supervisor.

## V.    CERTIFICATION

I hereby acknowledge that I have been given a copy of the SUPERCARD Employee Disclosure Statement and (have read/have been read) and understand the same.

**CARDHOLDER:**                                    **SUPERVISOR:**

_____              _____
Signature of Employee        Date                  Signature of Supervisor        Date


**DEAN/DIRECTOR:**

_____              _____
Signature of Dean/Director        Date               Vice President/Campus Director  Date


**BUSINESS MANAGER:**

_____
Signature of Business Manager        Date


Distribution of Fully Executed Agreement

1)  Original:  Business Office
2)  Copies:  Cardholder, Assistant V.P. for Finance (Office of the President)

DTCC2138

RECEIVED

MAR 3 1 1999

Campus Director's Office

y Johnson,

**SHAME ON YOU! Shame on you for ruining the career of someone who has worked so diligently for our college.**

**You were hired because of the color of your skin. George wanted a token black.**

**When you look in a mirror, you will see a dumb nigger.**

**Sincerely,**



DELAWARE TECHNICAL AND COMMUNITY COLLEGE

An Equal Opportunity Employer

Employee Master Contract

IT IS HEREBY AGREED by and between,

Marguerite Johnson                    , ("Employee"),

and

THE BOARD OF TRUSTEES OF DELAWARE TECHNICAL AND COMMUNITY COLLEGE ("Employer"

That Employee shall be employed by the Delaware Technical and Community

College, _____ Stanton _____
                                 Campus Name

under and subject to the direction, supervision and authority of Employer, its duly
authorized administrative personnel, successor and assigns, on the following terms
and conditions:

(1)  Personnel Data Form.  A Delaware Technical and Community College
Personnel Data Form shall be prepared by Employee and Employer and shall contain
the terms and conditions of employment, including job classification, position,
title, additional duties, and/or administrative responsibility, rates and methods
of compensation and work schedule and such other data as the parties may deem
appropriate and as agreed between Employer and Employee.  The Personnel Data Form
is incorporated by reference and shall be a part of this Agreement; the Personnel
Data Form may be amended from time to time and, as amended, shall be made a part
of this Agreement.

(2)  Probationary Period.  Employee shall be a probationary employee
for a period of two years from the date of commencement of employment hereunder.
Provided, however, that the probationary period for persons employed by Employer
in the same or similar employment prior to the execution of this Agreement shall be
deemed to commence upon the date of first employment by Delaware Technical and
Community College, (provided, such employment has been continuous and uninterrupted)
and such probationary period shall terminate on the second anniversary of the
date of such employment.                    B129

DEPOSITION
EXHIBIT
# 14

DTCC0379

(3)  Termination of Employment.  This contract and employment hereunder may be terminated:

(a)  By agreement of Employee and Employer; date of termination shall be as agreed between Employee and Employer's Campus Director.

(b)  By Employee, upon the giving of not less than 60 days notice of resignation.

(c)  By Employer, upon the giving of not less than 60 days notice to Employee, which notice shall set forth  the reason(s) for termination;

(i)  During the probationary period, termination shall be for cause only, which shall be fully set forth in the notice of termination;

(ii) After the probationary period, termination shall be for good cause, which shall be fully set forth in the notice of termination and, further, shall be supported by affidavits of person(s) having knowledge of such cause and by such other evidence as may be deemed sufficient to Employer.

(d)  By Employer, at any time, for:  (1)  insubordination (2) conviction on any felony or of any crime involving moral turpitude  (3)  incompetency  (4)  any act or course of conduct which, in the judgment of Employer, constitutes a reasonable hazard to the health, safety and well-being of Employer, its agents, servants and employees or students.

(e)  By Employer, upon the giving of not less than 60 days notice, in the event that the specific area of employment of the employee, or the educational program or administrative function performed by Employee be discontinued or eliminated as the result of reorganization of programs by Employer in compliance with legislation, administrative directives or to meet funding requirements of the State of Delaware, its agencies, or any other governmental entity having responsibility or authority therefor.  Notice of termination under this sub-paragraph shall set forth the specific area affected and the basis for discontinuance or reorganization.

DTCC0380

(4) Compensation.  Compensation hereunder shall be payable to Employee in such amounts and at such time as set forth in the Personnel Data Form, subject, however, to the appropriation of sufficient funds by the General Assembly of the State of Delaware for such purpose.  Changes in the rate of compensation benefits, method of payment and/or duties for which compensation is paid or payable shall be set forth by amendment to the Personnel Data Form or by preparation of a supplemental Personnel Data Form to be attached hereto and made a part hereof.

(5) Rights and Remedies.  Questions arising under the terms of this contract and disputes arising from the employment relationship shall be heard and decided in accordance with the procedures set forth in the Delaware Technical and Community College Board of Trustees Personnel Policy Manual.  Employee acknowledges that he has reviewed the Manual and agrees to the procedures provided therein.

(6) Notices.  Notices permitted or required under this contract shall be given, in writing, and shall be transmitted by certified or registered mail - return receipt requested - to the respective parties.  Notice to Employer shall be directed to Campus Director, Delaware Technical and Community College, _____ Stanton _____ Campus, P.O. Box 1260   Newark , Delaware; notice to Employee shall be directed to Employee's address as set forth on the Personnel Data Form.

(7) Term of Employment.  It is the intent of Employer to continue employment of Employee under the terms and conditions of this contract for a period of one year and, thereafter, for additional periods of one year unless or until terminated as herein provided.  It is understood and agreed that prior to May 1 of each year, non-receipt by the Employee of notification of termination of employment due to discontinuance and/or elimination of Employee's area of employment shall be evidence to Employee that Employer intends to continue Employee's specific area of employment to and including the Spring quarter of the following academic year, subject, however, to the terms of this Agreement.

B131

DTCC0381

(8)  Binding Agreement.  It is agreed that this contract sets forth the entire understanding of the parties, shall be binding upon them, and shall not be orally modified.

IN WITNESS WHEREOF the parties have executed and sealed this Agreement this _25th_ day of _July_ , 19_74_.

Witness:

_____

_____

DELAWARE TECHNICAL
AND COMMUNITY COLLEGE

By _____

_____
EMPLOYEE

B132

## RULES OF PROCEDURE FOR THE
## CONDUCT OF TERMINATION PROCEEDINGS
## INVOLVING A VICE PRESIDENT AND CAMPUS DIRECTOR

1.    **APPLICATION OF THE RULES**

These rules apply in the event a pre-termination hearing is conducted for a Vice-President and Campus Director.  Delaware Technical and Community College's ("the College") existing pre-termination and grievance procedures are not appropriate in the case of such a pre-termination hearing because the pre-termination procedures state that the final decision to terminate is to be made by the Vice President and Campus Director.  The procedures set forth below assure a Vice-President and Campus Director (hereinafter referred to as "employee") receive a hearing before an independent, impartial decision maker which complies with the requirements of the Due Process Clause of the United States Constitution.

2.    **NOTICE OF TERMINATION**

The notice of intention to terminate a Vice President and Campus Director shall be initiated by the President.  Notice of intention to terminate shall be in writing and shall:

A.    state the reason(s) for the termination;

B.    be sent to the employee's counsel;

C.    specify the address to which any request for a hearing shall be sent; and

D.    be accompanied by a copy of these Rules of Procedure.

3.    **REQUEST FOR A HEARING**

A.    Within 10 days after receipt of the written notice of intention to terminate services, the notified employee may request an opportunity to be heard.  Such a request must be in writing and received by the College, or the College's counsel,

B133



within 10 days after receipt of the written notice of intention to terminate.  If the employee fails to submit a timely, written request for a hearing, the notice of intention to terminate shall constitute the final notice of termination effective 60 days after receipt of the notice.

B.    A date shall be set for such hearing.  The hearing shall be held with 60 days notice unless the employee and the College agree to an earlier hearing date.

4.    **CONDUCT OF HEARING**

A.    The hearing of oral testimony and receipt of other evidence shall be conducted by an independent, impartial Hearing Officer designated by Chief Legal Counsel.

B.    The Hearing Officer shall have full authority to control the conduct of the hearing, including authority to admit or exclude evidence, and rule upon motions and objections.

C.    The hearing and testimony shall be limited to the reason(s) set forth in the notice of intention to terminate.

D.    The Parties may be represented by counsel.

E.    Counsel designated by the College shall first submit any evidence, followed by the response of the employee, if any.  Further rebuttal evidence by either party may be permitted, if the Hearing Officer believes such evidence is necessary.

F.    The Hearing Officer in conducting the hearing shall accept and consider any relevant information or evidence offered by the employee or the College and shall not be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure.  The Hearing Officer may exclude plainly irrelevant

evidence. Unduly repetitive proof, rebuttal and cross examination may be excluded. Hearsay evidence shall be admissible.

G.    The testimony of witnesses shall be under oath. The witnesses shall be sworn by the Hearing Officer or the court stenographer.

H.    The parties and their counsel may examine and cross examine witnesses.

I.    A stenographic record of the hearing shall be taken and prepared by a qualified court stenographer and paid for by the College.

J.    Grounds for termination have not been established unless one or more of the reasons set forth in the Notice of Intention to Terminate is established by a preponderance of the evidence.

5.    **HEARING OFFICER'S DECISION**

A.    Within 20 days from the conclusion of the hearing, the Hearing Officer shall prepare a written decision. The Report shall state findings of fact, conclusions of law and a determination whether to terminate.

B.    The decision of the Hearing Officer shall be final and binding upon the College.

6.    **CALCULATIONS OF TIME**

In calculating periods of time provided for in the Rules of Procedure, intervening Saturdays, Sundays and legal holidays shall be included, unless the final day of the period falls on either a Saturday, Sunday or legal holiday, and in that case the final day shall be the next day which is not a Saturday, Sunday or legal holiday.



# DELAWARE TECH

*Dover♦Georgetown♦Stanton♦Wilmington*

May 11, 2005

Vincent A. Bifferato, Sr., Esquire
Bifferato, Gentilotti & Biden, P.A.
1308 Delaware Avenue
Wilmington, DE 19899-2165

   Re:   Dr. Marguerite Johnson/Pre-Termination Hearing

Dear Judge Bifferato:

   Dr. Marguerite Johnson is presently employed by the College as Vice President and Campus Director of the Terry Campus in Dover, Delaware. Based upon the recommendation of the College's outside counsel, Mr. David H. Williams, Esquire, Dr. Johnson was given a notice of intent to terminate her employment, a copy of which is attached. I have also attached the Rules of Procedure that were adopted by our Board of Trustees to govern the conduct of a pre-termination hearing in the event that such a proceeding was requested by Dr. Johnson. As you will see, the rules require the appointment of an independent and impartial Hearing Officer whose decision will be final and binding on the College.

   A timely request for a pre-termination hearing has been made by Dr. Johnson's counsel, Gary W. Aber, Esquire. In accordance with the Rules of Procedure, I hereby designate you as the independent and impartial Hearing Officer for this matter. Please contact Mr. Williams and Mr. Aber directly to schedule a date for the hearing.

   Thank you for your willingness to serve as the Hearing Officer in this matter. Please do not hesitate to contact me with any questions or comments you may have.

                                   Very truly yours,

                                   Brian D. Shirey
                                   Chief Legal Counsel

Cc:   David H. Williams, Esq.
      Gary W. Aber, Esq.

DEPOSITION
EXHIBIT
#16
4 1 30 (o5 ASB

*Delaware Technical & Community College*
Office of the President
P.O. Box 897, Dover, DE 19903
Phone: (302) 739-3737 Fax: (302) 739-3345
*Equal Opportunity/Affirmative Action Institution*

B - 136

TOTAL P.02



# DELAWARE TECH

**Georgetown ■ Dover ■ Stanton ■ Wilmington**

## MEMORANDUM

TO:     Wayne Dabson
        Director of Administrative Services
        Terry Campus

FROM:   Hope W. Murray
        Assistant to the President for
        Personnel and Legal Affairs

DATE:   February 1, 1995

RE:     Interrogatories - Debra Freeman v. DTCC

Thank you so much for coordinating the Terry Campus effort to answer the lengthy list of questions from Debra Freeman's attorney relative to her alleged fall and injury in the recreation center.  You and your staff did an excellent job of gathering and compiling the requested information.  Although you were given a very short period of time to provide the information, your responses were extremely thorough and well documented.  I took the packet home with me to review over the weekend and was extremely pleased to find everything in order and ready to submit.

I met with our attorney Vincent Bifferato and his law clerk Kathy Vavala yesterday to review and discuss the interrogatories.  Both Mr. Bifferato and Ms. Vavala commended me several times on the superb job the College did in responding to the questions posed. I pass those commendations on to you, as you were the one responsible for assembling the information and documentation.  Thank you again for your prompt, professional assistance and a job well done by all those involved at the Terry Campus.

HWM/s
cc: Mr. Johnson

Delaware Technical & Community College
OFFICE OF THE PRESIDENT
P.O. Box 897, Dover, Delaware 19903
(302) 739-4621 Fax Number (302) 739-3345

*Equal Opportunity/Affirmative Action Institution*



DEPOSITION
EXHIBIT
Murray
-19-0/61KC

CONFIDENTIAL    DTCC2959

**BIFFERATO GENTILOTTI**
**BIDEN & BALICK**

JAN 2 5 2006

January 24, 2006

Vincent A. Bifferato, Jr.
Ian Connor Bifferato
Jeffrey M. Gentilotti
Joseph R. Biden, III
Adam Balick
George T. Lees, III
Veronica O. Faust
Joanne Ceballos
David W. deBruin*
David A. Denham
Catherine Zwolak Kilian
Joseph K. Koury
Garvan F. McDaniel
*Admitted in PA & NJ only

Senior Counsel
Sidney Balick
Vincent A. Bifferato
William Swain Lee
Carl Schnee

Writer's Email Address: vab@bgbblaw.com
Writer's Direct Dial: (302) 429-1900
Writer's Fax: (302) 429-8600
Reply to 1308 Delaware Avenue

Gary A. Aber, Esquire
Aber, Goldlust, Baker & Over
Suite 600, 702 King Street
P.O. Box 1675
Wilmington, DE  19899-1675

David H. Williams, Esquire
Morris, James, Hitchens & Williams
10th Floor, 222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899-2306

Re:   Marguerite Johnson

Counsel:

It has been brought to my attention that in 1995 my son Vincent A. Bifferato, Jr. was hired by Hartford Insurance Company to represent Delaware Tech on a tort claim.

I had absolutely no knowledge of this representation at the time I had the hearing in the above-captioned case, or wrote an opinion.  I just plain missed the conflict prior to the hearing.  I hope this does not cause any difficulties.

Very truly yours,

Vincent A. Bifferato

VAB/cye

www.bgbblaw.com

1308 Delaware Avenue
Wilmington, DE 19806
Phone: 302 429 1900
Fax: 302 429 8600

200 Biddle Avenue, Suite 203
Newark, DE 19702
Phone: 302 429 1900
Fax: 302 832 7540

711 King Street
Wilmington, DE 19801
Phone: 302 658 4265
Fax: 302 658 1682

701 Rehoboth Avenue
Rehoboth Beach, DE 19971
Phone: 302 227 6600
Toll-Free: 866 618 2433
Fax: 302 227 6778

B-137A

# Delaware Technical & Community College

# INVOICE

Campus, 1832 N. DuPont Parkway
r, DE  19901                    (302) 741-2781
ı:  Marketing Dept.

**SOLD TO:**
Marguerite M. Johnson
1022 Quail Run
Wyoming, DE  19934

| | |
|---|---|
| INVOICE NUMBER | 080299 |
| INVOICE DATE | 08/02/99 |
| OUR ORDER NUMBER | |
| YOUR ORDER NUMBER | |
| TERMS | |
| SALES REP | |
| SHIPPED VIA | |
| F.O.B. | |
| PREPAID or COLLECT | |

**SHIPPED TO:**

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 265 | Color Copies | 0.38 | 100.70 |
| 5,024 | Standard B & W Copies | 0.0050 | 25.12 |
| | Plastic Binding Combs | | 9.99 |
| | Paper | | 229.59 |

| | | |
|---|---|---|
| SUBTOTAL | | 365.40 |
| TAX | | |
| FREIGHT | | |

Questions concerning this invoice?
Call:       (302) 741-2709

**MAKE ALL CHECKS PAYABLE TO:**
Delaware Technical & Community College
Terry Campus

| |
|---|
| $365.40 |
| PAY THIS |
| AMOUNT |

*THANK YOU FOR YOUR BUSINESS!*

B138


DEPOSITION
EXHIBIT
Dwyer — 7
EO 3/21/06



Return-Path: <kpowell@college.dtcc.edu>
Date: Thu, 07 Apr 2005 14:22:34 -0400
From: Kathleen Powell <kpowell@college.dtcc.edu>
User-Agent: Mozilla/5.0 (Windows; U; Windows NT 5.1; en-US; rv:1.7.2) Gecko/20040804
Netscape/7.2 (ax)
To: David Dwyer <ddwyer@sbgcpa.com>
Subject: Re: file
References: <1112796078_58598@rcmdxmail01>

Dave,
As I explained earlier, I truly cannot remember specifically which documents I completed and
how much time I spent completing them. Some of the documents, other than the cookbook, do
not even look familiar. What I know for sure is Blanche Spada did not resign until 6/15/99; all
items dated before that time where probably completed by her. The reunion began 6/25/99.
The Access document was completed by Chris. Other tasks were completed collaboratively,
i.e. cookbook, genealogy book, and the piece that had ads in it. If I were to take a guess, for
items that I worked on I would say that if I had worked uninterrupted continuously perhaps a
fair time amount would be 37.5 hours.
Sorry it could not be more detailed.
Kathy

David Dwyer wrote:

> kathy,
>
> per our discussion, see the attached file. please estimate how long it took to
> create, type, or edit each document you worked on. for those documents you did
> not work on, please indicate the person's name by the document.
>
> thanks,
> dave



B140

about:blank

4/7/2005

# GRID

DEPOSITION EXHIBIT 1
Pleasonton
KAH 5/8/06
PENGAD 800-631-6989

## The Graphic & Interior Design Student Guild

Delaware Tech - Terry Campus    1832 N. DuPont Parkway, Dover, DE  19938

6/29/99

INVOICE:

TO:  Dr. Marguerite Johnson
     c/o Delaware Tech - Terry Campus

For fabrication of the following items:

⬤' banner with custom painted logo and fabric end panels
125.00

3-6 paper banner for "Family Tree"
$  45.00

Covered sign-in book and stand
$  55.00

Assorted small directional signs ( 6 mounted with stakes)
$  20.00

⬤L, this invoice .......................................$245.00

B141

GEORGE S. JOHNSON   08/94
MARGUERITE M. JOHNSON
1022 QUAIL RUN
WYOMING, DE  19934

3-1/310

578

DATE _6-29-99_

PAY TO THE
ORDER OF _Kid Club_   $ _245.00_

_Two hundred fourty five and 00/100_ DOLLARS

**CoreStates
Bank**

MEMO _Banner - Book_

⑆031000011⑆   0008 1⑈0 4557⑈ 90578

DEPOSITION
EXHIBIT
TRAVIS 1
K+H 5/11/06
PENGAD 800-631-6989

571

GEORGE S. JOHNSON  08/94
MARGUERITE M. JOHNSON
1022 QUAIL RUN
WYOMING, DE  19934

3-1/310

DATE 6-24-99

Y TO THE
DER OF  _Christeen Frank's_ 00   $ 50.00

_Fifty and_ 00/100   DOLLARS

CoreStates
Bank

MO

B143

GEORGE S. JOHNSON
CAMDEN, DE  19934
PH. 302-698-1626

Date _9/__/05_

Pay to the order of _Delaware Tech_    $ 200.⁰⁰

_Two hundred and_ ⁰⁰/₁₀₀    Dollars

CITIZENS BANK

Citizens Circle Account

For _Stray Stray Night_    _Marguerite M. John_

⑆031101143⑆ 82000 18332⑈ 2034 ⑆00000 20000

©Clarke American

---

GEORGE S. JOHNSON  08/94
MARGUERITE M. JOHNSON
1022 QUAIL RUN
WYOMING, DE  19934

302

3-1/310

DATE _June 9, 1998_

PAY TO THE ORDER OF _DTCC_    $ _1.17_

_One and 17/100 ------------_ DOLLARS

CoreStates Bank

MEMO _____    _Marguerite M. John_

⑆031000011⑆ 00081⑈045577⑈9030 ⑆000000011

---

GEORGE S. JOHNSON  08/94
MARGUERITE M. JOHNSON
1022 QUAIL RUN
WYOMING, DE  19934

550

3-1/310

DATE _6-2-99_

PAY TO THE ORDER OF _DTCC_    $ _24.33_

_twenty four and_ ³³/₁₀₀    DOLLARS

CoreStates Bank _May March April_

MEMO _Cell-Phone_    _Marguerite M. John_

⑆031000011⑆ 00081⑈045577⑈90550 ⑆000002433

---

GEORGE S. JOHNSON  08/94
MARGUERITE M. JOHNSON
1022 QUAIL RUN
WYOMING, DE  19934

1068

62-86/311

DATE _9-27-01_

PAY TO THE ORDER OF _Schwartz Ctr for the Arts_    $ _18.⁰⁰_

_eighteen and_ ⁰⁰/₁₀₀    DOLLARS

First Union Bank of Delaware
R/T 031100869

MEMO _T-Shirt_    _Marguerite M. John_

⑆031100869⑈ 000081045575⑈ 1068 ⑆000000 1800

B-144

DEPOSITION EXHIBIT
McNesby 18
4-13-06    P5
PENGAD 800-631-XXX